## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Berthe Benyam Abraha
16809 Heartwood Dr.
Rockville, MD  20855

Esayas Akalu
12320 Herrington Manor Dr.
Silver Spring, MD 20904

Samuel Habtewoled
6101 Sixteenth St., NW
Washington, DC 20011

Gedlu Melke
3401 Spring Lane
Apt. 102
Falls Church, VA  22041,

      as individuals and on behalf of
      all others similarly situated,

             Plaintiffs,

    versus

Colonial Parking, Inc.,
1050 Thomas Jefferson St.
Suite 100, Washington, D.C. 20007, and

FCE Benefit Administrators, Inc.,
887 Mitten Rd.
Burlingame, California 94010,

             Defendants.

Civil Action No.

## COMPLAINT

### Introduction

1. This lawsuit arises under the Employee Retirement Income Security Act of 1974

   ("ERISA"), 29 U.S.C. § 1001 et seq.

2.  At all relevant times, Plaintiffs were employees of Defendant Colonial Parking, Inc.
    ("Colonial").  They parked cars in garages around the Washington metropolitan area.

3.  When Colonial is a contractor with government agencies, it is subject to the McNamara-
    O'Hara Service Contract Act ("SCA"), which, among other things, requires a contractor
    to pay a set amount per employee per hour for fringe benefits.  Colonial complies with
    that requirement, in part, by contributing money to a fund that is used for its employees'
    fringe benefits.

4.  Colonial contracts with Defendant FCE Benefit Administrators, Inc. ("FCE") to
    administer this fringe benefit fund.  FCE sometimes refers to the fund as "The Forge
    Company (Colonial Parking) Death, Dismissal, Wage/Unemployment Benefit "Reserve"
    Employee Account," and sometimes as the "FCE Welfare Fund/D.U.B. Benefit;"
    Plaintiffs will refer to the fund as the "DUB Plan," and the accounts maintained within it
    for the employees as the "DUB Accounts."

5.  The DUB Plan operates as follows:  Colonial contributes money to the DUB Plan, FCE
    allocates the contribution to each individual's DUB Account, and then it withdraws
    money for payments of insurance premiums and fees to FCE and others.  Amounts not
    used for those purposes are held in trust for the employee participants where they are
    credited with a share of the DUB Plan's investment earnings.  The DUB Plan benefit
    consists of the amount in the DUB Account when the benefit qualifying event occurs.
    Neither Colonial nor FCE provides a written explanation of what constitutes such a
    qualifying event, though the names used for the DUB Accounts include a smorgasbord of
    welfare plan benefots -- "dismissal, unemployment, disability, death, health and welfare."

6.  The gist of this action is the excessive and unjustified fees that FCE extracts from the DUB Accounts.  These fees are also obscured by the use of multiple names:  "plan fees," "trust fees," "broker fees," "distribution fees."  Each of these fees is excessive considered alone; collectively, they can amount to more than a hundred of dollars per month taken from people who often make less than $2000 per month in gross pay.  *See* ¶¶ 22-28.

7.  The accounting and administration of the DUB Account suggests serious mismanagement of the assets of the Trust Fund.  For example, the handful of account statements that have actually been provided to Plaintiffs over the last decade contain a pattern of unexplained reductions in account balances.  Moreover, distributions to the Colonial DUB participants have recently been made from the trust fund of another client of FCE, suggesting that the supposed Colonial DUB Plan Trust either does not exist or has been stripped of the assets necessary to support distributions.  *See* ¶¶ 29-33.

8.  As set forth below, Plaintiffs, on behalf of themselves and a class of other parking lot attendants currently and formerly employed by Colonial, allege a series of violations of ERISA's provisions based on the operation of the DUB Accounts.  Plaintiffs also seek remedies for Defendants' failure to disclose statutorily required information, their failure to communicate open and honestly with participants, and their failure to adhere to the requirements of ERISA's fiduciary, reporting and disclosure, and claims provisions.

9.  On October 30, 2015, the U.S. Department of Labor ("DOL") filed a complaint against FCE and a DC-based employer (not Colonial) alleging that FCE and the employer violated ERISA in connection with FCE's excessive fees and retention of undisclosed fees from service providers.  DOL also detailed a series of kickbacks allegedly paid by FCE to the DC employer.  *See Perez* v. *Chimes District of Columbia, Inc., et al,* No.

1:15-cv-03315-RDB (D. Md.)("DOL Complaint").  DOL has now informed the District

Court of Maryland that it is actively investigating FCE's other business activities

pursuant to the agency's authority to enforce the provisions of ERISA.  *See ¶¶* 38-41.

## Jurisdiction and Venue

10. The DUB Plan is an employee welfare benefit plan within the meaning of ERISA Section

3(1), 29 U.S.C. § 1002(1), because it is an arrangement established or maintained by an

employer (Colonial) for the benefit of its employees that provides benefits in the event of

disability, death, severance or unemployment.  Further indicia of an employee welfare

benefit plan are that Colonial sets aside funds to pay those benefits, and those assets are

maintained in a trust fund.

11. This Court has subject matter jurisdiction over this action pursuant to Section 502(e)(1)

of ERISA, 29 U.S.C. § 1132(e)(1).

12. Venue with respect to this action lies in this Court pursuant to Section 502(e)(2) of

ERISA, 29 U.S.C. § 1132(e)(2), because one or more breaches of ERISA occurred in the

District of Columbia and a defendant resides in the District of Columbia.

## Parties

13.  Plaintiff Abraha is a resident of Maryland and a DUB Account was maintained for him

by Colonial and FCE within the past six years.

14. Plaintiff Akalu is a resident of Maryland and a DUB Account was maintained for him by

Colonial and FCE within the past six years.

15. Plaintiff Habtewoled is a resident of the District of Columbia and a DUB Account was

maintained for him by Colonial and FCE within the past six years.

16. Plaintiff Melke is a resident of Virginia and a DUB Account was maintained for him by Colonial and FCE within the past six years.

17. Colonial is a corporation with its principal place of business in the District of Columbia. It is an Employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5), as well as the Plan Sponsor and Plan Administrator of the DUB Plan within the meaning of Section 3(16) of ERISA, 29 U.S.C. § 1002(16).

18. At all relevant times, Colonial was a fiduciary with respect to the DUB Plan within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A), by virtue of its position as Plan Administrator and because it had or exercised discretionary control over the management of the DUB Plan, including, but not limited to, its selection of FCE and approval of its terms for providing services integral to the operation of the DUB Plan, as well as its appointment of the DUB Plan Trustee.

19. Defendant FCE does business in the District of Columbia, specializing in government contractors.  At all relevant times, Defendant FCE was the third party administrator of the DUB Plan and a fiduciary with respect to the DUB Plan within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), because it exercised discretionary control or discretionary authority, or exercised actual control, over the Plan's assets, the payment of benefits, the accounting of Plan assets, and negotiating the Plan's contracts with service providers and/or insurers.

Factual Allegations

20. Plaintiffs re-allege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

## The Excessive Fees Scheme

21. FCE holds itself out as a specialist in providing benefits to employees who are covered by the SCA.  On information and belief, FCE offered its services to Colonial to assist it in complying with the SCA requirement that government contractors spend a specific amount per hour per employee on fringe benefits.  Part of FCE's product offering is the undertaking to establish DUB Accounts for the employees of government contractors, and then administer those Accounts for the benefit of those employees.

22. The DUB Plan is an individual account welfare plan – that is, a plan where contributions are made to individual employee accounts which then share in investment gains and losses.  Individual account welfare plans are not common because they raise complex issues for employers and participants under the Internal Revenue Code (Sections 64, 105, 419, 419A, among others), and ERISA.

23. The fact that the participants are at risk for any gains or losses in the DUB Accounts also presents opportunities for misuse of those assets.  This case is a classic example of how unscrupulous employers and administrators can take advantage of participants in this type of plan.

24.  Prior to October 1, 2006, FCE administered the DUB Accounts for a per participant fee of $4.50 per month.  Both the per participant method for determining the fee and the amount itself were reasonable terms for the work FCE did in administering the DUB Accounts.

25. But there were two dramatic changes to the FCE fee starting in October, 2006.  First, the medical and other insurance premiums that Colonial had previously paid outside of the DUB Plan were instead run through the DUB Accounts, thus increasing both the

contributions to, and withdrawals from, those Accounts.  This in itself would not have affected the fees paid by the participants in the DUB Plan because it was a per participant-based fee unaffected by the amount of contributions.  But at the same time as Colonial and FCE were causing the contributions to the DUB Plan to increase, the FCE fee was changed from a fixed per participant amount to a percentage of the monthly contributions made to the DUB Accounts.  Percentage-based administrative fees in welfare plans are not standard because they create a windfall for the administrator:  when insurance premiums rise, the administrator gets more even though the level of work stays the same.  Even if a fiduciary were to accept a percentage based fee, no prudent and honest fiduciary would allow fees at the grossly excessive level of the FCE and Trustee fees – 12% for FCE and 2% for the Plan Trustee.

26. The total amount of fee increases suddenly imposed on the Plaintiffs and the proposed class by the 2006 fee change is stunning.  The DUB Account fees charged to Plaintiff Akalu went from **$4.50** per month for the first nine months of 2006 to **$108.91** in October, 2006 and has stayed at that level.  The fees of Plaintiff Melke went from **$4.50** per month before 10/1/06 to **$92.32** per month afterwards.  The fees of Plaintiff Habtewoled went from **$4.50** per month before 10/1//06 to **$64.69** afterwards.

27. But FCE was not finished exploiting its new fee arrangement.  Neither Colonial nor FCE disclosed these changes to the participants in the DUB Plan or explained the impact of the decision on the employees' benefit elections; in particular, they did not disclose that running the medical plan premiums through the DUB Plan alone caused an immediate 14% increase in the cost of these employees' medical coverage.  On the contrary, on the infrequent occasions Colonial provided the employees an opportunity to consider new

medical coverage, the cost of those coverages that were shown to employees never included the 14% surcharge assessed on each medical premium payment because of the change in the FCE fee structure.

28. Had the employees been told that each dollar more in medical care premiums would actually cost them $1.14, one would expect that they would react by choosing less expensive coverage.  But just the opposite occurred.  Just months after the 10/1/06 fee changes, on February 1, 2007, the cost of the employees' medical care suddenly increased  For example, Plaintiff Melke's health insurance expense went from an all employer paid **$0 to 849.42 per month which meant an additional $115 FCE/Trustee fee surcharge**, Plaintiff Habtewoled went from **$242.71 per month to $849.42 per month plus a new $115 FCE/Trustee fee surcharge**; and Plaintiff Akalu's health insurance cost went from **$242.71 per month to $759.62 per month plus a new $102 FCE/Trustee surcharge**.  And how did FCE make out while these men were trying to make these increases work on monthly salaries of $2000 – its fees went from a total of $13.50 (three times the prior $4.50 per person fee) to $316 per month just from the change in the coverages alone.

29. The changes to the FCE fee clearly benefited FCE at the expense of the employees.  It also benefitted Colonial because the scheme to run the medical and other insurance coverages through the DUB Plan also shifted the administrative costs associated with those coverages from Colonial to the DUB Plan – and onto the backs of its near minimum wage employees.

<u>Trust Fund Manipulation</u>

30. Because the DUB Accounts are individual accounts where investment gains and losses directly affect the amount of a participant's benefit, it is important for the fiduciaries of the DUB Plan to act prudently with respect to the investment of the assets.  According to FCE, the DUB Plan Trustee has the discretion to make investment decisions on behalf of the DUB Plan.

31. FCE has contended that Colonial was solely responsible for the appointment of Marilyn Ward as Trustee of the Colonial DUB Plan Trust, and that FCE had nothing to do with the decision to increase its fees 4000-5000 percent in one month.  But Ms. Ward is described in on-line business directories as affiliated with FCE.  *See* http://www.zoominfo.com/p/Marilyn-Ward/1859141011.  Moreover, a subpoena enforcement action in the Department of Labor's investigation that led to the *Chimes* lawsuit referenced above suggests that there is a financial relationship between FCE and the supposed independent Plan Trustee.  In *Ward v. United States Department of Labor,* No. A-14-CV-553-LY (W.D. Tex. 2014), the Magistrate Judge ordered enforcement of a DOL subpoena, reasoning that the request for bank records was relevant to the DOL's investigation of whether Ms. Ward was paying kickbacks to FCE.  The Magistrate Judge noted that Ms. Ward did not dispute that she "deposited fees paid to her by the Plan into an account at Boston Private Bank and that she made payments from a Boston Private Bank account to FCE."

32. Despite the fact that Ms. Ward's principal responsibility is supposed to be the investment of the DUB Plan Trust assets, FCE has described Ms. Ward as an attorney.  She does not qualify as an "Investment Manager" under ERISA, which must be a bank, insurance

company or registered investment advisor.  In addition, no disclosure has been made to

Plaintiffs regarding investment guidelines or procedures pertaining to their accounts or

the financial instruments held and invested by the Plan on their behalf.   There is no

record that any annual reports required under ERISA with respect to the DUB Plan have

been filed with the IRS.  Consequently, there is no means by which Ms. Ward's

investment strategy, performance and related fees can be evaluated.

33. FCE does accounting of Trust assets for the Trustee.  FCE and Colonial have sporadically

provided statements to Colonial employees in the DUB Account showing contributions

and disbursements from their individual accounts.   Though Plaintiffs have only received

a handful of such statements, the few that they have received show another alarming

pattern – this time of unexplained reductions in account balances.

34. FCE provided three quarterly statements to Plaintiff Abraha, showing opening and

closing balances and summarizing the activity in the account for the prior quarter.  They

show that his DUB Account closing balance on 12/31/2014 was $14,750.11 but his

opening balance on 1/1/15 was $14,325.60; and his closing balance on 3/31/15 was

$16,174.86 but his opening balance on 4/1/15 was $14,912.59.  **That is a total of**

**$1686.78**, and it is money that simply disappeared from his account sometime between

midnight and 12:01 am on December 31/January 1, and again on March 31/April 1.

Three statement provided to Plaintiff Habtewoled show the same pattern:  a 3/31/15

closing balance of $9,674.61 but a 4/1/15 opening balance of $8,411.88; and a 6/30/15

closing balance of $8,715.13 but a 7/1/15 opening balance of $6,962.  **That is a total of**

**$3.016.46**.  The other two quarterly statements in Plaintiffs' possession are for a co-

worker, and they have the same pattern – a 6/30/13 closing balance of $13,162.25 and a

7/1/13 opening balance of $11,933.20. **That is $1229.05 that simply disappeared**. These men made around $2000 in gross pay each of those months.

35. Finally, and perhaps most ominously, at least some recent disbursements that are purportedly from the Colonial DUB Plan, and its associated Trust, have actually been made from the account of the ACE/MW Health and Welfare Fund, another client who maintains a DUB Plan with FCE. At best, this suggests sloppy accounting and administration by FCE and the Plan Trustee; at worst, it suggests that the Colonial DUB Plan Trust never existed, or that its assets were commingled with the assets of other trust funds, or that it has been so looted by fees and unexplained withdrawals that it is unable to pay the participants their money.

The Cover-Up

36. ERISA contains a comprehensive system of reporting and disclosure for employee welfare benefit plans. The two principal documents are an annual report that is filed with the federal government, and a summary plan description that is provided to the plan participants. The former contains a range of financial information about the plan and its assets, while the latter is intended to provide participants with all the important information they need to know about their benefits.

37. In addition to complying with the reporting and disclosure provisions, a plan administrator must provide a full and fair claims process so employees know how to apply for benefits and can challenge a plan's determination of any benefit.

38. Colonial and FCE have made no effort to comply with any of the reporting and disclosure provisions of ERISA – no annual reports and no summary plan descriptions. Colonial sporadically provides some information about the DUB Accounts, but it is not on any

regular basis and there is never any accompanying explanation.  If an employee questions

any aspect of their benefits, they are sent from one person to another at Colonial and FCE

until they give up from frustration.  The claims process mandated by ERISA is supposed

to provide a means for employees to challenge the amount of their benefits, but Colonial

and FCE provide no claims process.  This is deliberate:  the decision by Colonial and

FCE to cloak the DUB Plan and its operations from any scrutiny has prevented both the

government and the participants from discovering the misconduct of Colonial and FCE,

and made it impossible for the participants to make good decisions about their benefits or

enforce their rights under ERISA.

The DOL Allegations

39. The DOL Complaint contains a series of allegations that mirror the allegations in this

Complaint concerning excessive fees.  *See, e.g.,* DOL Complaint, par. 23 ("[f]rom at least

2008 through the present, the Plan has spent millions of dollars more than would be

reasonable for a partially self-funded plan of this size and nature. Most of the Plan's

expenses were used to pay FCE and [a broker selected by FCE]'s fees and to pay service

providers who were selected and recommended by FCE and whose fees were negotiated

by FCE.")

40. DOL also alleges that the quality of FCE's actual administration does not meet the

standards of the industry.   *See* DOL Complaint, par. 52-54, where DOL alleges that

"FCE provided inadequate services that failed to meet a prudent standard of care for a

fiduciary and third party administrator and that were not commensurate with FCE's high

fees," and then details a long list of administrative failures, including the "[f]ail[ure] to

maintain accurate records, including calculations and supporting documentation for Plan

expenses and payments to FCE and participant information" and  the "[f]ail[ure] to

administer a reasonable claims procedure."

41. According to the DOL Complaint, FCE's business practice was to provide financial

incentives to employers so that they would conspire in FCE's extraction of unreasonable

fees from the employees.  *See* DOL Complaint, par. 28-33.

42. Finally, DOL has informed the Court in its case that it has a continuing investigation of

FCE, and that the latter is trying to intimidate former employees from telling what they

know about FCE.  *See* Letter from DOL, Docket No. 46.

<u>Class Action Allegations</u>

43. Plaintiffs re-allege and incorporate by reference the allegations set forth in each

of the preceding paragraphs of this Complaint.

44. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this class action

and seek certification of the claims in this action on behalf of a Class defined

as:

**All persons who were employed by Colonial from 2010 through the present for**

**whom Colonial or FEC maintained a DUB Account administered by FEC.**

45. Defendants' practices and omissions were applied uniformly to all members of

the Class so that questions of law and fact are common to all members of the Class.

46. All members of the Class were and are similarly affected by the actions detailed above

and the relief sought herein is for the benefit of Plaintiffs and members of the Class.

47. The Class is so numerous as to make individual joinder impractical.

48. Questions of law and fact common to the Plaintiff Class exist that predominate over

questions affecting only individual members, including, inter alia:

a.   Whether Defendants could legally ignore the provisions of ERISA;

b.   Whether FCE and the DUB Plan Trustee charged excessive fees or FCE received

kickbacks from the Trustee;

c.   Whether Colonial and FCE made appropriate disclosures of the impact of the FCE

fees on the employees' benefit elections;

d.   Whether FCE misappropriated assets from the DUB Accounts;

e.   Whether FCE and/or the DUB Plan Trustee prudently invested the assets in the

DUB Accounts and/or retained part of the earnings for itself;

f.   Whether Colonial had a duty to its employees to monitor FCE and the DUB Plan

Trustee and to prevent it from taking advantage of the participants;

g.   Whether Colonial or its parent corporation received anything of value from FCE

in exchange for ignoring FCE's misconduct or as an inducement to select FEC to

administer the DUB Plan;

h.   Whether the members of the Plaintiff Class received the disclosures required by

ERISA.

49. Plaintiffs will fairly and adequately represent and protect the interests of the

Members of the Class.

50. Plaintiffs have retained counsel competent and experienced in both ERISA

and class action litigation.

51. Certification of this class action is appropriate under Federal Rule of Civil

Procedure 23 because the questions of law or fact common to the respective members of

the Class predominate over questions of law or fact affecting only individual

Members. This predominance makes class litigation superior to any other method available for a fair and efficient determination of the claims.

52. Absent a class action, it would be highly unlikely that the representative Plaintiffs or any other Members of the Class would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed the expected recovery.  Moreover, such lawsuits would run the risk of yielding inconsistent and conflicting adjudications.

53. Finally, certification is appropriate because Defendants acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate the relief sought on behalf of the Class.

<u>Count One</u>

(Against Defendant Colonial)

54. Plaintiffs re-allege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

55. As a fiduciary with respect to the DUB Plan, Colonial

   a. Failed to investigate FCE before entrusting the Plaintiffs' fringe benefit money to it;

   b. Made the decision to change the basis of the FCE and Trustee fees which caused those fees to be grossly excessive;

   c. Made the decision to change the basis of the FCE and Trustee fees in order to shift costs it was obligated to pay onto the Participants;

    d.  Failed to disclose material information to the Participants concerning their benefits including, but not limited to, the impact of the FCE and Trustee fees on the cost of medical care;

    e.  Steered, or allowed FCE to steer, Participants to coverage they did not need and could not afford in order to increase FCE's fees;

    f.  Appointed Ms. Ward as Plan Trustee when it knew, or would have known had it done a prudent investigation, that she was not qualified to be an investment manager of the DUB Plan;

    g.  Appointed Ms. Ward as a supposed independent Plan Trustee when it knew, or would have known had it done a prudent investigation, that she was affiliated with FCE;

    h.  Failed to monitor the quality of FCE's services, including, but not limited to, the failure to investigate the unexplained reductions in Dub Account opening and closing balances;

    i.  Failed to assure that the DUB Plan had an investment policy, or to monitor the investment performance of the DUB Plan;

    j.  Failed to monitor the operation of the Trust to assure that a Colonial DUB Plan Trust actually existed, or that its assets had not been commingled with another Trust Fund.

56. By so doing, Colonial

    a.  Failed to loyally discharge its fiduciary duties, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

b.   Failed to prudently discharge its fiduciary duties, in violation of ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B);

c.   Caused the DUB Plan to engage in transactions which it knew or should have known constituted direct or indirect furnishing of goods, services, or facilities between the plan and a party in interest, in violation of ERISA §406(a)(1)(C), 29 U.S.C. §1106(a)(1)(C);

d.   Caused the Plan to engage in transactions which it knew or should have known constituted direct or indirect transfers of assets of the Plan to, or use of assets to the Plan by, or for the benefit of, parties in interest, in violation of ERISA §406(a)(1)(D), 29 U.S.C. §1106(a)(1)(D);

e.   Dealt with the assets of the DUB Plan in its own interest or for its own account;

f.   Received consideration for its own personal account from a party dealing with the DUB Plan in connection with a transaction involving the assets of the DUB Plan in violation of Section 406 of ERISA, 29 U.S.C. § 1106; and

g.   Participated as a co-fiduciary in the breaches of fiduciary duty committed by FCE thereby incurring co-fiduciary liability as set forth in Section 405 of ERISA, 29 U.S.C. § 1105.

57. As the Plan Administrator of the DUB Plan, Colonial is required to comply with ERISA's reporting and disclosure requirements, and it failed to do so in violation of Sections 101 – 104 of ERISA, 29 U.S.C. §§ 1021-1024.

58. As the Plan Administrator of the DUB Plan, Colonial has an obligation to design and execute a claims adjudication process that complies with Section 503 of ERISA, 29

U.S.C. § 1133.  Colonial failed to assure that the DUB Plan had a claims process that complies with ERISA or assure that claims are adjudicated in a timely manner.

Count Two

(Against Defendant FCE)

59. Plaintiffs re-allege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

60. The preceding paragraphs reveal that FCE acted with callous disregard for the interests of Plaintiffs and exploited the trust Plaintiffs placed in FCE, as an agent of Colonial, to manage their financial accounts in accordance with the law.  FCE siphoned exorbitant fees directly from Plaintiffs' DUB accounts, and used the Trust assets to benefit itself. FCE knowingly violated ERISA with respect to the administration of Plaintiffs' DUB Accounts and breached its fiduciary duty to Plaintiffs to provide appropriate disclosure of its conduct with the full intent of hiding its actions.

61. By taking these actions, FCE

   h.   Failed to loyally discharge its fiduciary duties, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

   i.    Failed to prudently discharge its fiduciary duties, in violation of ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B);

   j.   Caused the DUB Plan to engage in transactions which it knew or should have known constituted direct or indirect furnishing of goods, services, or facilities between the plan and a party in interest, in violation of ERISA §406(a)(1)(C), 29 U.S.C. §1106(a)(1)(C);

k.   Caused the DUB Plan to engage in transactions which it knew or should have known constituted direct or indirect transfers of assets of the DUB Plan to, or use of assets to the DUB Plan by, or for the benefit of, parties in interest, in violation of ERISA §406(a)(1)(D), 29 U.S.C. §1106(a)(1)(D);

l.   Dealt with the assets of the DUB Plan in its own interest or for its own account; and

m.   Received consideration for its own personal account from a party dealing with the DUB Plan in connection with a transaction involving the assets of the DUB Plan in violation of Section 406 of ERISA, 29 U.S.C. § 1106; and

n.   Participated as a co-fiduciary in the breaches of fiduciary duty committed by Colonial thereby incurring co-fiduciary liability as set forth in Section 405 of ERISA, 29 U.S.C. § 1105.

<u>Prayer For Relief</u>

WHEREFORE. Plaintiffs pray that the Court enter an Order:

1. Certifying a Class as defined above;

2. Requiring Colonial and FCE to restore all losses caused to the DUB Plan and individual DUB Accounts as a result of their fiduciary breaches;

3. Requiring Defendants Colonial and FCE to provide an accounting of all profits that they realized as a result of the violations described in the Complaint;

4. Requiring Defendants to disgorge to the DUB Plan and the individual DUB Accounts all profits from their fiduciary breaches and prohibited transactions, or from their knowing participation in fiduciary breaches and prohibited transactions;

5.  Requiring Defendants Colonial and FCE to provide an accounting of all fees charged to the DUB Accounts and all consideration received by FCE and Colonial with respect to the DUB Plan;

6.  Requiring Colonial to make the DUB Plan compliant with the reporting and disclosure and claims provisions of ERISA;

7.  Ordering Colonial to pay each Class member a penalty of $100 a day for its refusal to provide any disclosures or reports about the DUB Plan as authorized by Section 503 of ERISA, 29 U.S.C. § 1132(c); and

8.  Award reasonable attorneys' fees and costs of the action pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g).

Respectfully submitted,

Edward Scallet
DC Bar No. 368617
EascoLaw PLLC
2756 Stephenson Lane NW
Washington, DC  20015-1054
(202) 329-6399
ted@eascolaw.com

Dated:  April 12, 2016