# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Berthe Benyam Abraha, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> Colonial Parking, Inc., *et al.*, <br><br> *Defendants*. | Civil Action No. 16-680 (CKK) |

## MEMORANDUM OPINION
(March 20, 2017)

This matter is brought by Plaintiffs on behalf of themselves and a putative class of similarly situated former and current employees of Defendant Colonial Parking, Inc. ("Colonial") against Colonial and Defendant FCE Benefit Administrators, Inc. ("FCE") for alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA"). The purported violations stem primarily from FCE's alleged charging of excessive administrative fees.

Presently before the Court are FCE's [5] Motion to Dismiss and Motion to Strike, [6] Motion to Take Judicial Notice, and Colonial's [12] Motion to Dismiss. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record for purposes of the pending motions, the Court **DENIES** FCE's [5] Motion to Dismiss and Motion to Strike, **GRANTS** FCE's [6] Motion

---

[1] The Court's consideration has focused on the following documents:

- FCE's Mem. of P. & A. in Supp. of Mot. to Dismiss and Mot. to Strike, ECF No. 5-1 ("FCE Mem.").
- Colonial's Mem. in Supp. of Mot. to Dismiss, ECF No. 12-1 ("Col. Mem.").
- Pls.' Mem. in Opp'n to Def. Colonial Parking's Mot. to Dismiss, ECF No. 15 ("Col. Opp'n Mem.").
- Pls.' Mem. in Opp'n to Def. FCE Benefit Administrators, Inc.'s Mots. to Strike and to Dismiss, ECF No. 16 ("FCE Opp'n Mem.").
- FCE's Reply to Pls.' Opp'n to FCE's Mem. of P. & A. in Supp. of Mot. to Dismiss and Mot. to Strike, ECF No. 17 ("FCE Reply").
- Colonial's Reply in Supp. of Mot. to Dismiss, ECF No. 18 ("Col. Reply").

to Take Judicial Notice, and **GRANTS IN PART AND DENIES IN PART** Colonial's [12] Motion to Dismiss.[2] Plaintiffs' section 1133 claim against Colonial is **DISMISSED WITHOUT PREJUDICE**. Plaintiffs' other claims against Defendants may proceed.

## I. BACKGROUND

The Court accepts as true the well-pleaded factual allegations of the Complaint, as it must on a motion to dismiss for failure to state a claim. The Court presents only those factual allegations that are relevant to its disposition of the pending motions.

Plaintiffs are Colonial employees who worked as parking lot attendants, earning approximately $2,000 per month in gross wages. Compl. ¶¶ 8, 34. Because Colonial contracts with federal agencies, it must comply with the McNamara-O'Hara Service Contract Act, which requires Colonial to "to pay a set amount per employee per hour for fringe benefits." *Id.* ¶ 3. Colonial complies with this requirement by funding a benefits plan known as the "The Forge Company (Colonial Parking) Death, Dismissal, Wage/Unemployment Benefit 'Reserve' Employee Account" (the "Plan"). *Id.* ¶ 4. Colonial has retained FCE to administer the Plan, which operates as follows: Colonial contributes money to the . . . Plan, FCE allocates the contribution to each [employee participant's] [separate account], and then it withdraws money for payments of insurance premiums and fees to FCE and others. Amounts not used for those purposes are held in trust for the employee participants where they are credited with a share of the . . . Plan's investment earnings." *Id.* ¶ 5. All agree that the Plan is subject to ERISA.

---

[2] After Defendants' motions were fully briefed, Plaintiffs filed a Notice of Supplemental Authority, ECF No. 25, informing the Court of two decisions in an unrelated action against FCE in the United States District Court for the District of Maryland. FCE subsequently moved to strike the Notice of Supplemental Authority. *See* ECF No. 26. As the Court finds that the authorities relayed by Plaintiffs in the notice were pertinent and helpful to the resolution of the pending motions, FCE's motion to strike the notice is **DENIED**.

Prior to October 2006, FCE administered the Plan for a nominal fee of $4.50 per employee participant. *Id*. ¶ 24. However, beginning in October 2006, two events occurred that allegedly resulted in a dramatic increase in the fees charged by FCE.  First, the medical and other insurance premiums that Colonial had previously paid directly for its employees were instead funneled through the Plan, which increased the amount of contributions to the Plan. *Id*. ¶ 25. At the same time, FCE's fee went from a fixed amount per participant, to one based on a percentage of the monthly contributions to the Plan. *Id*. Consequently, the amount of fees charged per participant by FCE increased by as much as twenty-fold. *Id*. ¶ 26 (the "fees charged  to Plaintiff Akalu went from $4.50 per month for the first nine months of 2006 to $108.91 in October 2006 and ha[ve] stayed at that level"). The change in fee structure allegedly inured to the mutual benefit of Colonial and FCE, as it allowed Colonial to shift administrative costs to the Plan, and allowed FCE to reap substantially larger administrative fees. *Id*. ¶ 29. According to the Complaint, Colonial and FCE never disclosed the change in fee structure to Colonial's employees; never explained that medical and insurance contributions to the Plan were effectively subject to a surcharge equal to the percentage-based fee charged by FCE; and deliberately failed to comply with ERISA's reporting and claims administration obligations in order to conceal the Plan's operations from its participants. *Id*. ¶¶ 27, 37–38. Plaintiffs allege a raft of other purported ERISA violations as well, including unexplained changes to Plaintiffs' account balances, apparent comingling of Plan assets, and improprieties with the Plan trustee. *Id*. ¶¶ 32 –35.

The Complaint also makes reference to a lawsuit filed in the United States District Court for the District of Maryland, *Perez v. Chimes District of Columbia*, No. 1:15-cv-3315 (D. Md. Oct. 30, 2015), wherein the Secretary of Labor has brought claims against FCE for allegedly charging excessive fees to administer an unrelated benefits plan, and for paying kickbacks to the employer

sponsor of that plan. *Id*. ¶ 9, 39. Plaintiffs relay that it was allegedly FCE's business practice "to provide financial incentives to employers so that they would conspire in FCE's extraction of unreasonable fees from the employees." The Department of Labor is actively investigating FCE in this regard. *Id*. ¶¶ 41–42.

## II. LEGAL STANDARD

Defendants move to dismiss the Complaint for "failure to state a claim upon which relief can be granted" pursuant to Federal Rule of Civil Procedure 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. District of Columbia Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation marks omitted). The court may also consider documents in the public record of which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

## III. DISCUSSION

Plaintiffs bring claims for Defendants' alleged failure to comply with several statutory obligations imposed by ERISA. The Court addresses each of these in turn, and finds that Plaintiffs

have pleaded sufficient factual matter to state a viable claim under each statutory violation pleaded in the Complaint.

A.  Breach of Fiduciary Duty - § 1104

ERISA imposes duties of loyalty and prudence on fiduciaries. 29 U.S.C. §§ 1104(a)(1)(A), (B). To state a claim for breach of fiduciary duty, Plaintiffs must plausibly allege that: "(1) the defendants are plan fiduciaries; (2) that the defendants breached their fiduciary duties; and (3) that the breach caused harm to the plaintiff[s]." *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 465 (7th Cir. 2005). A party can become a "plan fiduciary" in one of several ways. First, a party can be expressly designated as a fiduciary in the plan instrument (a so-called "named fiduciary"). Second, a party can be expressly delegated authority by a named fiduciary pursuant to a delegation provision in the plan instrument. *See generally Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 18 (1st Cir. 1998); *Hunt v. Hawthorne Assocs., Inc.*, 119 F.3d 888, 892 (11th Cir. 1997). Third, a party can be a fiduciary by exercising de facto control over an area of plan management or administration. Under this last category, "a party not specifically named as a fiduciary of a plan owes a fiduciary duty only 'to the extent' that party (i) exercises any discretionary authority or control over management of the plan or its assets; (ii) offers 'investment advice for a fee' to plan members; or (iii) has 'discretionary authority' over plan 'administration.'" *McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1002 (8th Cir. 2016) (citing 29 U.S.C. § 1002(21)(A)). In order for a party to be a de facto fiduciary with respect to a particular activity, there must be a "nexus" between the discretionary authority the party wields and the activity. *Id.*

Plaintiffs allege that Defendants breached their fiduciary duties by, *inter alia*, charging Plaintiffs and other Plan participants excessive fees for FCE's administrative services. Defendants challenge these allegations primarily on the basis that they owed no fiduciary duty with respect to

the amount of fees charged, and that, even if they did, Plaintiffs have failed to adequately allege that the fees charged were excessive. For the reasons described below, the Court finds these arguments unavailing, and concludes that Plaintiffs have stated a plausible claim for relief for Defendants' alleged violations of the duties of loyalty and prudence imposed on fiduciaries by ERISA.

### 1.   *FCE's Fiduciary Status*

FCE asserts that it was not a fiduciary with respect to the fees that it charged because those fees were set by a contract that was negotiated at arm's-length by FCE and Colonial. FCE Mem. at 14. A number of courts outside of the District of Columbia Circuit ("D.C. Circuit") have held that service providers such as FCE are not fiduciaries with respect to fee amounts that are set by contractual arrangements negotiated at arm's-length. *See Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A)*, 768 F.3d 284, 293 (3d Cir. 2014) ("when a service provider and a plan trustee negotiate at arm's length over the terms of their agreement, discretionary control over plan management lies not with the service provider but with the trustee, who decides whether to agree to the service provider's terms"); *Danza v. Fid. Mgmt. Trust Co.*, 533 F. App'x 120, 124 (3d Cir. 2013) ("At the point in time when Fidelity actually charged the fee for reviewing a DRO, Fidelity did have a fiduciary duty to the A & P Plan and its participants with respect to the administration of those services, but it did not then control the fee structure, as it was set in the agreement with A & P and Fidelity did not have unilateral discretion to change it."); *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009) (relying on cases holding that "a service provider does not act as a fiduciary with respect to the terms in the service agreement if it does not control the named fiduciary's negotiation and approval of those terms"); *Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 473 (7th Cir. 2007) ("Given that this

scheme was the very deal for which Carpenters bargained at arm's length, Caremark owed no fiduciary duty in this regard.").

By the same token, a number of courts outside of the D.C. Circuit have held that if a service provider *does* retain discretion over the fees that it charges, the service provider can be held liable as a fiduciary with respect to those fees. *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1259 (2d Cir. 1987) ("On the other hand, after a person has entered into an agreement with an ERISA-covered plan, the agreement may give it such control over factors that determine the actual amount of its compensation that the person thereby becomes an ERISA fiduciary with respect to that compensation."); *Golden Star, Inc. v. Mass Mut. Life Ins. Co.*, 22 F. Supp. 3d 72, 81 (D. Mass. 2014) ("The caselaw is clear that a service provider's retention of discretion to set compensation can create fiduciary duties under ERISA with respect to its compensation."); *United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 470–71 (S.D.N.Y. 2014) (holding that allegation that service provider charged fees that were not expressly set by contract was sufficient to defeat a motion to dismiss); *see also Seaway Food Town, Inc. v. Med. Mut. of Ohio*, 347 F.3d 610, 619 (6th Cir. 2003) ("We agree with the Seventh Circuit's reasoning that where parties enter into a contract term at arm's length and where the term confers on one party the unilateral right to retain funds as compensation for services rendered with respect to an ERISA plan, that party's adherence to the term does not give rise to ERISA fiduciary status *unless the term authorizes the party to exercise discretion with respect to that right*." (emphasis added)).

FCE contends that the change in fee structure from a nominal amount per Plan participant, to one based on a percentage of contributions to the Plan, was expressly permitted by the contract negotiated between FCE and Colonial. FCE Mem. at 14. Contrary to FCE's view of this matter, however, the change in fee structure is not alleged to have been one negotiated and performed at

arm's length between FCE and Colonial, but rather one undertaken for the mutual benefit of FCE and Colonial, at the expense of Colonial's employees. Compl. ¶ 29. Plaintiffs allege that the percentage-based fee structure permitted FCE to charge substantially higher fees, while allowing Colonial to shed the administrative burdens of managing its employees' health insurance coverage, *id*. ¶¶ 25, 29; that Colonial and FCE never disclosed the change in fee structure to Colonial's employees, because such disclosure would have allegedly led the employees to choose less expensive insurance coverage, which would have lowered the contributions to the Plan, and by extension, the amount of fees charged by FCE, *id*. ¶¶ 27–28, 38; and that FCE's "business practice was to provide financial incentives to employers so that they would conspire in FCE's extraction of unreasonable fees from the employees," *id*. ¶ 41. Consequently, under the particular factual allegations of this case, the Court finds that Plaintiffs have plausibly alleged that FCE exercised discretion over its compensation, meaning Plaintiffs have plausibly alleged that FCE acted as a fiduciary with respect to its compensation. *See Santomenno v. Transamerica Life Ins. Co.,* No. CV 12-02782 DDP MANX, 2013 WL 603901, at *6–*7 (C.D. Cal. Feb. 19, 2013) (denying motion to dismiss because of skepticism that a service provider contract was negotiated at arm's length). Moreover, because the Court finds that Plaintiffs have plausibly alleged that FCE exercised discretion over its fees, the Court need not address FCE's contention that it was not a fiduciary because it only performed ministerial, non-discretionary services. FCE Mem. at 11; *see Strumsky v. Washington Post Co.*, 922 F. Supp. 2d 96, 104 (D.D.C. 2013) ("Persons who perform only 'administrative' or 'ministerial functions' are not plan fiduciaries." (citing 29 CFR § 2509.75–8)).

    *2.  Colonial's Fiduciary Status*

       Colonial contends that it was not a fiduciary with respect to the amount of fees charged by FCE because the determination of those fees was a "settlor" function. Col. Mem. at 7. The Supreme

Court of the United States has instructed that when plan sponsors such as Colonial "adopt, modify, or terminate . . . plans . . . they do not act as fiduciaries, but are analogous to the settlors of a trust." *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) (citations omitted). Nevertheless, although "a plan sponsor does not become a fiduciary by performing settlor-type functions such as establishing a plan and designing its benefits . . . a plan sponsor does become a fiduciary . . . if . . . it retains or exercises any discretionary authority over the management or administration of a plan." *Perez v. Chimes D.C., Inc.*, No. CV RDB-15-3315, 2016 WL 4993293, at *5 (D. Md. Sept. 19, 2016) (internal quotation marks and citations omitted). Here, there are two independent reasons to conclude that Colonial retained management discretion over FCE's fees.

First, "[u]nder ERISA, fiduciaries who have appointed other fiduciaries have a continuing duty to monitor the actions of the appointed fiduciaries." *Cannon v. MBNA Corp.*, No. CIVA 05-429 GMS, 2007 WL 2009672, at *5 (D. Del. July 6, 2007) (citing *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465 (4th Cir. 1996)). "[T]he power (through plan amendment) to appoint, retain and remove plan fiduciaries constitutes 'discretionary authority' over the management or administration of a plan . . . ." *Coyne*, 98 F.3d at 1465. The Complaint alleges that Colonial "established or maintained . . . [the Plan] for the benefit of its employees . . . ," Compl. ¶ 10, and that it contracted with FCE to administer the Plan, *id*. ¶ 4. This allegation reasonably suggests that Colonial had "the power . . . to appoint, retain and remove [FCE]," and consequently to determine FCE's compensation, which means that Colonial was a fiduciary to the extent of its discretionary authority to appropriately monitor FCE's performance and fees. *Coyne*, 98 F.3d at 1466; *Chimes*, 2016 WL 4993293, at *6 (finding that employer had a fiduciary duty to monitor "FCE's fees and performance").

Second, Plaintiffs have plausibly alleged that FCE exerted de facto control over the amount of fees charged by FCE. Namely, Plaintiffs allege that Colonial benefitted from the change in fee structure because it was able to shift its administrative burden to FCE, Compl. ¶ 29, and that it facilitated this fee structure by not disclosing the structure to its employees, *id*. ¶¶ 27, 38. Accordingly, because Plaintiffs have plausibly alleged that Colonial exercised discretion over the amount of fees charged by FCE, they have plausibly alleged that Colonial had a fiduciary duty with respect to those fees.

### 3. *Plaintiffs Have Plausibly Alleged that Defendants Breached Their Fiduciary Duties*

Both Colonial and FCE contend that even if they had a fiduciary duty with respect to FCE's fees, Plaintiffs have failed to plausibly allege that those fees were so excessive as to constitute a breach of fiduciary duty. Col. Mem. at 9–10; FCE Mem. at 16. Both Defendants cite *Young v. General Motors Investment Management Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009) for the proposition that Plaintiffs have failed to plausibly allege that FCE's fees were sufficiently excessive to constitute a breach of fiduciary duty because Plaintiffs "failed to allege facts which would support a finding that the fees charged were excessive relative to the services rendered . . . ." Col. Mem. at 9; FCE Mem. at 17; *see also Chimes*, 2016 WL 4993293, at *8 (noting that the "essential question . . . in determining the reasonableness of a fee is whether the charges are reasonable in relation to what the plan receives" (internal quotation marks and alterations omitted)).

The Court, however, finds that the Complaint sufficiently alleges that FCE's fees were excessive relative to the services performed by FCE. In particular, Plaintiffs allege that FCE's fee rate went from a nominal, fixed amount per Plan participant, to one based on a percentage of the contributions made to the Plan for a given participant, which Plaintiffs claim was not industry-

standard because "when insurance premiums rise, the administrator [receives additional fees] even though the level of work stays the same." Compl. ¶ 25. This change resulted in a substantial increase in fees for FCEs. *Id*. ¶ 31 (alleging that FCE's fees increased by "4000–5000 percent" in one month). By contrast, despite the increase in administrative fees, Plaintiffs contend that FCE's services were habitually deficient. Plaintiffs allege, *inter alia*, that FCE failed to consistently provide account statements to Plan participants, *id*. ¶ 33; to administer any sort of claims process, *id*. ¶ 38; and that FCE made distributions from an account that is not formally associated with the Plan, *id*. ¶ 35. Accordingly, given the allegations that FCE's fees were unusually high, while its services were unusually poor, the Court concludes that Plaintiffs have plausibly alleged that FCE's fees were so excessive that they constitute a breach of fiduciary duty by FCE and Colonial. As a result, Plaintiffs have stated a plausible claim for relief for violations of ERISA's duties of loyalty and prudence, as codified in sections 1104(a)(1)(A) and (B). Although Plaintiffs plead additional factual allegations to support their claim that Defendants breached their fiduciary duties under ERISA, given that Plaintiffs have already stated a plausible claim based on the factual allegations just recounted, the Court need not address whether such other factual allegations would independently suffice to state a claim for relief under sections 1104(a)(1)(A) and (B). *See* Col. Reply at 2 (noting certain factual predicates for breach of fiduciary liability that Colonial contested).

### B. Co-Fiduciary Liability - § 1105

ERISA imposes liability on one fiduciary for the acts of another in certain cases. The relevant statutory language provides that:

> a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105. Both FCE and Colonial challenge Plaintiffs' co-fiduciary claim on the basis that they did not have a fiduciary duty with respect to the activities challenged in the Complaint, and therefore cannot be held liable as a co-fiduciaries.[3] Col. Mem. at 14; FCE Mem. at 19–20. However, the Court has now concluded that Plaintiffs have plausibly alleged that Colonial and FCE breached their fiduciary duties. Furthermore, as detailed in the preceding section, Plaintiffs allege that Colonial and FCE moved to a percentage-based fee structure for their mutual benefit, at the expense of Plan participants, and that the two sought to conceal the new fee structure and its impact from the Plan participants. This, in the Court's view, suffices to state a plausible claim under section 1105 for each Defendant's knowing participation in a breach of fiduciary duty by the other.

### C.  Statute of Limitations - § 1113

ERISA's statute of limitations provides that:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

---

[3] Although Colonial asks the Court to treat the co-fiduciary claim against Colonial as conceded, Colonial itself admits that Plaintiffs have opposed Colonial's challenge, albeit briefly. Col. Reply at 2 (citing Col. Opp'n Mem. at 16). As a result, the Court reaches the merits.

> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113. Colonial contends that Plaintiffs' claims are time-barred because Colonial hired FCE more than six years ago, and the increase in fees alleged in the Complaint likewise occurred more than six years ago. Col. Mem. at 18–19.

Defendants may raise a statute of limitations defense in a motion to dismiss "when the facts that give rise to the defense are clear from the face of the complaint." *Smith–Haynie v. District of Columbia,* 155 F.3d 575, 578 (D.C. Cir. 1998). Because statute of limitations defenses often are based on contested facts, the court should be cautious in granting a motion to dismiss on such grounds; "dismissal is appropriate only if the complaint on its face is conclusively time-barred." *Firestone v. Firestone,* 76 F.3d 1205, 1209 (D.C. Cir. 1996).

Two considerations preclude the Court from deciding the statute of limitations issues raised by Colonial at this procedural juncture. First, although the Complaint alleges that the fee increase occurred in 2006, it also alleges that Colonial and FCE sought to conceal the fee structure from Colonial's employees so they would continue to opt for more expensive health coverage, thereby increasing the contributions to the Plan, and the amount of fees received by FCE. Compl. ¶ 27–28. Consequently, it is not evident from the face of the Complaint that the "date of the last action which constituted a part of the breach or violation" occurred more than six years before the Complaint was filed. Moreover, in *Tibble v. Edison*, the Supreme Court instructed that where a breach of fiduciary duty is based on a failure to monitor, as it is here with respect to Colonial, "so long as the alleged breach of the continuing duty [to monitor] occurred within six years of suit, the claim is timely." 135 S. Ct. 1823, 1828–29 (2015). Here, Plaintiffs allege that FCE continued to

charge excessive fees after October 2006, and that Colonial continuously failed to appropriately monitor those fees. Compl. ¶ 55(h). Accordingly, for this reason as well, the Court cannot conclude from the face of the Complain that Plaintiffs' claims are "conclusively time-barred."

D.  Prohibited Transactions - § 1106

"ERISA supplements [its] general fiduciary obligations . . . by prohibiting certain categories of transactions believed to pose a high risk of fiduciary self-dealing." *Kindle v. Dejana*, No. 14CV6784SJFARL, 2017 WL 837692, at *8 (E.D.N.Y. Feb. 28, 2017). In particular, ERISA mandates that a "fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . furnishing of goods, services, or facilities between the plan and a party in interest . . . [or] transfer to, or use by or for the benefit of a party in interest, of any assets of the plan . . . ." 29 U.S.C. § 1106(a)(1)(C), (D). A "party in interest" includes other fiduciaries. 29 U.S.C. § 1002(14). Plaintiffs bring claims on this statutory basis against both Colonial and FCE. Compl. ¶¶ 56(c), (d); 61(j), (k). Only Colonial directly challenges these claims, primarily on the basis that "[a]bsent from the Complaint is any identification of a [prohibited] transaction in which Colonial allegedly engaged." Col. Mem. at 13.[4] However, the Complaint alleges that Colonial contracted with FCE, and that as a result of that contract, FCE was able to draw excessive fees from the assets of the Plan. Given that Plaintiffs have plausibly alleged that FCE was a Plan fiduciary, and thereby a "party in interest," the Court finds that under the particular factual circumstances of this case, they have plausibly alleged that Colonial engaged in a prohibited transaction with FCE as defined in sections 1106(a)(1)(C) and

---

[4] Although Colonial contends that Plaintiffs have not opposed this challenge, Col. Reply at 2, Plaintiffs have in fact contested the issue in their opposition brief, Col. Opp'n Mem at 8 (asserting that Colonial violated sections 1106(a)(1)(C) and (D) in connection with FCE's administrative fees).

(D). *See In re Northrop Grumman Corp. Erisa Litig.*, No. CV0606213MMMJCX, 2015 WL 10433713, at *27 (C.D. Cal. Nov. 24, 2015) (declining to grant summary judgment on section 1106 claim based on finding that payment of excessive administrative fees could constitute a prohibited transaction under ERISA); *In re Regions Morgan Keegan ERISA Litig.*, 692 F. Supp. 2d 944, 961 (W.D. Tenn. 2010) (finding that allegations of excessive advisory fees stated viable claims under sections 1106(a)(1)(C) and (D)).

   E.   Insufficient Claims Procedure – § 1133

   Plaintiffs allege that although the "claim process mandated by ERISA is supposed to provide a means for employees to challenge the amount of their benefits, . . . Colonial and FCE provide[d] no claims process." Compl. ¶ 38. The claims process referred to by Plaintiffs is specified by statute and associated regulations. In particular, ERISA requires that

> In accordance with regulations of the Secretary, every employee benefit plan shall—
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133; *see generally Lee v. Hartford Life & Acc. Ins. Co.*, 928 F. Supp. 2d 51, 53 (D.D.C. 2013) (explaining that "ERISA requires that a plan administrator follow certain procedures if it denies a claim for benefits"); *James v. Int'l Painters & Allied Trades Indus. Pension Plan*, 844 F. Supp. 2d 131, 152 (D.D.C. 2012), *aff'd*, 738 F.3d 282 (D.C. Cir. 2013) (noting that the D.C. Circuit has adopted a "substantial compliance" test for evaluating section 1133 violations—namely, whether the denial notice provided to a Plan participant substantially

complied with section 1133 and associated regulations); *Sage v. Automation, Inc. Pension Plan & Trust*, 845 F.2d 885, 893 (10th Cir. 1988) ("Although the statute, 29 U.S.C. § 1133(2), may not literally require a written claims review procedure, it does require a reasonable opportunity for a full and fair review of the denial of a claim.").

Plaintiffs bring their section 1133 claim only against Colonial, which challenges that claim primarily on the basis that no *denial* of benefits has been alleged in the Complaint. Col. Mem. at 18.[5] However, Plaintiffs have not opposed Colonial's challenge in any way, and Colonial asserts that Plaintiffs have thereby conceded their section 1133 claim. Col. Reply at 2. "[T]he Court may treat those arguments that the [P]laintiffs failed to address as conceded," and the discretion to do so "lies wholly with the district court . . . ." *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) (internal quotation marks omitted). The Court elects to exercise that discretion here, and accordingly, treats Plaintiffs' section 1133 claim as conceded, and dismisses the claim without prejudice.

F.   Reporting and Disclosure Obligations

ERISA imposes certain disclosure and reporting obligations on plan "administrators." *See generally* 29 U.S.C. §§ 1021–1024. Plaintiffs allege that Colonial and FCE failed to satisfy those obligations because they did not submit annual reports to the federal government, and did not provide Plan participants with summary plan descriptions. *See id*. § 1021 (requiring the "administrator of each employee benefit plan" to furnish a summary plan description to plan participants, and to file an annual report with the Department of Labor). "Congress has provided

---

[5] Colonial also challenges this claim on the basis that the trust agreement allocated responsibility over claims management to FCE, Col. Mem. at 17–18, but for the reasons more fully discussed in the following section, the Court declines to rule on this basis given the factual dispute over what documents constitute the entirety of the trust agreement.

for three classes of persons who may be sued as the plan administrator . . . ." *Moran v. Aetna Life Ins. Co.*, 872 F.2d 296, 299 (9th Cir. 1989). In particular, ERISA defines "administrator" as:

> (i) the person specifically so designated by the terms of the instrument under which the plan is operated;

> (ii) if an administrator is not so designated, the plan sponsor; or

> (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

29 U.S.C. § 1002(16)(A). Although a small minority of courts have contemplated that a party acting as a "de facto" plan administer could be subject to ERISA's disclosure and reporting obligations, the "de facto administrator argument has been flatly rejected by at least eight circuits." *Elite Ctr. for Minimally Invasive Surgery, LLC v. Health Care Serv. Corp.*, No. 4:15-CV-00954, 2016 WL 6236328, at *1 (S.D. Tex. Oct. 24, 2016) (collecting cases). Consequently, in order to be liable under sections 1021–1024, a party must generally be a plan administrator as defined by section 1002. *See generally Davis v. Liberty Mut. Ins. Co.*, 871 F.2d 1134, 1138 & n.5 (D.C. Cir. 1989).

FCE contends that it is not liable under sections 1021–1024 because it was not designated as the plan administrator. FCE Mem. at 18 ("FCE was never (nor is it alleged to have ever been) the plan administrator"). In particular, FCE asserts that the trust agreement for the Plan named Colonial, and not FCE, as the plan administrator. FCE Mem., Ex. 1B ¶¶ 1.11, 2.1. The trust agreement, in pertinent part, provides that "Employer shall serve as Plan Administrator until such time as Employer appoints another Plan Administrator." *Id.* ¶ 2.1. Colonial, for its part, contends that it delegated to FCE "the duty to 'prepare, sign, and file any and all' reports to governmental authorities, and disclosures to employees, required by applicable law." Col. Mem. at 16 (citing Ex. 1 ¶ 4.3(b)). Colonial also asserts that certain forms filed with the Department of Labor show that

the Plan has submitted the requisite annual reports. *Id*. Plaintiffs concede that only the plan administrator is subject to ERISA's reporting and disclosure obligations, but contend that there is a factual dispute as to which Defendant was appointed to that role. FCE Opp'n Mem. at 15; Col. Opp'n Mem. at 16. The waters are further muddied as the forms referenced by Colonial seemingly list both Colonial and FCE as plan administrator, Col. Opp'n Mem., Ex. A, and because Defendants disagree as to what documents constitute the entirety of the trust agreement, Col. Reply at 3 n.3.

The Court may take notice of the trust agreement and the publicly availably forms and other information cited by the parties, and accordingly, for purposes of the pending motions, grants FCE's motion to take judicial notice of those materials. *See Al-Aulaqi v. Panetta*, 35 F. Supp. 3d 56, 67 (D.D.C. 2014) ("judicial notice may be taken of public records and government documents available from reliable sources"); *In re Mut. Fund Inv. Litig.*, 403 F. Supp. 2d 434, 440 (D. Md. 2005) ("In ruling on a motion to dismiss in an ERISA action, the court is not confined to the allegations in the complaint, but may review the plan documents referred to in the complaint and relied on by the plaintiff."). Nonetheless, at this procedural juncture, the Court need not wade into the thicket of factual issues that the parties have raised with respect to Plaintiffs' claims under sections 1021–1024. *See Kellogg Brown & Root Servs., Inc. v. United States*, 109 Fed. Cl. 288, 299 n.8 (2013) (declining to decide contractual ambiguities on a motion to dismiss). Accordingly, the Court concludes that Plaintiffs have stated a plausible claim for relief against Colonial and FCE for their alleged failure to comply with ERISA's reporting and disclosure obligations, as Plaintiffs have alleged that the Plan failed to furnish summary plan descriptions and annual reports in a manner that complies with sections 1021–1024. Moreover, as a practical matter, the Court finds it more prudent to decide the issue of which entity served as plan administrator with the aid

of discovery, rather than on the basis of documents whose import and completeness are less than certain.

G. Motion to Strike

Pursuant to Federal Rule of Civil Procedure 12(f), FCE has moved to strike references in the Complaint to the *Chimes* litigation. FCE Mem. at 21–22. "Under Rule 12(f), a party may move the district court to strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. However, courts recognize that striking portions of pleadings is a drastic remedy and, accordingly, motions to strike are generally disfavored." *NCB Mgmt. Servs., Inc. v. F.D.I.C.*, 843 F. Supp. 2d 62, 72 (D.D.C. 2012) (Kollar-Kotelly, J.) (internal quotation marks and citations omitted).

Contrary to FCE's view of the matter, the Court finds that Plaintiffs' references to the *Chimes* litigation are appropriate under the circumstances. Most notably, Plaintiffs cite the *Chimes* litigation in order to buttress the pertinent allegation that FCE's business practice was to "provide financial incentives to employers so that they would conspire in FCE's extraction of unreasonable fees from the employees." Compl. ¶ 41; *see Rodriguez v. City of N.Y.*, No. CV1600214ENVST, 2016 WL 3264166, at *3 (E.D.N.Y. June 13, 2016) ("the Court finds unpersuasive Defendant's contention that allegations in a complaint referencing or relying on complaints in other actions are necessarily immaterial for purposes of a motion to strike"); *Lakits v. York*, 258 F. Supp. 2d 401, 409–10 (E.D. Pa. 2003) (denying motion to strike references to an unrelated lawsuit because evidence of defendant's prior misconduct could be admissible at trial). Accordingly, the Court declines to grant the "drastic remedy" of striking Plaintiffs' references to the *Chimes* litigation from the Complaint.

## IV. CONCLUSION

For all of the foregoing reasons, the Court **DENIES** FCE's [5] Motion to Dismiss and Motion to Strike; **GRANTS** FCE's [6] Motion to Take Judicial Notice; **GRANTS IN PART AND DENIES IN PART** Colonial's [12] Motion to Dismiss; and **DENIES** FCE's [26] Motion to Strike Plaintiffs' Notice of Supplemental Authority. Plaintiffs' section 1133 claim against Colonial is **DISMISSED WITHOUT PREJUDICE**. Plaintiffs' other claims against Defendants may proceed.

An appropriate Order accompanies this Memorandum Opinion.

Dated: March 20, 2017

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

20