**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

BENYAM ABRAHA, et al.,

          Plaintiffs,

    v.

COLONIAL PARKING, INC., et al.,

          Defendant.

Civil Action No. 1:16-cv-00680-CKK

---

**DEFENDANT FCE BENEFIT ADMINISTRATORS, INC.'S RESPONSE TO NOTICE**
**OF PLAINTIFFS RE DISCLOSURE OF EXPERT REPORTS AND MOTION TO**
**QUASH AND/OR FOR PROTECTIVE ORDER**

**I.    Introduction**

Discovery in this matter closes on Friday, April 20, 2018.  This Court has previously

warned the Parties in its December 18, 2017 scheduling order that: "**no extensions of the**

**[discovery] dates set forth within this Scheduling and Procedures Order shall be**

**permitted.**" *See* Am. Sched. and Proc. Order, [Docket Entry ("DE") 51], p. 1 (emphasis in

original).  On **April 16**, at 4:56 p.m. Eastern Time, Plaintiffs' counsel attempted for the **first**

**time** to serve a subpoena by email seeking an **April 20 production** of an expert report prepared

by FCE Benefit Administrators, Inc. ("FCE") expert Aaron Raddock in the *Chimes* Litigation.[1]

*See* **Exhibit A**, April 16, 2018 Email with attached Subpoena.  That separate action was filed by

the U.S. Secretary of Labor in another District Court against eleven separate defendants, of

which FCE is one.  *See* **Exhibit B**, *Chimes* Litigation First Amended Complaint.  It concerns an

ERISA plan which is very different from the ERISA plan at issue here, and also involves

---

[1] *R. Alexander Acosta v. Chimes District of Columbia, Inc., et al.*, previously captioned as *Edward C.
Hugler v. Chimes District of Columbia, Inc., et al.* and *Perez v. Chimes District of Columbia, Inc.*, U.S. District
Court for the District of Maryland Civil Case No. 1:15-cv-03315-RDB.

numerous legal theories and facts completely irrelevant to this litigation.  *See Ibid*.  The expert

reports in the *Chimes* Litigation also contain confidential information which is subject to a

separate protective order in that case.  *See* **Exhibit C**, *Chimes* Litigation Protective Order.

This Court should quash the Subpoena or, in the alternative, issue a protective order

preventing Plaintiffs' counsel from obtaining copies of expert reports in the *Chimes* Litigation.

First, it is improper to subpoena expert reports prepared in other litigation.  Second, even if that

were not the case, the expert reports in the *Chimes* Litigation are, at best, tangentially relevant to

the issues in dispute in this litigation but contain detailed irrelevant financial information subject

to a separate protective order in that case.  Third, Plaintiffs have not provided sufficient

reasonable time to respond to the Subpoena and have not provided an adequate explanation for

their failure to do so or their failure to provide sufficient notice prior to the close of discovery.

Accordingly, this Court should quash the Subpoena or, in the alternative, issue a protective order

preventing Plaintiffs' counsel from obtaining copies of expert reports in the *Chimes* Litigation.

## II.    Relevant Factual and Procedural Background

Plaintiffs cited to the existence of the *Chimes* Litigation in their April 12, 2016,

Complaint, and have been trying to make this case about that case ever since.  *See* Complaint,

[DE 1], ¶ 9.  The two cases are, however, different.

### A.    The Services FCE Provided to the Plans are Different

The Chimes D.C. Health & Welfare Plan (the "Chimes Plan") involves a nonprofit

employer who regularly employs more than one thousand employees at numerous worksites.

FCE previously served as the third party administrator for the Chimes Plan, in which capacity

FCE negotiated insurance contracts, processed medical and ancillary benefit claims, and

provided support for additional benefits, including a severance pay benefit known as a DUB

Benefit.  In addition to its direct compensation from the Chimes Plan, FCE also received fees, characterized by the plaintiff in the *Chimes* Litigation as indirect compensation, from various plan serviced providers (primarily insurers) for services rendered to them.

FCE was separately retained to provide third party administrator services to the Forge Health and Welfare Plan (the "Forge Plan") to provide benefits to certain employees of Defendant Colonial Parking, Inc.  Unlike the Chimes Plan, the Forge Plan was an Administrative Services Only plan under which FCE was responsible for tracking employee hours to determine their entitlement to benefits under the Service Contract Act, processing requests for reimbursement from the Plan for benefit payments made by employer Colonial Parking, Inc., and providing third party administrator services in support of DUB Benefits.

In contrast to FCE's support of the Chimes Plan, FCE was not responsible to recommend insurance, negotiate contracts, or process medical or ancillary medical claims for the Forge Plan. Nor did FCE receive indirect compensation from the insurers selected by Colonial Parking, Inc.'s insurance broker, the Meltzer Group.  Additionally, unlike the Chimes Plan, which regularly involved over one thousand employees, during the entire life of the Forge Plan there were less than 200 Colonial Parking employees participating over the life of the plan and there were typically less than 100 Colonial Parking employees participating in the Forge Plan at any given time.

Another significant difference between Chimes District of Columbia, Inc. ("Chimes") and Colonial Parking, Inc. is that Chimes is a non-profit employer while Colonial Parking, Inc. is a for profit employer.  As this Court knows from previous pleadings and motions, a significant issue in this Action is the use of the ACEC/MW Welfare Fund Plan, which housed assets for multiple employers, to provide DUB Benefits to Colonial Parking employees.  As a non-profit

organization, however, Chimes did not need the tax benefits associated with that multiemployer arrangement.

> **B.    The Claims in this Action and the *Chimes* Litigation are Different and the Expert Reports are Different**

The gist of Plaintiffs' action in this case is that FCE allegedly charged excessive fees after October 1, 2006, when Colonial's DUB Benefit was transitioned from a defined amount benefit to a sweep benefit.  *See* Complaint [DE 1], ¶¶ 6, 24-25.  By contrast, the operative First Amended Complaint in the *Chimes* Litigation alleges that FCE charged excessive fees for its broader third party administrator services to that plan considering, amongst other allegations, its receipt of indirect compensation in the form of commissions from other service providers and allegations that FCE's fees were unreasonable in light of the quality of its claims administration.

FCE retained Mr. Raddock to provide an expert opinion regarding the reasonableness of its fees in the *Chimes* Litigation, responding in part to the Plaintiff's expert.  He prepared two expert reports, produced on December 13, 2017 and February 2, 2018.  Without disclosing any confidential details, a significant portion of his initial *Chimes* Litigation expert report responds to the analysis of the Secretary's retained expert, analyzes issues unique to the Chimes Plan, and addresses issues relevant to Counts pleaded against FCE by the Secretary in the *Chimes* Litigation but not in this Action.  The initial expert report also includes 37 exhibits (including an expert report by another party) relating to that case consisting of over 2,400 pages.  Mr. Raddock's second report is entirely dedicated to responding to issues raised by the Secretary's retained expert.  It includes 10 exhibits consisting of more than 560 pages.  Both reports contain sensitive financial information and were designated as confidential under the protective order in that case.

FCE separately retained Mr. Raddock to provide an expert opinion regarding the reasonableness of fees it charged the Forge Plan in this case. He produced two separate expert reports, on February 16 and March 19, and was deposed by Plaintiffs' counsel on March 28, 2018. At deposition, Plaintiffs' counsel asked for a copy of the expert report in the *Chimes* Litigation, which neither FCE nor Mr. Raddock provided to him. Plaintiffs' counsel later attempted to solicit information about the contents of Mr. Raddock's expert report in the *Chimes* Litigation, but FCE's counsel objected to that line of questioning.

### C.    Plaintiffs Seek to Subpoena Mr. Raddock's Expert Reports in the *Chimes* Litigation

Despite the fact that FCE's counsel clearly objected at deposition to any questioning regarding the content of Mr. Raddock's expert reports in the *Chimes* Litigation, Plaintiffs' counsel waited **18 days** before issuing a subpoena. On Sunday, April 15, Plaintiffs' counsel Ted Scallet sent an email to FCE counsel Marc A. Koonin asking Mr. Koonin to "confirm that you will produce Mr. Raddock's expert report in *Chimes* without a subpoena and on or before April 20." *See* **Exhibit D**, Email Chain between Ted Scallet and Marc A. Koonin. Mr. Koonin promptly replied that the *Chimes* Litigation expert report was both irrelevant to this litigation and subject to a separate protective order, and that FCE was not at liberty to release it. *Ibid*.

Following a further exchange of meet and confer emails on Monday, April 16, Mr. Koonin informed Mr. Scallet that Mr. Raddock's initial expert report contains 37 exhibits containing more than 2,400 pages and that FCE would be obligated to notify the other parties in the *Chimes* Litigation of any subpoena. *See* **Exhibit D**, Email Chain between Ted Scallet and Marc A. Koonin. Mr. Koonin also confirmed that FCE did not intend to produce (and would object to any other party producing) any expert report in the *Chimes* Litigation without a court order requiring such production but was willing to meet and confer further as necessary. *Ibid*.

On Monday, April 16, at 4:57 Eastern Time, Mr. Scallet sent an email to James Clare, who is Assistant General Counsel for Mr. Raddock's employer, BDO USA LLP, attaching a subpoena.  *See* **Exhibit A**, April 16, 2018 Email with attached Subpoena.  The Subpoena demands the production of "[t]he narrative portion of the report (not the exhibits) prepared by Aaron Raddock in" the *Chimes* Litigation.  *Ibid*.  Following a further exchange of correspondence between the two, on April 18, Mr. Clare agreed to accept service of the Subpoena by email and simultaneously served objections on Mr. Scallet.  *See* **Exhibit E**, April 18, 2018 Letter from James Clare to Edward Scallet.  Amongst other objections, BDO objected that "non-party BDO has obligations as an accounting firm in the middle of its busiest week of the year that make the 96 hour time-frame for a response imposed by the Second Subpoena patently unreasonable and improper under FRCP 45."  *Ibid*.

Given the extremely short deadline to respond to the Subpoena, after meeting and conferring with Mr. Scallet, on April 16, 2018, Mr. Koonin sent an email to this Court asking for its assistance in resolving this dispute.  In response to that and subsequent email communications with counsel, this Court issued two minute orders on April 17.  Consistent with those orders, Plaintiffs filed a Notice on the evening of April 17 and FCE has filed this Response.

### III.    This Court Should Quash the Subpoena or Grant a Protective order

FCE respectfully asks this Court to quash the Subpoena pursuant to Rules 26, 30, and 45 of the Federal Rules of Civil Procedure or, in the alternative, to issue a protective order pursuant to Rule 26 prohibiting Plaintiffs' counsel from obtaining expert reports in the *Chimes* Litigation. *See* Rule 26(c)(1)(A) and (D) (permitting courts to issue protective orders "forbidding the disclosure or discovery" and "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters"); *See also Von Schwab v. AAA Fire & Casualty*

*Insurance Co.*, No. 1:14-cv-00183-CMA-NYW, 2015 WL 1840123, at *3 (D. Colo. Apr. 21, 2015) (granting motion for protective order preventing the production of a testifying expert's prior reports).  Pursuant to Rule 45, the court where compliance is required may quash or modify a subpoena.[2]  Fed. R. Civ. P. 45(d)(3).  Courts **must** quash a subpoena which **fails to allow a reasonable time to comply**, requires a compliance beyond the applicable geographical limits, **requires disclosure of privileged or other protected matter**, or imposes an **undue burden**. Fed. R. Civ. P. 45(d)(3)(A).  Courts **may also** quash a subpoena which requires disclosure of a **trade secret or other confidential** research, development, or **commercial information** or an unretained expert's opinion.  Fed. R. Civ. P. 45(d).  Courts in this District require such motions to be filed prior to the subpoena response date or shortly thereafter, and FCE has done so.[3]  *See HT S.R.L. v. Velasco*, 125 F. Supp. 3d 211, 229-30 (D.D.C. 2015).

A.    **A Subpoena Setting a Production Date on Four Days' Notice is Unreasonable**

The Federal Rules require that the party issuing a subpoena provide the witness with a reasonable amount of time to reply and courts must grant a motion to quash where the issuing party fails to do so.  Fed. R. Civ. P. 45(d)(3)(A).  Numerous courts have held that providing only a few days' notice to comply, as here, fails to allow a reasonable time to comply.  *See, e.g., United States v. Philip Morris Inc.*, 312 F. Supp. 2d 27, 36–37 (D.D.C. 2004) (quashing subpoenas that only gave witnesses "three business days, or less" to prepare for the depositions);

---

[2] The Subpoena requires compliance in this Court.  BDO maintains offices in and Mr. Raddock works out of McLean, Virginia.  Although this is in another District, courts in this District have determined that they have jurisdiction over motions to quash or compel production in response to subpoenas under similar circumstances.  *See S.R.L. v. Velasco*, 125 F. Supp. 3d 211, 218, fn. 4, 220 (D.D.C. 2015).  In the unlikely event this Court should determine it is not the compliance court in this matter, FCE requests relief in the form of a protective order pursuant to Rule 26(c) prohibiting Plaintiffs' counsel from obtaining expert reports in the *Chimes* Litigation.

[3] Plaintiff's argument that there was no need for FCE to address this issue prior to the discovery cutoff and production date is disingenuous in light of this Court's Amended Scheduling Order and the case law of this District.

*City of Pomona v. Cont'l Ins. Co.*, No. CV077703ODWPLAX, 2008 WL 11343060, at *1 (C.D. Cal. Dec. 17, 2008) (three days to respond to subpoena for document production was unreasonable under Rule 45); *Ponson v. BellSouth Telecommunications, Inc.*, No. CIV.A 09-0149, 2010 WL 1552802, at *3 (E.D. La. Apr. 16, 2010) (quashing a subpoena that only gave the respondent two days to produce documents and prepare for a deposition). This is particularly true here, where BDO has indicated that this is its busiest week of the year, and where Plaintiffs' counsel knew that the parties had scheduled depositions in two different cities on April 19 and 20, 2018.

Plaintiffs failed to provide sufficient time to respond to the Subpoena. Accordingly, this Court should grant FCE's Motion to Quash.

**B.     It is Improper to Subpoena Expert Reports in Other Litigation**

FCE is unaware of any decisions in this District directly addressing whether a party or expert witness is required to provide copies of expert reports or testimony from other cases. However, numerous other courts have held such requests to be improper since they seek information beyond the scope of expert discovery provided for by the Federal Rules. *See, e.g., Trunk v. Midwest Rubber & Supply Co.*, 175 F.R.D. 664, 664-65 (D. Colo. 1997) (granting motion to quash and stating that Rule 26 "does not require an expert to produce any reports from unrelated litigation[s]"); *Von Schwab v. AAA Fire & Casualty Insurance Co.*, No. 1:14-cv-00183-CMA-NYW, 2015 WL 1840123, at *3 (D. Colo. Apr. 21, 2015) (granting motion for protective order preventing the production of a testifying expert's prior reports); *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 01 CIV.11295(CBM), 2003 WL 22227959, at *2 (S.D.N.Y. Sept. 26, 2003); *Surles v. Air France*, No. 00CIV5004RMBFM, 2001 WL 815522, at *7

(S.D.N.Y. July 19, 2001) aff'd, 2001 WL 1142231 (S.D.N.Y. Sept. 27, 2001).  This Court should rule likewise here.

### C.    The Subpoena Seeks Confidential Financial Information Irrelevant to this Action

Even if this Court were inclined to rule that expert reports in other litigation is subject to production — which it should not — this Court should not permit their production because they are irrelevant or at the very least disproportionate to the needs of the case.  Substantial portions of the Mr. Raddock's initial *Chimes* Litigation expert report respond to the plaintiff's expert in that case, as does Mr. Raddock's entire second report.  The Plaintiffs' experts in this case are not the same as the plaintiff's expert in the *Chimes* Litigation.  Accordingly, Mr. Raddock's analysis and rebuttal of the *Chimes* Litigation plaintiff's expert's reports is irrelevant to the resolution of this Action.  Moreover, the expert reports in the *Chimes* Litigation address the allegations in **that** case, which are **different** from those of **this** case.  On the other hand, the expert reports in the *Chimes* Litigation contain sensitive financial information relating to FCE and other FCE clients, such as Chimes.  This Court can and should protect disclosure of such information, particularly where, as here, the information sought is irrelevant and disproportionate to the needs of this case.

## IV.    Conclusion

Plaintiffs are not entitled to Mr. Raddock's expert reports in the unrelated *Chimes* Litigation and have abused the discovery process by serving a Subpoena with four days' notice during the busiest week of the year for BDO and while counsel for FCE was preparing for depositions for which the dates were agreed to far in advance.  The *Chimes* Litigation expert reports are irrelevant and disproportionate to the needs of this case.  Accordingly, this Court should quash the Subpoena or issue a protective order prohibiting Plaintiffs' counsel from obtaining copies of those reports.

Respectfully submitted,

April 18, 2018

DUANE MORRIS LLP

*/s/ Marc A. Koonin*
Robert D. Eassa (*pro hac vice*)
Marc A. Koonin (*pro hac vice*)
DUANE MORRIS LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Tel:  415-957-3000
Fax:  415-707-2023
Email: RDEassa@duanemorris.com
          MAKoonin@duanemorris.com

Michael J. Schrier, D.C. Bar No. 444693
DUANE MORRIS LLP
505 9th St., NW, Suite 1000
Washington, D.C.  20004-2166
Tel:  202-776-5221
Fax:  202-478-0158
Email: MJSschrier@duanemorris.com

Attorneys for Defendant
FCE Benefit Administrators, Inc.

Exhibit A

**Koonin, Marc A.**

| | |
|---|---|
| **From:** | Ted Scallet <ted@eascolaw.com> |
| **Sent:** | Monday, April 16, 2018 1:56 PM |
| **To:** | James Clare |
| **Cc:** | ABarnes@wileyrein.com; MCohen@wileyrein.com; sbaron91@gmail.com; Eassa, Robert D.; Schrier, Michael J; Zacharia, Heather J.; Koonin, Marc A. |
| **Subject:** | RE: Non-Party Subpoena to BDO USA, LLP in Abraha, et al. v. Colonial Parking, Inc. et al., CV 1:16:00680 |
| **Attachments:** | Subpoena to  BDO USA LLP for Raddock Chimes Report.pdf |

Mr. Clare – please confirm that you are authorized to accept the attached subpoena.

**From:** James Clare <jclare@bdo.com>
**Sent:** Tuesday, March 13, 2018 11:53 AM
**To:** Ted Scallet <ted@eascolaw.com>
**Cc:** ABarnes@wileyrein.com; MCohen@wileyrein.com; sbaron91@gmail.com; Eassa, Robert D. <RDEassa@duanemorris.com>; Schrier, Michael J <MJSchrier@duanemorris.com>; Zacharia, Heather J. <HJZacharia@duanemorris.com>; Koonin, Marc A. <MAKoonin@duanemorris.com>
**Subject:** RE: Non-Party Subpoena to BDO USA, LLP in Abraha, et al. v. Colonial Parking, Inc. et al., CV 1:16:00680

Mr. Scallet,

Attached is BDO's supplemental response to the subpoena.  Please call me with any questions.  By request, I've cc'd the other counsel on the matter.

Thank you,
James

**James Clare**
Assistant General Counsel
212-404-5579 (Direct)    305-5579 (Internal)
212-203-9182 (Mobile)    212-885-8116 (Fax)
jclare@bdo.com

**BDO**
100 Park Avenue
New York, NY 10017
UNITED STATES
212-885-8000
www.bdo.com

**From:** Ted Scallet [mailto:ted@eascolaw.com]
**Sent:** Monday, March 5, 2018 2:59 PM
**To:** James Clare <jclare@bdo.com>
**Subject:** RE: Non-Party Subpoena to BDO USA, LLP in Abraha, et al. v. Colonial Parking, Inc. et al., CV 1:16:00680

*Attention: This email was sent from someone outside of BDO USA. Always use caution when opening attachments or clicking links from unknown senders or when receiving unexpected emails.*

LOL.  Have you provided copies to the other counsel?

1

**From:** James Clare <jclare@bdo.com>
**Sent:** Monday, March 5, 2018 1:38 PM
**To:** Ted Scallet <ted@eascolaw.com>
**Subject:** Non-Party Subpoena to BDO USA, LLP in Abraha, et al. v. Colonial Parking, Inc. et al., CV 1:16:00680

Mr. Scallet,

Attached is BDO's response to the subpoena. Please call me with any questions.

Thank you,
James

**James Clare**
Assistant General Counsel
212-404-5579 (Direct)    305-5579 (Internal)
212-203-9182 (Mobile)   212-885-8116 (Fax)
jclare@bdo.com

**BDO**
100 Park Avenue
New York, NY 10017
UNITED STATES
212-885-8000
www.bdo.com

*BDO USA, LLP, a Delaware limited liability partnership, is the U.S. member of BDO International Limited, a UK company limited by guarantee, and forms part of the international BDO network of independent member firms.*

*BDO is the brand name for the BDO network and for each of the BDO Member Firms.*

*IMPORTANT NOTICES*

*The contents of this email and any attachments to it may contain privileged and confidential information from BDO USA, LLP. This information is only for the viewing or use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of, or the taking of any action in reliance upon, the information contained in this e-mail, or any of the attachments to this e-mail, is strictly prohibited and that this e-mail and all of the attachments to this e-mail, if any, must be immediately returned to BDO USA, LLP or destroyed and, in either case, this e-mail and all attachments to this e-mail must be immediately deleted from your computer without making any copies hereof. If you have received this e-mail in error, please notify BDO USA, LLP by e-mail immediately.*

*BDO USA, LLP, a Delaware limited liability partnership, is the U.S. member of BDO International Limited, a UK company limited by guarantee, and forms part of the international BDO network of independent member firms.*

*BDO is the brand name for the BDO network and for each of the BDO Member Firms.*

*IMPORTANT NOTICES*

*The contents of this email and any attachments to it may contain privileged and confidential information from BDO USA, LLP. This information is only for the viewing or use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of, or the taking of any action in reliance upon, the information contained in this e-mail, or any of the attachments to this e-mail, is strictly prohibited and that this e-mail and all of the attachments to this e-mail, if any, must be immediately returned to BDO USA, LLP or destroyed and, in either case, this e-mail and all attachments to this e-*

*mail must be immediately deleted from your computer without making any copies hereof. If you have received this e-mail in error, please notify BDO USA, LLP by e-mail immediately.*

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of Columbia

| | |
|---|---|
| Benyam Abraha, et al. | ) |
| _Plaintiff_ | ) |
| v. | )    Civil Action No.   1:16:00680 (CKK) |
| Colonial Parking, Inc., et al. | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                              BDO USA LLP

_(Name of person to whom this subpoena is directed)_

   ☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: The narrative portion of the report (not the exhibits) prepared by Aaron Raddock in _Hugler v. Chimes District of Columbia, Inc., Civ. No. RDB-15-3315._

| Place: EascoLaw PLLC<br><br>    2756 Stephenson Lane, NW<br>    Washington, DC 20015 | Date and Time:<br><br>04/20/2018 5:00 pm |
|---|---|

   ☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

   The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      April 16, 2018

             _CLERK OF COURT_

                                          OR

| _____ | _____ |
|---|---|
| _Signature of Clerk or Deputy Clerk_ | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_      Plaintiffs

                                         , who issues or requests this subpoena, are:

Edward Scallet, 2756 Stephenson Lane NW, Washington, DC 20015; ted@eascolaw.com; 202-329-6399

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
 **(i)** is a party or a party's officer; or
 **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply. **(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
 **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
 **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance. **(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
 **(i)** fails to allow a reasonable time to comply;
 **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
 **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
 **(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
 **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
 **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
 **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
 **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand. **(B)** *Form for Producing Electronically Stored Information Not Specified.*
If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery. **(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
 **(i)** expressly make the claim; and
 **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district

where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# Exhibit B

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

THOMAS E. PEREZ, SECRETARY OF LABOR,
UNITED STATES DEPARTMENT OF LABOR,
201 12th Street South, Suite 500, Arlington, VA
222202,

                      Plaintiff,

      v.

CHIMES DISTRICT OF COLUMBIA, INC.,
4815 Seton Drive,
Baltimore, Maryland 21215 (Baltimore City);
CHIMES INTERNATIONAL LTD,
4815 Seton Drive,
Baltimore, Maryland 21215 (Baltimore City);
FCE BENEFIT ADMINISTRATORS, INC.,
887 Mitten Road,
Burlingame, California, 94010;
GARY BECKMAN,
887 Mitten Road,
Burlingame, California, 94010;
STEPHEN PORTER,
887 Mitten Road,
Burlingame, California, 94010;
MARTIN LAMPNER,
4815 Seton Drive,
Baltimore, Maryland 21215 (Baltimore City);
ALBERT BUSSONE,
4815 Seton Drive,
Baltimore, Maryland 21215 (Baltimore City);
BENEFITS CONSULTING GROUP,
2648 FM 407E, Suite 200,
Bartonville, Texas 76226;
JEFFREY RAMSEY,
2648 FM 407E, Suite 200,
Bartonville, Texas 76226;
CHIMES D.C. INC. HEALTH & WELFARE PLAN,
4815 Seton Drive,
Baltimore, Maryland 21215 (Baltimore City); and
MARILYN WARD,
3615 Capistrano Trail
Austin, TX 78739.

                      Defendants.

Civil Action No. 15-3315

FIRST AMENDED COMPLAINT

Thomas E. Perez, Secretary of the United States Department of Labor (the "Secretary"),

hereby alleges:

1.      This action arises under the Employee Retirement Income Security Act of 1974

("ERISA" or the "Act"), as amended, 29 U.S.C. §§1001, et seq., against fiduciaries of and

service providers to the Chimes D.C. Health & Welfare Plan (the "Plan").

2.      Chimes D.C., Inc. ("Chimes DC") established the Plan to provide a package of

medical, prescription, life insurance, accidental death and dismemberment, disability, and

unemployment benefits to over a thousand participants and beneficiaries, most of whom were

disabled workers who provided janitorial and custodial services for government contracts.

3.      Since as early as 2008, Chimes DC, its parent company Chimes International,

Limited ("Chimes International"), and its executives, Martin Lampner and Albert Bussone

(collectively, the "Chimes Defendants"), caused the Plan to pay excessive fees for services and

failed to prudently monitor the management of the Plan and its assets.

4.      In addition, the Chimes Defendants, the Plan's service providers -- FCE Benefits

Administrators, Inc. ("FCE"), Benefits Consulting Group ("BCG") -- and the service providers'

owners caused the Plan to engage in a number of transactions for their personal benefit or

knowingly participated in such transactions.  The Plan's trustee, Marilyn Ward ("Ward"),

knowingly participated in many such transactions, failed to take reasonable steps to disclose or

remedy the conflicts, and engaged in her own fiduciary breaches.

5.      FCE exercised its fiduciary authority and control over the Plan's contracts with

other service providers to increase its compensation through undisclosed commissions, fees, and

other payments.  To the extent that the Chimes Defendants were aware that FCE might be

receiving such payments, they failed to monitor the third party administrator that they had

appointed, thus enabling FCE's fiduciary breaches and prohibited transactions.

6.      The Secretary brings this action against Chimes International, Chimes DC, Martin

Lampner, Albert Bussone, FCE, FCE's owners Gary Beckman and Stephen Porter, BCG, BCG's

owner Jeffrey Ramsey, and Ward in order to obtain relief under Sections 409 and 502(a)(2) and

(5) of ERISA, 29 U.S.C. §§1109 and 1132(a)(2) and (5), in the form of equitable remedies that

will restore losses to the Plan, require the defendants to disgorge unlawful profits to the Plan, and

otherwise redress violations and enforce the provisions of Title I of ERISA.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to Section

502(e)(1) of ERISA, 29 U.S.C. §1132(e)(1).

8.      Venue with respect to this action lies in the United States District Court for the

District of Maryland, pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), because

the Plan was administered in Baltimore, Maryland, the fiduciary breaches at issue took place

within this district, and several defendants reside or may be found in this district.

## PARTIES

9.      The Secretary, pursuant to Sections 502(a)(2) and (5) of the Act, 29 U.S.C.

§1132(a)(2) and (5), has the authority to enforce the provisions of Title I of ERISA by, among

other means, the filing and prosecution of claims against fiduciaries and others who committed

violations of ERISA.

10.      Defendant Chimes DC is a Washington, D.C. corporation established under

Section 501(c)(3) of the Internal Revenue Code, with its principal place of business in Baltimore,

Maryland.  It is a federal government contractor who employs disabled workers for janitorial and

custodial services.  At all relevant times, Chimes DC was the Plan Sponsor and named Plan

Administrator of the Plan.  As Plan Administrator, Chimes DC was a named fiduciary of the

Plan.  At all relevant times, Chimes DC had and exercised discretionary authority and

discretionary control respecting the appointment, retention, and payment of the Plan's service

providers, insurers, and/or fiduciaries, including FCE and BCG, as well as other aspects of

managing and administering the Plan and its assets.  At all relevant times, Chimes DC therefore

was a fiduciary with respect to the Plan within the meaning of Section 3(21)(A) of ERISA, 29

U.S.C. §1002(21)(A), because it exercised discretionary authority and/or discretionary control

respecting management of the Plan and/or exercised any authority or control respecting

management or disposition of its assets, and had discretionary authority and/or discretionary

responsibility in the administration of the Plan.  As a Plan fiduciary, a person providing services

to the Plan, and an employer of employees covered by the Plan, Chimes DC was a party in

interest within the meaning of ERISA §3(14)(A), (B), and (C), 29 U.S.C. §1002(14)(A), (B) and

(C), for the relevant time period.

     11.    At all relevant times, Defendant Chimes International Limited ("Chimes

International") was the parent company of Chimes DC and The Chimes Foundation, Inc. (the

"Chimes Foundation"), a fundraising arm of Chimes International and its subsidiaries.  During

the relevant time period, Chimes International, through the Governance Committee of its Board

of Directors, had and exercised discretionary authority and discretionary control respecting

appointment, retention, and payment of the Plan's services providers, insurers, and/or fiduciaries,

including FCE and BCG.  At all relevant times, Chimes International therefore was a fiduciary

with respect to the Plan within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C.

§1002(21)(A), because it exercised discretionary authority and/or discretionary control

Case 1:15-cv-03315-RDB    Document 90-2    Filed 03/29/16    Page 5 of 34

respecting management of the Plan and/or exercised any authority or control respecting management or disposition of its assets, and had discretionary authority and/or discretionary responsibility in the administration of the Plan.  For the relevant time period, Chimes International also was a party in interest under ERISA §3(14)(A) and (E), 29 U.S.C. §1002(14)(A) and (E), because it was a fiduciary and an owner of 50 percent or more of Chimes DC.

12.    From at least 2008 until his retirement in December 2014, Defendant Albert Bussone ("Bussone") was Vice President of Chimes DC and Chief Operating Officer and Executive Vice President of Chimes International.  From February 2012 until December 2014, he was also Chief Development Officer and Vice President of Chimes DC and Chimes International.  While negotiating, vetting, and/or executing the Plan's contracts with FCE and BCG, Bussone individually exercised discretionary authority or discretionary control respecting appointment, retention, and payment of Plan service providers, insurers, and/or fiduciaries, including FCE and BCG, and exercised discretionary authority or discretionary control over other aspects of managing and administering the Plan and its assets.  Therefore, Bussone was a fiduciary with respect to the Plan within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A), because he exercised discretionary authority and/or discretionary control respecting management of the Plan and/or exercised any authority or control respecting management or disposition of its assets, and had discretionary authority and/or discretionary responsibility in the administration of the Plan.  As a Plan fiduciary and an employee and corporate officer of Chimes DC and Chimes International, Bussone also was a party in interest under ERISA §3(14)(A) and (H), 29 U.S.C. §1002(14)(A) and (H).

13.    From at least 2008 until July 2010, Defendant Martin Lampner ("Lampner") was Executive Vice President of Chimes DC and Chimes International.  From July 2010 to the present, he has been President of Chimes DC and Chimes International.  From at least 2008 until January 2011, Lampner was Chief Financial Officer of Chimes DC and Chimes International.  From January 2011 to the present, he has been Chief Executive Officer of Chimes DC and Chimes International.  While negotiating, vetting, and/or executing the Plan's contracts with FCE and BCG, Lampner individually exercised discretionary authority or discretionary control respecting appointment, retention, and payment of Plan service providers, insurers, and/or fiduciaries, including FCE and BCG, and exercised discretionary authority or discretionary control over other aspects of managing and administering the Plan and its assets.  Therefore, Lampner was a fiduciary with respect to the Plan within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A), because he exercised discretionary authority and/or discretionary control respecting management of the Plan and/or exercised any authority or control respecting management or disposition of its assets, and had discretionary authority and/or discretionary responsibility in the administration of the Plan.  As a Plan fiduciary and an employee and corporate officer of Chimes DC and Chimes International, Lampner also was a party in interest under ERISA §3(14)(A) and (H), 29 U.S.C. §1002(14)(A) and (H).

14.    At all relevant times, Defendant FCE was the third party administrator of the Plan.  As the Plan's third party administrator, FCE exercised discretionary control or discretionary authority over claims processing, payment of claims, recordkeeping, coverage administration, and negotiating the Plan's contracts with service providers and/or insurers, and exercised authority or control over Plan assets.  At all relevant times, FCE was a Plan fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A), because it exercised

discretionary authority and/or discretionary control respecting management of the Plan and/or exercised any authority or control respecting management or disposition of its assets, and had discretionary authority and/or discretionary responsibility in the administration of the Plan.  As a Plan fiduciary and service provider, FCE also was a party in interest under ERISA §3(14)(A) and (B), 29 U.S.C. §1002(14)(A) and (B).

15.    At all relevant times, Defendant Gary Beckman ("Beckman") was the President and Chief Executive Officer of FCE, and owned 50 percent of FCE.  As a Plan service provider and an officer and 10 percent or more shareholder of a service provider, Beckman also was a party in interest under ERISA §3(14)(B) and (H), 29 U.S.C. §1002(14)(B) and (H).

16.    At all relevant times, Defendant Stephen Porter ("Porter") was the Chief Operating Officer of FCE, and owned 50 percent of FCE.  As a Plan service provider and an officer and 10 percent or more shareholder of a service provider, Porter also was a party in interest under ERISA §3(14)(B) and (H), 29 U.S.C. §1002(14)(B) and (H).

17.    FCE, Porter, and Beckman collectively shall be referred to as the "FCE Defendants."

18.    At all relevant times, Defendant BCG was a sole proprietorship and was engaged to provide plan representation services to the Plan.  At all relevant times, Defendant Jeffrey Ramsey ("Ramsey") was the owner and an officer of BCG.  BCG provided services to the Plan and thus was a party in interest under ERISA §3(14)(B), 29 U.S.C. §1002(14)(B).  In addition, at all relevant times, Ramsey was a person providing services to the Plan, as well as an officer and 10 percent or more shareholder of a service provider, and thus was a party in interest under ERISA §3(14)(B) and (H), 29 U.S.C. §1002(14)(B) and (H).

19.    BCG and Ramsey collectively shall be referred to as the "BCG Defendants."

20.     At relevant times, Marilyn Ward was a Plan trustee and named fiduciary of the

Plan.  Ward was a Plan fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C.

§1002(21)(A), because she exercised discretionary authority and/or discretionary control

respecting management of the Plan and/or exercised any authority or control respecting

management or disposition of its assets, and had discretionary authority and/or discretionary

responsibility in the administration of the Plan.  Under the Amended and Restated Trust

Agreement governing her appointment as Trustee, Ward had "exclusive authority and discretion

to manage and control funds" except to the extent delegated to the Plan Administrator (Chimes

DC) or an investment manager, and "[a]ll discretions . . . conferred on her" were "absolute"

"unless specifically limited[.]"  The Trust Agreement granted Ward exclusive powers over

various aspects of the Plan, including but not limited to investments, obligations and litigation,

deposits, insurance benefits, insurance protection, advances to the trust, distributions, and hiring

agents.  The Trust Agreement also required Ward to "maintain full and complete records of her

transactions for, and funds held for the account of, the Trust," and she had discretionary authority

and/or responsibility over such records, including payments to FCE.  In addition to her

enumerated powers and responsibilities, Ward exercised discretionary control and authority over

her and FCE's fees by authorizing fees that were not made in accordance with the fee schedules

agreed upon and approved by Chimes DC.  As a Plan fiduciary and service provider, Ward also

was a party in interest under ERISA §3(14)(A) and (B), 29 U.S.C. §1002(14)(A) and (B).

21.     The Chimes D.C. Health & Welfare Plan (the "Plan") was established by Chimes

DC in 1999, primarily to fulfill its obligations under various government contracts to provide

fringe benefits to its employees.  The Plan is a partially self-insured health and welfare plan and

is mostly funded by contributions required to be paid under Chimes DC's federal government

contracts and federal prevailing wage laws.  At all relevant times, the Chimes D.C. Health &

Welfare Plan (the "Plan") was an employee benefit plan as defined by ERISA §3(3), 29 U.S.C.

§1002(3), and was subject to ERISA pursuant to ERISA §4(a)(1), 29 U.S.C. §1003(a)(1).  The

Plan is joined as a defendant pursuant to Rule 19(a) of the Federal Rules of Civil Procedure to

assure that complete relief can be granted.

FACTUAL ALLEGATIONS

The Plan's Excessive Expenses, Including FCE and BCG's Fees

22.     From at least 2008 to the present, the Chimes Defendants have had responsibility

for prudently and loyally monitoring the Plan's administration and expenses, including the

performance and fees of service providers appointed by the Chimes Defendants.  As detailed

below, the Chimes Defendants failed to meet their obligations, resulting in substantial losses to

the Plan.  The Plan paid millions of dollars in excessive expenses, most of which benefitted the

Plan's third party administrator, FCE, and the plan representative, BCG.  While Chimes

Defendants reaped substantial benefits from the Plan's retention of FCE and BCG, FCE and

BCG received exorbitant fees from the Plan.  Despite these fees, FCE failed to provide

reasonably accurate or timely adjudication of claims for participants and beneficiaries, while

BCG failed to provide broker services or other services commensurate with its fees.

23.     Each year, the Chimes Defendants received financial and other reports

summarizing the Plan's expenses and administration.  Based on these reports, the Chimes

Defendants knew or should have known that the Plan's expenses were excessive for a plan of its

size and nature, but failed to take adequate steps to reduce expenses by searching for alternate

providers.

9

24.     From at least 2008 through the present, the Plan has spent millions of dollars more than would be reasonable for a partially self-funded plan of this size and nature.  Most of the Plan's expenses were used to pay FCE and BCG's fees and to pay service providers who were selected and recommended by FCE and whose fees were negotiated by FCE.

The Chimes Defendants' Conflicted Relationships With FCE and BCG

25.     At all relevant times, the Plan's relationship with FCE and BCG, including the fees paid by the Plan to FCE and BCG, was governed by the Amended and Restated Adoption Agreement for the Health & Welfare Plan of The Chimes, D.C., Inc. and its accompanying exhibits, including the fee schedule and the Third Party Administrator Agreement executed by FCE, BCG, and Chimes DC (collectively, the "Adoption Agreement").

26.     The Adoption Agreement granted Chimes DC authority to appoint, retain, and/or remove the Plan's service providers, including the third party administrator, FCE, and plan representative, BCG.  At all relevant times, the Adoption Agreement allowed Chimes DC, as the employer, to terminate the Plan's contract with FCE, and thus BCG, upon 60 days' notice.

27.     At relevant times, the Chimes Defendants exercised authority and control over FCE and BCG's appointment and retention, as well as the fees paid to FCE and BCG.

28.     At relevant times, Bussone and Lampner solicited FCE and BCG to make donations to the Chimes Foundation.  The Chimes Foundation was the fundraising entity of Chimes International and its other subsidiaries, and its assets could be used by Chimes International and any subsidiary of Chimes International, including Chimes DC.

29.     At relevant times and as early as 2008, FCE and BCG made donations to the Chimes Foundation.

30.     In 2009 and thereafter, the Plan's third party administrator, FCE, and the Plan's representative, BCG, jointly pledged at least $330,000 to the Chimes Foundation.  In making one such pledge, FCE and BCG expressly referenced their status as service providers to Chimes and their "special relationship" and "gratifying partnership with the Chimes," and FCE and BCG specifically stated that "[a]n additional $55,000 will be paid for a one (1) year option of continuing benefit services to our Chimes partner."

31.     Between 2009 and 2014, FCE paid at least $400,000 to the Chimes Foundation in connection with its engagement as service provider to the Plan.

32.     In 2010, Lampner solicited FCE to employ his child and FCE hired his child.  At relevant times, including during the Chimes Defendants' renewal of FCE's engagement in 2009 and 2011, Lampner took part in the negotiation of FCE's fees and recommended to Chimes DC and Chimes International that FCE's engagement under the Adoption Agreement be renewed.

33.     Between 2009 and 2014, BCG paid at least $282,500 to the Chimes Foundation in connection with its engagement as service provider to the Plan.

34.     In 2013, Jeffrey Ramsey, the owner of BCG, provided discounts to Chimes DC on work performed by BCGHR LLC, another company owned by Ramsey.

35.     In connection with the payments and benefits described in paragraphs 28 through 33, the Chimes Defendants exercised their authority to cause the Plan to retain and pay FCE and BCG as service providers.

36.     In 2009 and 2011, the Governance Committee of the Board of Directors of Chimes International and Chimes DC (the "Governance Committee") reviewed Chimes DC's contract with FCE and BCG to perform services for the Plan and were informed by Bussone and Lampner of the amount of donations pledged by FCE and BCG.

37.    In 2009 and 2011, Lampner and Bussone assured the Governance Committee that they had consulted with an independent broker, who was unable to find suitable alternative service providers to FCE.

38.    In fact, in 2004, an independent broker had identified possible alternative providers for Bussone and Lampner, but the Chimes Defendants failed to request bid proposals from these alternative providers or even set up meetings to discuss their services and fees.

39.    After 2004 and at the time of their recommendations to the Governance Committee in 2009 and 2011, Bussone and Lampner failed to conduct a full request for bid proposals from alternative providers, or request that an independent broker obtain and compare bid proposals from alternative providers.

40.    At most, Bussone and Lampner relied on BCG and Ramsey's recommendation to continue retaining FCE, even though BCG and Ramsey were conflicted.  From the beginning of the Plan's relationship with FCE and BCG, FCE and BCG jointly marketed FCE's products to Chimes DC, and BCG was at all times being paid from the Plan pursuant to the same agreement as FCE.  BCG did not conduct a request for bid proposals from alternative providers.

41.    The Chimes Defendants did not take other steps to ensure that FCE's fees were reasonable, such as consulting with an independent expert regarding FCE's fees or comparing FCE's fees to industry benchmarks.

42.    The Chimes Defendants also did not take steps to ensure that BCG's fees were reasonable for the services actually provided by BCG.  BCG's services amounted to participant communications and client assistance that did not justify its compensation, which ranged from $400,000 to $600,000 per year from 2008 to the present.

43.     In 2009 and 2011, relying on Lampner and Bussone's recommendations, the Governance Committee approved the extensions to Chimes DC's contract with FCE and BCG to perform services for the Plan.  To date, the Plan continues to retain and pay FCE and BCG as service providers.

44.     The retention of FCE and BCG in connection with the Chimes Defendants' receipt of payments and other benefits caused losses to the Plan, including but not limited to FCE and BCG's excessive fees, and profited the Chimes Defendants in the form of the charitable contributions and discounts for work performed by BCGHR LLC.

FCE's Receipt of Payments from Plan Service Providers

45.     At relevant times, and consistent with the Adoption Agreement, FCE had and exercised fiduciary authority to recommend, negotiate, and execute contracts between the Plan and various service providers, thereby exercising authority and control over the management of Plan assets.  Such service providers included the Plan's trustees as well as service providers related to the Plan's stop loss insurance, prescription drug benefits, behavioral health and employee assistance programs, and medical benefits.  In connection with the Plan's contracts with the service providers, the FCE Defendants caused FCE to receive rebates, commissions, and other payments from the service providers.  This compensation, received from Plan service providers, was paid in addition to fees paid directly by the Plan.

46.     FCE's Third Party Administrator Agreement with Chimes DC attaches fee schedules for various service providers, including FCE, BCG, and the Plan trustee, and states that "no change in any Service Provider to the Plan and Trust will be effective unless approved in writing by both TPA and Employer."  Ward could not be removed as Trustee without FCE's consent.  At all relevant times, FCE recommended and retained Ward as the Plan trustee and at

no time did the Chimes Defendants question or independently review Ward's appointment as a Trustee.

47.    While Chimes DC generally was aware that payments could be made by unidentified Plan service providers to FCE, Chimes DC and FCE had agreed that, with a few specific exceptions, any commissions or rebates paid by Plan service providers to FCE should be forwarded to the Plan.

48.    Contrary to this agreement between Chimes DC and FCE, FCE failed to forward all payments that it received from service providers to the Plan.

49.    FCE failed to disclose to Chimes DC that it was retaining some of the payments and often failed to disclose the specific amounts being paid by Plan service providers to FCE and retained by FCE.  Each year, FCE misrepresented to Chimes DC that it had forwarded all such payments to the Plan, thus fraudulently concealing its receipt of additional, unauthorized compensation.

50.    As a result of its conduct, FCE not only enriched itself but also prevented the Chimes Defendants from having all of the facts necessary to make prudent decisions about whether to retain FCE or use the service providers recommended by FCE.  FCE's conduct also prevented the Chimes Defendants from accurately assessing the true cost of FCE's services and negotiating with FCE at arm's length over FCE's fees for its services.  As a result of its retention of payments from Plan service providers, FCE increased its own compensation at the Plan's expense and without Chimes DC's authorization.

51.    Notwithstanding FCE's failure to disclose its additional compensation, Chimes DC was generally aware that FCE was receiving payments and had a duty to take steps to ensure that FCE properly forwarded the payments to the Plan as promised to Chimes DC.  At all

14

relevant times, Chimes DC had authority to remove FCE. Chimes DC also failed to maintain adequate records of its agreements with FCE regarding such payments.

52.     In addition to the payments that FCE retained without Chimes DC's approval, FCE received other payments from Plan service providers that FCE disclosed to Chimes DC and that Chimes approved. Such payments were made in connection with the Plan's contracts for life insurance, accidental death and dismemberment insurance, and prescription drug benefits. With respect to this compensation, Chimes DC failed to negotiate corresponding reductions in FCE's fees from the Plan. As a result, the Plan suffered losses because FCE's direct fees were excessive considering the other income that FCE was earning in connection with the Plan.

53.     FCE's retention of payments from Plan service providers, whether or not they were approved by Chimes DC, caused losses to the Plan, and FCE improperly received profits. As officers and owners of FCE who knowingly participated in FCE's conduct, Porter and Beckman personally benefitted and profited from FCE's retention of the payments.

Ward's Payments to FCE and Knowledge of FCE's Payments to Chimes

54.     FCE's own records characterized the charitable contributions made by FCE to The Chimes Foundation as "promotional expenses" that FCE itemized as "Business Development and Retention Expenses." As a result, at least some of Ward's payments to FCE for business development and retention expenses were used to pay charitable donations to The Chimes Foundation. The FCE Defendants told Ward that the Chimes Defendants had solicited and FCE paid donations to the Chimes Foundations. On information and belief, Ward knew or should have known that her payments to FCE were being used to pay donations to The Chimes Foundation. Ward also knew that FCE agreed to and did employ Martin Lampner's child in connection with the Plan's retention of FCE as a service provider for the Plan.

Case 1:15-cv-03315-RDB    Document 90-2    Filed 04/29/16    Page 16 of 34

55.      During Ward's tenure as Plan trustee, Ward paid the FCE Defendants the following payments: (1) 10.9% of total trustee fees received by Ward for "Business Development and Retention Costs"; (2) payments for "trustee assistants" who were employed by FCE, received W-2s from FCE, and worked in FCE's offices, for performing work, including but not limited to Plan work; (3) an additional 10% Management Fee of the total of all trustee assistant costs, as well as $250/month in "overhead" fees; and (4) rent payments for use of property owned by JMA Investments ("JMA"), an entity owned by Porter and Beckman.

56.      Ward had no written agreement regarding the rent payments, and she did not compare the rental price to any alternative facilities.  The facilities were used for Plan work, along with other work.

57.      Ward did not disclose her arrangements with FCE to the Chimes Defendants, despite the fact that FCE had fiduciary authority and control over Ward's continuing appointment as Plan Trustee and thus the Plan's payment of her fees, and despite the fact that Ward had fiduciary authority and control over the Plan's payment of FCE's fees and responsibility for ensuring their accuracy.

Ward's Imprudent Payment of Fees from Plan to FCE and Ward

58.      Ward had authority and control over the Plan's payment of fees to service providers, and responsibility for verifying that fees -- including her own fees -- were being calculated in accordance with the fee schedules agreed upon by Chimes DC.

59.      Ward failed to prudently verify whether the fees paid by the Plan matched the fee schedules agreed upon by Chimes DC.  She imprudently failed to request or review supporting documentation and invoices for fees, including insurance premiums.

60.    The Chimes Defendants had negotiated a tiered fee structure with FCE and Ward, with the fee rates based on the number of participants.

61.    At relevant times, FCE informed Ward that their computer system could not handle the fluctuations in participant counts, and thus FCE provided Ward with a blended fee rate and average participant count, which Ward used to authorize fee payments from the Plan to FCE and herself.  These rates differed from the fee schedule agreed upon by Chimes DC.

62.    Defendant Ward failed to alert Chimes DC that FCE's computer system was unable to adequately manage fluctuations in participant counts.  The inadequate computer system contributed many of FCE's administrative problems described in paragraphs 65 through 69, including FCE's inability to accurately maintain accurate expense and claims records, timely update participant coverage information, and administer a reasonable claims process.

63.    Ward caused the Plan to pay administrative fees for non-Service Contract Act employees which differed from the fee schedule agreed upon by Chimes DC.  Ward also paid administrative fee rates for the unemployment insurance fund, also known as the DUB, that differed from the written fee schedule.

64.    Ward failed to disclose to Chimes DC that she was applying different fee rates calculated by FCE, maintain any documentation to explain the differences in rates, or allow a proper accounting of fee payments to FCE or Ward

 FCE's Imprudent Administration and Management of Plan and Its Assets

65.    FCE provided inadequate services that failed to meet a prudent standard of care for a fiduciary and third party administrator and that were not commensurate with FCE's high fees.

66.     During the relevant time period, FCE, with Porter and Beckman's knowledge and participation, failed to prudently manage the Plan and its assets.  In particular, FCE:

a.      Failed to maintain a computer system capable of accurately calculating fees to FCE and the Plan's trustees;

b.      Failed to maintain accurate records, including calculations and supporting documentation for Plan expenses and payments to FCE and participant information;

c.      Failed to administer a reasonable claims procedure, including establishing protocols such as claims audits, claims manuals, and trainings, to ensure timely and consistent adjudication of claims;

d.      Failed to timely update coverage information for participants; and

e.      Altered data to conceal errors.

67.     FCE failed to take other measures to ensure that benefit claim determinations were made in accordance with governing plan documents and that, where appropriate, the plan provisions were applied consistently with respect to similarly situated claimants.  Due to systemic computer and personnel limitations, FCE at relevant times failed to process claims in a timely and accurate manner and was unable to auto-adjudicate claims.  At relevant times, FCE failed to consistently require its claims adjudicators to follow a claims manual.  At relevant times, FCE also failed to consistently use sufficient auditing protocols and failed to adequately address high rates of claims errors that were disclosed by internal and external audits.

68.     Because the Chimes Defendants had appointed FCE and had authority to remove FCE as third party administrator, the Chimes Defendants also were responsible for monitoring FCE's fees and performance, but failed to do so.

69.    FCE's failure to properly administer the Plan caused losses to the Plan and provided improper profits to FCE, including but not limited to excessive fees.

Payments by the Plan to Chimes DC

70.    During the relevant time period, Chimes DC provided administrative services to the Plan relating to participant communications.  The services were performed by a full-time employee of Chimes DC who otherwise would have been employed by Chimes DC.

71.    From at least 2008, Chimes DC and Bussone directed FCE and Ward to reimburse Chimes DC for this work using Plan assets.  Chimes DC set its own fees, without a contract for the arrangement, and in so doing caused losses to the Plan and received profits.

72.    Ward executed the payments to Chimes DC without determining whether the payments were direct expenses of Chimes DC, or otherwise allowable under ERISA.  She did not require documentation of the expenses or inquire whether the Chimes DC employee would have otherwise been employed by Chimes DC, despite the fact that Chimes DC only requested reimbursement for about fifty percent of the employee's hours.

COUNT I
(Excessive Plan Expenses)
(Against all Defendants)

73.    Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 53 and 65 through 72 inclusive.

74.    By the conduct alleged in this complaint, the Chimes Defendants failed to prudently and loyally monitor the Plan's expenses, thereby resulting in excessive Plan expenses, including the fees of FCE, BCG, certain service providers recommended by FCE, and administrative reimbursements to Chimes DC.

75.    The Chimes Defendants therefore:

a.    Failed to loyally discharge their fiduciary duties, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

b.    Failed to prudently discharge their fiduciary duties, in violation of ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B);

c.    Caused the Plan to engage in transactions which they knew or should have known constituted direct or indirect furnishing of goods, services, or facilities between the plan and a party in interest, in violation of ERISA §406(a)(1)(C), 29 U.S.C. §1106(a)(1)(C); and

d.    Caused the Plan to engage in transactions which they knew or should have known constituted direct or indirect transfers of assets of the Plan to, or use of assets to the Plan by, or for the benefit of, parties in interest, in violation of ERISA §406(a)(1)(D), 29 U.S.C. §1106(a)(1)(D).

76.    Martin Lampner and Albert Bussone's knowledge as officers of Chimes DC and Chimes International should be imputed to Chimes DC and Chimes International.

77.    As a result of their conduct described above, the Chimes Defendants caused the Plan to suffer losses for which they are liable, pursuant to ERISA §409, 29 U.S.C. §1109(a).

78.    The Chimes Defendants and FCE have joint and several liability for the breaches of their co-fiduciaries alleged herein pursuant to ERISA §405(a), 29 U.S.C. §1105(a), because (1) the Chimes Defendants and FCE knowingly participated in their co-fiduciaries' misconduct, (2) as a result of the Chimes Defendants and FCE's failures to comply with their own fiduciary duties they enabled their co-fiduciaries to commit the breaches alleged herein, and (3) the

Chimes Defendants and FCE had knowledge of the breaches by their co-fiduciaries alleged herein and failed to make reasonable efforts under the circumstances to remedy the breaches.

79.     The FCE Defendants also knowingly participated in the Plan's payment of excessive fees to FCE.  Each, therefore, may be enjoined from any act or practice which violates Title I of ERISA and may be made subject to such other appropriate equitable relief to redress the violations in which they knowingly participated, including injunctive relief or disgorgement of unjust profits. ERISA §502(a)(5), 29 U.S.C. §1132(a)(5).

80.     BCG and Ramsey also knowingly participated in the Plan's payment of excessive fees to BCG and Ramsey.  Each, therefore, may be enjoined from any act or practice which violates Title I of ERISA and may be made subject to such other appropriate equitable relief to redress the violations in which they knowingly participated, including injunctive relief or disgorgement of unjust profits. ERISA §502(a)(5), 29 U.S.C. §1132(a)(5).

<u>COUNT II</u>

(Chimes Defendants' Receipt of Benefits in Connection with Plan's Retention of FCE)
(Against the Chimes Defendants and the FCE Defendants)

81.     Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 80 inclusive.

82.     By the conduct alleged in this complaint, the Chimes Defendants received benefits, in the form of FCE's payments to the Chimes Foundation and FCE's employment of Martin Lampner's child, in connection with the Plan's retention of FCE, and thus:

   a.     Failed to loyally discharge their fiduciary duties, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

21

b.      Failed to prudently discharge their fiduciary duties, in violation of ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B); and

c.      Dealt with assets of the plan in their own interest or for their own account, in violation of ERISA §406(b)(1), 29 U.S.C. §1106(b)(1).

83.     Chimes International and Chimes DC also received consideration for their own personal accounts from a party dealing with such plan in connection with a transaction involving the assets of the plan, in violation of ERISA §406(b)(3), 29 U.S.C. §1106(b)(3).

84.     Martin Lampner and Albert Bussone's knowledge as officers of Chimes DC and Chimes International should be imputed to Chimes DC and Chimes International.

85.     As a result of their conduct described above, the Chimes Defendants caused the Plan to suffer losses for which they are liable, and Chimes International received unjust profits which it must disgorge to the Plan, pursuant to ERISA §409, 29 U.S.C. §1109(a).

86.     The Chimes Defendants and FCE have joint and several liability for the breaches of their co-fiduciaries alleged herein pursuant to ERISA §405(a), 29 U.S.C. §1105(a), because (1) Chimes Defendants and FCE knowingly participated in their co-fiduciaries' misconduct, (2) as a result of the Chimes Defendants and FCE's failures to comply with their own fiduciary duties they enabled their co-fiduciaries to commit the breaches alleged herein, and (3) the Chimes Defendants and FCE had knowledge of the breaches by their co-fiduciaries alleged herein and failed to make reasonable efforts under the circumstances to remedy the breaches.

87.     The FCE Defendants also knowingly participated in the Plan's retention of FCE in connection with FCE's payments to the Chimes Foundation and FCE's employment of Lampner's child.  Each, therefore, may be enjoined from any act or practice which violates Title I of ERISA and may be made subject to such other appropriate equitable relief to redress the

violations in which they knowingly participated, including injunctive relief or disgorgement of

unjust profits. ERISA §502(a)(5), 29 U.S.C. §1132(a)(5).

COUNT III
(Chimes Defendants' Receipt of Payments and Discounts from BCG and Ramsey in Connection
with Plan's Retention of BCG)
(Against the Chimes Defendants, BCG, and Ramsey)

88.     Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary

adopts and incorporates by reference the averments and allegations of paragraphs 1 through 87

inclusive.

89.     By the conduct alleged in this complaint, the Chimes Defendants engaged BCG's

services on behalf of the Plan, in connection with BCG's payments to the Chimes Foundation

and discounts provided by another entity owned by Ramsey, thereby causing losses to the Plan in

the form of BCG's fees.  The Chimes Defendants imprudently relied on BCG and Ramsey's

recommendations to retain FCE.  The Chimes Defendants therefore:

a.     Failed to loyally discharge their fiduciary duties, in violation of ERISA

§404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

b.     Failed to prudently discharge their fiduciary duties, in violation of ERISA

§404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B);

c.     Dealt with assets of the plan in their own interest or for their own account,

in violation of ERISA §406(b)(1), 29 U.S.C. §1106(b)(1); and

d.     Received consideration for their own personal accounts from a party

dealing with such plan in connection with transactions involving the assets of the plan, in

violation of ERISA §406(b)(3), 29 U.S.C. §1106(b)(3).

90.     As a result of their conduct described above, the Chimes Defendants caused the Plan to suffer losses for which they are liable, and Chimes International received unjust profits which it must disgorge to the Plan, pursuant to ERISA §409, 29 U.S.C. §1109(a).

91.     The Chimes Defendants have joint and several liability for each other's breaches as alleged herein pursuant to ERISA §405(a), 29 U.S.C. §1105(a), because (1) the Chimes Defendants knowingly participated in their co-fiduciaries' misconduct, (2) as a result of the Chimes Defendants' failures to comply with their own fiduciary duties they enabled their co-fiduciaries to commit the breaches alleged herein, and (3) the Chimes Defendants had knowledge of the breaches by their co-fiduciaries alleged herein and failed to make reasonable efforts under the circumstances to remedy the breaches.

92.     BCG and Ramsey knowingly participated in the Plan's payment of fees to BCG in connection with BCG's payments to the Chimes Foundation and discounts to Chimes DC.  Each, therefore, may be enjoined from any act or practice which violates Title I of ERISA and may be made subject to such other appropriate equitable relief to redress the violations in which they knowingly participated, including injunctive relief or disgorgement of unjust profits. ERISA §502(a)(5), 29 U.S.C. §1132(a)(5).

<u>COUNT IV</u>
(FCE's Receipt of Payments from Service Providers)
(Against the FCE Defendants and the Chimes Defendants)

93.     Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 92 inclusive.

94.     By the conduct alleged in this complaint, FCE retained payments from Plan service providers and failed to forward them to the Plan as required by Chimes DC, and received

compensation in relation to FCE's management of Plan assets that was not disclosed to Chimes DC, and thereby:

      a.      Failed to loyally discharge its fiduciary duties, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

      b.      Failed to prudently discharge its fiduciary duties, in violation of ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B);

      c.      Dealt with assets of the plan in its own interest or for its own account, in violation of ERISA §406(b)(1), 29 U.S.C. §1106(b)(1); and

      d.      Received consideration for its own personal accounts from a party dealing with such plan in connection with transactions involving the assets of the plan, in violation of ERISA §406(b)(3), 29 U.S.C. §1106(b)(3).

95.      As a result of its conduct described above, FCE caused the Plan to suffer losses for which it is liable, and received unjust profits which it must disgorge to the Plan, pursuant to ERISA §409, 29 U.S.C. §1109(a).

96.      Porter and Beckman knowingly participated in the violations of FCE with respect to the payments received in connection with Plan asset transactions.  Each, therefore, may be enjoined from any act or practice which violates Title I of ERISA and may be made subject to such other appropriate equitable relief to redress the violations in which they knowingly participated, including injunctive relief or disgorgement of unjust profits. ERISA §502(a)(5), 29 U.S.C. §1132(a)(5).

97.      The Chimes Defendants failed to prudently and loyally monitor FCE and ensure that FCE had forwarded the service provider payments to the Plan or offset their fees paid directly from the Plan, thereby breaching their fiduciary duties of loyalty and prudence under

ERISA §404(a)(1)(A) and (B), 29 U.S.C. §1104(a)(1)(A), and causing Plan losses.  The Chimes

Defendants also have joint and several liability for each other's breaches as alleged herein

pursuant to ERISA §405(a), 29 U.S.C. §1105(a), because the Chimes Defendants' failures to

comply with their own fiduciary duties to monitor FCE enabled FCE to commit the breaches

alleged herein.

COUNT V<br>
(Failure to Prudently and Loyally Administer the Plan)<br>
(Against the FCE Defendants and Chimes DC as Plan Administrator)

98.    Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary

adopts and incorporates by reference the averments and allegations of paragraphs 1 through 97

inclusive.

99.    By the conduct alleged in this complaint, FCE failed to prudently and loyally

administer the Plan's coverage and claims administration, and thus FCE:

a.    Failed to loyally discharge its fiduciary duties, in violation of ERISA

§404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A); and

b.    Failed to prudently discharge their fiduciary duties, in violation of ERISA

§404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B).

100.    As a result of its conduct described above, FCE caused the Plan to suffer losses

for which it is liable, and received unjust profits which it must disgorge to the Plan, pursuant to

ERISA §409, 29 U.S.C. §1109(a).

101.    By the conduct alleged in this complaint, the Plan also was in violation of ERISA

§503 because it failed to afford a reasonable opportunity to participants whose claims for

benefits had been denied for a full and fair review by the appropriately named fiduciary of the

decision denying the claim.  The claims procedures failed to contain administrative processes

26

and safeguards designed to ensure and to verify that benefit claim determinations were made in accordance with governing plan documents and that, where appropriate, the plan provisions were applied consistently with respect to similarly situated claimants.  Likewise, FCE failed to ensure that claims were adjudicated in a timely manner.  The Plan, through its plan administrator Chimes DC, may be enjoined from future violations of section 503 of ERISA, pursuant to ERISA §502(a)(5), 29 U.S.C. §1132(a)(5).

102.    As officers and owners of FCE, Porter and Beckman were knowing participants in FCE's breaches.  Each, therefore, may be enjoined from any act or practice which violates Title I of ERISA and may be made subject to such other appropriate equitable relief to redress the violations in which they knowingly participated, including injunctive relief or disgorgement of unjust profits. ERISA §502(a)(5), 29 U.S.C. §1132(a)(5).

## COUNT VI

### (Plan's Reimbursements to Chimes DC for Work of Its Full-Time Employee)
### (Against Chimes DC, Bussone, and FCE)

103.    Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 102 inclusive.

104.    By the conduct alleged in this complaint and by causing the Plan to pay Chimes DC for work performed by a full-time employee of Chimes DC who otherwise would have been paid by Chimes DC, Chimes DC and Bussone:

a.    Caused the assets of the Plan to inure to the benefit of the employer Chimes DC, in violation of ERISA §403, 29 U.S.C. §1103;

b.    Failed to loyally discharge their fiduciary duties, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

27

c.      Failed to prudently discharge their fiduciary duties, in violation of ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B);

d.      Caused the Plan to engage in a transaction that they knew or should have known constituted a direct or indirect furnishing of goods, services, or facilities between the Plan and a party in interest; in violation of ERISA §406(a)(1)(C), 29 U.S.C. §1106(a)(1)(C);

e.      Caused the Plan to engage in a transaction that they knew or should have known constituted a transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan, in violation of ERISA §406(a)(1)(D), 29 U.S.C. §1106(a)(1)(D);

f.      Dealt with assets of the Plan in their own interest or for their own account, in violation of ERISA §406(b)(1), 29 U.S.C. §1106(b)(1); and

g.      In their individual or in any other capacity, acted in a transaction involving the Plan on behalf of a party (or representing a party) whose interests are adverse to the interests of the Plan or the interests of its participants or beneficiaries, in violation of ERISA §406(b)(2), 29 U.S.C. §1106(b)(2).

105.    As a result of their conduct alleged in this complaint, Chimes DC and Bussone caused the Plan to suffer losses for which they are liable, and Chimes DC received unjust profits which it must disgorge, pursuant to ERISA §409, 29 U.S.C. §1109(a).

106.    Chimes DC, Bussone and FCE have joint and several liability for the breaches of their co-fiduciaries alleged herein pursuant to ERISA §405(a), 29 U.S.C. §1105(a), because (1) Chimes DC, Bussone and FCE knowingly participated in their co-fiduciaries' misconduct, (2) as a result of the failure of Chimes DC, Bussone and FCE to comply with their own fiduciary duties, they enabled their co-fiduciaries to commit the breaches alleged herein, and (3) Chimes

DC, Bussone and FCE had knowledge of the breaches by their co-fiduciaries alleged herein and failed to make reasonable efforts under the circumstances to remedy the breaches.

## COUNT VII
### (Ward's Liability for FCE's Payments to the Chimes Foundation and FCE's Employing Lampner's Child)
### (Against Defendant Ward)

107.     Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 106 inclusive.

108.     As a result of the conduct alleged in this complaint, Ward has joint and several liability for the breaches of her co-fiduciaries relating to FCE's payments to the Chimes Foundation and FCE's employment of Martin Lampner's child, in connection with the Plan's retention of FCE, pursuant to ERISA §405(a), 29 U.S.C. §1105(a), because Ward had knowledge of the breaches by her co-fiduciaries alleged herein and failed to make reasonable efforts under the circumstances to remedy the breaches.

109.     Ward also knowingly participated in the Plan's retention of FCE in connection with FCE's payments to the Chimes Foundation.  She therefore may be enjoined from any act or practice which violates Title I of ERISA and may be made subject to such other appropriate equitable relief to redress the violations in which she knowingly participated, including injunctive relief or disgorgement of unjust profits. ERISA §502(a)(5), 29 U.S.C. §1132(a)(5).

## COUNT VIII
### (Ward's Conflicted Arrangements with FCE)
### (Against Defendant Ward)

110.     Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 109 inclusive.

111.    Ward failed to prudently and loyally disclose to Chimes DC or the Plan participants that she was making payments to the FCE Defendants and receiving services, benefits, and facilities from the FCE Defendants related to her Plan work and FCE's recommendation and retention of Ward as a trustee.  Ward thus breached her fiduciary duty of loyalty and prudence under ERISA §404(a)(1)(A) and (B), 29 U.S.C. §1104(a)(1)(A), and received profits in the form of her fees.

112.    As a result of the conduct alleged in this complaint, Ward has joint and several liability pursuant to ERISA §405(a), 29 U.S.C. §1105(a) for the breaches of her co-fiduciaries, the FCE Defendants, as alleged herein relating to their receipt of those payments from Ward to FCE, because (1) she knowingly participated in the FCE Defendants' misconduct, (2) as a result of her failure to comply with her own fiduciary duty to disclose the arrangements, she enabled the FCE Defendants' breaches and violations alleged herein, and (3) she had knowledge of the FCE Defendants' breaches alleged herein and failed to make reasonable efforts under the circumstances to remedy the breaches.

COUNT IX
(Ward's Liability for Payment of Fees that Differ from Approved Fee Schedules and
for FCE's Administrative Failures)
(Against Defendant Ward)

113.    Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 112 inclusive.

114.    By causing the Plan to pay fees that differed from the fee schedules approved by Chimes DC, and by failing to disclose such disparities to Chimes DC or maintain adequate records documenting the changes, Ward:

      a.       Failed to loyally discharge her fiduciary duties, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

      b.       Failed to prudently discharge her fiduciary duties, in violation of ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B);

      c.       Dealt with assets of the Plan in her own interest or for her own account, in violation of ERISA §406(b)(1), 29 U.S.C. §1106(b)(1); and

      d.       In her individual or in any other capacity, acted in a transaction involving the Plan on behalf of a party (or representing a party) whose interests are adverse to the interests of the Plan or the interests of its participants or beneficiaries, in violation of ERISA §406(b)(2), 29 U.S.C. §1106(b)(2).

115.    As a result of the conduct alleged in this complaint, Ward has joint and several liability for certain breaches of her co-fiduciaries, the FCE Defendants, as alleged herein pursuant to ERISA §405(a), 29 U.S.C. §1105(a), because (1) she knowingly participated in the FCE Defendants' misconduct alleged in Count V by authorizing fee payments that were not in accordance with the fee schedule and not properly recorded, knowing that FCE's computer systems were inadequate, (2) as a result of her failure to comply with her own fiduciary duty to disclose the computer system problems, she enabled the FCE Defendants' breaches alleged in Count V, and (3) she had knowledge of the FCE Defendants' breaches alleged herein and failed to make reasonable efforts under the circumstances to remedy the breaches.

COUNT X
(Ward's Liability for Plan's Reimbursements to Chimes DC for Work of Its Full-Time
Employee)
(Against Defendant Ward)

116.     Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary

adopts and incorporates by reference the averments and allegations of paragraphs 1 through 115

inclusive.

117.     By causing the Plan to pay Chimes DC for work performed by a full-time

employee of Chimes DC who otherwise would have been paid by Chimes DC, Ward:

a.       Caused the assets of the Plan to inure to the benefit of the employer

Chimes DC, in violation of ERISA §403, 29 U.S.C. §1103;

b.       Failed to loyally discharge her fiduciary duties, in violation of ERISA

§404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

c.       Failed to prudently discharge her fiduciary duties, in violation of ERISA

§404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B);

d.       Caused the Plan to engage in a transaction that she knew or should have

known constituted a direct or indirect furnishing of goods, services, or facilities between

the Plan and a party in interest; in violation of ERISA §406(a)(1)(C), 29 U.S.C.

§1106(a)(1)(C);

e.       Caused the Plan to engage in a transaction that she knew or should have

known constituted a transfer to, or use by or for the benefit of, a party in interest, of any

assets of the plan, in violation of ERISA §406(a)(1)(D), 29 U.S.C. §1106(a)(1)(D);

f.       In her individual or in any other capacity, acted in a transaction involving

the Plan on behalf of a party (or representing a party) whose interests are adverse to the

interests of the Plan or the interests of its participants or beneficiaries, in violation of ERISA §406(b)(2), 29 U.S.C. §1106(b)(2).

118.    As a result of the conduct alleged in this complaint, Ward caused the Plan to suffer losses for which she is liable, pursuant to ERISA §409, 29 U.S.C. §1109(a).

119.    Ward has joint and several liability for the breaches of her co-fiduciaries alleged herein pursuant to ERISA §405(a), 29 U.S.C. §1105(a), because (1) Ward knowingly participated in her co-fiduciaries' misconduct, (2) as a result of the failure of Ward to comply with her own fiduciary duties, she enabled her co-fiduciaries to commit the breaches alleged herein, and (3) Ward had knowledge of the breaches by her co-fiduciaries alleged herein and failed to make reasonable efforts under the circumstances to remedy the breaches.

120.    As a result of her conduct alleged in this complaint, Ward must provide an accounting of all profits received pursuant to her violations and account for any losses suffered by the Plan, pursuant to ERISA §§409, 29 U.S.C. §1109(a) and 502(a)(5), 29 U.S.C. §1132.

## PRAYER FOR RELIEF

WHEREFORE, the Secretary of Labor prays that this Court enter an Order:

1.  Requiring the Chimes Defendants, FCE Defendants, and Ward to restore all losses caused to the Plan as a result of their fiduciary breaches;

2.  Requiring Defendants to provide an accounting of all profits that they received as a result of the violations described in the Complaint;

3.  Requiring Defendants to disgorge to the Plan all profits from their fiduciary breaches and prohibited transactions, or from their knowing participation in fiduciary breaches and prohibited transactions;

4.  Permanently removing the FCE Defendants, Porter, Beckman, Bussone, Lampner, BCG, Ramsey, and Ward as fiduciaries and/or service providers to the Plan or any ERISA-covered plan sponsored by Chimes International or any of its subsidiaries or affiliates;

5.  Permanently enjoining FCE, Bussone, Lampner, BCG, Ramsey, and Ward from acting as fiduciaries or service providers for any ERISA-covered employee benefits plan;

6.  Appointing a permanent independent fiduciary, appropriately bonded pursuant to ERISA §412, 29 U.S.C. §1112, with control over the Plan and its assets;

7.  Requiring Chimes DC, FCE, and Ward to provide an accounting of the Plan's claims and fees;

8.  Requiring Chimes DC to cause the Plan to comply with the claims processing procedures of section 503;

9.  Barring future violations of ERISA; and

10. Granting such other relief as may be equitable, just, and proper.

Dated: April 29, 2016                      Respectfully submitted,

                                           M. PATRICIA SMITH
                                           Solicitor of Labor

                                           OSCAR L. HAMPTON III
                                           Regional Solicitor of Labor

                                           s/Evelyn H. Chung
                                           EVELYN H. CHUNG
                                           Senior Trial Attorney

                                           GEOFFREY FORNEY
Mailing Address:                           Trial Attorney

Office of the Solicitor                    Attorneys for Plaintiff
Arlington Regional Solicitor               Secretary of Labor
201 12th Street                            U.S. Department of Labor
Arlington, VA 22202
chung.evelyn@dol.gov

# Exhibit C

Case 1:16-cv-00680-CKK Document 57 Filed 04/18/18 Page 54 of 84
Case 1:15-cv-03315-RDB Document 183 Filed 02/27/17 Page 1 of 22
Case 1:15-cv-03315-RDB Document 182-1 Filed 02/24/17 Page 1 of 22

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

EDWARD C. HUGLER, )
ACTING SECRETARY OF LABOR, )
                           )
    Plaintiff, )
                           )      **CIVIL NO. 1:15-3315-RDB**
    v. )
                           )
CHIMES DISTRICT OF COLUMBIA )
INC., et al., )
                           )
    Defendants. )

## STIPULATED CONFIDENTIALITY AGREEMENT

## AND [PROPOSED] PROTECTIVE ORDER

To facilitate the production of Confidential Information through the discovery process in

in the above-referenced action (the "**Action**"), pursuant to Fed. R. Civ. P. 26(c), all Parties, by

and through their attorneys of record, enter into the following Stipulated Confidentiality

Agreement and [Proposed] Protective Order ("**Protective Order**") regarding the disclosure and

use by the Parties of all Documents, electronically stored information ("**ESI**"), and Discovery

Material disclosed or provided in the Action as follows.

1.    When used in this Protective Order, the term:

    (a)    "**Confidential Information**" shall mean all Documents and testimony and

other Discovery Materials, and all information contained therein, containing:

        (i)    trade secrets or other confidential research, development,

financial, proprietary, or commercial information that may be subject to a

protective order under FRCP 26(c)(1)(G); or

Case 1:16-cv-00680-CKK   Document 57   Filed 04/18/18   Page 55 of 84
Case 1:15-cv-03315-RDB   Document 183   Filed 02/27/17   Page 2 of 22
Case 1:15-cv-03315-RDB   Document 182-1   Filed 02/24/17   Page 2 of 22

(ii)     confidential, non-public personal information that is protected from disclosure by statute, regulation or otherwise.

(b)     "**Personal Identifiable Information**" shall mean all social security numbers, names of minor children, dates of birth, financial account numbers associated with natural individuals, drivers' license numbers, home addresses, and medical records which identify the natural person or persons to which they relate.

(c)     "**Party**" shall mean any named party to this action. For the Plaintiff, the term Party includes the Secretary of Labor and the political appointees, Department of Labor employees, , and attorneys of the U.S. Department of Labor acting on behalf of the Secretary of Labor in this Action. For all other parties, the term Party includes all of the Party's officers, directors, members, employees, consultants, outside counsel (and their support staff), if any.

(d)     "**Disclosing Party**" shall refer to any Party to this Action and any non-Party disclosing or producing Confidential Information and/or Personal Identifiable Information in connection with this Action.

(e)     "**Designating Party**" shall mean a Party or non-Party that designates Documents, Discovery Materials, information, or items that any Party, including itself, or any non-Party produces in disclosures or in responses to discovery in this Action as "CONFIDENTIAL."

(f)     "**Receiving Party**" shall refer to any Party to this Action and any non-Party that receives Confidential Information and/or Personal Identifying Information in disclosures or in responses to discovery in this Action.

Case 1:16-cv-00680-CKK   Document 57   Filed 04/18/18   Page 56 of 84
Case 1:15-cv-03315-RDB   Document 183   Filed 02/27/17   Page 3 of 22
Case 1:15-cv-03315-RDB   Document 182-1   Filed 02/24/17   Page 3 of 22

(g)     "**Discovery Material**" shall refer to all Documents, items, or information produced or generated in disclosures or responses to discovery in this Action, regardless of the medium or manner in which it was stored, generated, or maintained, including but not limited to all Documents produced in the course of disclosure or discovery (including those produced in response to a subpoena), all Answers to Interrogatories, all Answers to Requests for Admission, all Responses to Requests for Production of Documents, and all deposition testimony and deposition exhibits.

(h)     "**Document**" shall have the same meaning as provided in Rule 34 of the Federal Rules of Civil Procedure, and shall include, without limitation, all original, written, recorded, electronic, or graphic materials, and all copies, duplicates or abstracts thereof including, but not limited to, notes on documents including information contained therein or derived therefrom.

(i)     "**Professional Vendors**" means persons or entities that provide litigation support services (e.g., photocopying; videotaping; translating; preparing exhibits or demonstrations; organizing, storing, retrieving data, including but not limited to ESI, in any form or medium) and their employees and subcontractors.

(j)     "**Expert**" means a person with specialized knowledge or experience in a matter pertinent to the Action who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this Action, as well as his, her, or its support staff.

(k)     "**Newly Produced Exhibits**" shall refer to exhibits used at any deposition that have not been previously produced.

Case 1:16-cv-00680-CKK   Document 57   Filed 04/18/18   Page 57 of 84
Case 1:15-cv-03315-RDB   Document 183   Filed 02/27/17   Page 4 of 22
Case 1:15-cv-03315-RDB   Document 182-1   Filed 02/24/17   Page 4 of 22

2.     Consistent with the provisions of Paragraph 18, a Party or non-Party, or any of their counsel, may designate any Discovery Material or information contained therein as confidential if the Party, non-Party, or counsel determines, in good faith, that it contains or constitutes Confidential Information and that such designation is necessary to protect the interests of the client. Except as otherwise provided for in this Protective Order, a Disclosing Party shall designate any Discovery Material or information contained therein which it produces or discloses as confidential at or before the time of production. A Party or non-Party shall only designate any Discovery Material or information contained therein produced by a Disclosing Party other than itself as confidential if counsel for the Designating Party determines in good faith that it constitutes Confidential Information belonging to the Designating Party or which the Designating Party has an independent legal right or obligation to protect. Such designation will be made on written notice to the Producing Party and all other Receiving Parties, after which counsel for the Producing Party and all Receiving Parties shall be responsible for marking or otherwise designating all previously unmarked copies of the designated material in their possession or control as "CONFIDENTIAL" consistent with the provisions of Paragraph 3, below.

3.     The designation of Discovery Materials as "CONFIDENTIAL" shall be made as follows:

(a)     for produced Documents, by imprinting the word "Confidential" on the face of each page of a document so designated or in a similarly conspicuous location for non-document materials.;

(b)     for written discovery responses, by imprinting the word "Confidential" next to or above any response to a discovery request or on each page of a response;

Case 1:16-cv-00680-CKK    Document 57    Filed 04/18/18    Page 58 of 84
Case 1:15-cv-03315-RDB    Document 183    Filed 02/27/17    Page 5 of 22
Case 1:15-cv-03315-RDB    Document 182-1    Filed 02/24/17    Page 5 of 22

(c)     All deposition transcripts from depositions taken in this action are deemed confidential for thirty (30) days after service of a copy of the related deposition transcript. Exhibits used at depositions and previously produced in this litigation shall retain their prior designation, if any, without further action. Newly Produced Exhibits will be deemed confidential for thirty (30) days after service of a copy of the deposition transcript, unless the producing party stipulates otherwise on the record. Any deponent or party must, within thirty (30) days after receipt of the transcript, designate by page and line or exhibit description, any portions of the transcript and Newly Produced Exhibits that the deponent or party deems confidential. If no such designation is served within the thirty-day period, the deposition transcript and Newly Produced Exhibits will not be deemed to contain confidential information as those terms are used in this Protective Order, except that documents previously designated confidential need not be re-designated and instead retain their confidential designation.

(d)     for ESI, either by imprinting the word "Confidential" on any disk or storage medium, or on the face of each page of a document so designated, or in the file name, or by designating the production as "Confidential" in the transmittal cover letter.

4.     Personal Identifiable Information may be exchanged among the Parties to this action and need not be redacted from documents before the documents are produced by any Party to other Parties in this action, subject to the restrictions and protections under this Protective Order.

5.     Unless otherwise ordered by the Court, or otherwise specified in this Protective Order, any Confidential Information or Personal Identifiable Information disclosed will only be held and used by the Receiving Party in connection with the Action and for no other purpose.

84390513v1                                          5

Case 1:16-cv-00680-CKK   Document 57   Filed 04/18/18   Page 59 of 84
Case 1:15-cv-03315-RDB   Document 183   Filed 02/27/17   Page 6 of 22
Case 1:15-cv-03315-RDB   Document 182-1   Filed 02/24/17   Page 6 of 22

6.      To the extent that any Discovery Materials or the information contained therein subject to this Protective Order (or any pleading, motion, or memorandum disclosing them) are proposed to be filed or are filed with the Court, those Discovery Materials and papers, or any portion thereof which discloses Confidential Information and/or Personal Identifiable Information, shall be filed under seal (by the filing Party) with the Clerk of the Court with a simultaneous motion pursuant to L.R. 104.13(c) (hereinafter the "Interim Sealing Motion"), in accordance with the then current version of the Court's Electronic Filing Requirements and Procedures for Civil Cases. The Interim Sealing Motion shall be governed by L.R. 105.11. Even if the filing Party believes that the Discovery Materials subject to the Confidentiality Order are not properly classified as confidential, the filing Party shall file the Interim Sealing Motion; provided, however, that the filing of the Interim Sealing Motion shall be wholly without prejudice to the filing Party's rights to under paragraph seven (7) of this Protective Order. A Party or non-Party need not file any Discovery Materials or the information contained therein concurrently with an Interim Sealing Motion prior to receiving notice that they have been designated as "CONFIDENTIAL" except for when they contain Personally Identifiable Information, in which case the filing Party or non-Party shall either file the materials concurrently with an Interim Sealing Motion or shall file versions from which the Personally Identifiable Information has been redacted.  Additionally, nothing in this Protective Order shall prevent a Party or non-Party from filing a document with the Court from which all information designated as Confidential has been redacted, but where a page or document has been designated as Confidential without any further limitation, that page or document must be either completely redacted or filed concurrently with an Interim Sealing Order.

Case 1:16-cv-00680-CKK   Document 57   Filed 04/18/18   Page 60 of 84
Case 1:15-cv-03315-RDB   Document 183   Filed 02/27/17   Page 7 of 22
Case 1:15-cv-03315-RDB   Document 182-1   Filed 02/24/17   Page 7 of 22

7.    A designation of confidentiality may be challenged upon motion. The burden of proving the confidentiality of designated information remains with the Designating Party. The provisions of Fed. R. Civ. P. 37(a)(5) apply to such motions. Pursuant to Federal Rule of Civil Procedure 26(c), however, in the event a Party challenges another Party's or non-Party's confidential designation, counsel will make a good faith effort to resolve the dispute prior to bringing a motion challenging the designation of Discovery Materials as Confidential. Each Party specifically reserves the right to object to the use or admissibility of all Confidential Information disclosed, in accordance with the Federal Rules of Evidence and any other applicable law.

8.    All Personal Identifiable Information and any document designated as "Confidential" shall not be disclosed to any person, except:

(a)    Each Party's counsel in this Action (including staff counsel or internal counsel for any Party), as well as employees of such counsel to whom it is reasonably necessary to disclose the information for the conduct of this Action. Any such employee to whom counsel for the Parties makes a disclosure shall be provided with a copy of, and become subject to, the provisions of this Protective Order requiring that Discovery Materials designated as Confidential and/or containing Personal Identifiable Information be held in confidence.

(b)    Any individual who is a Party, as well as the officers, directors, insurers, employees, and consultants of any Party to whom disclosure is reasonably necessary for the conduct of this Action, who shall be provided with a copy of, and become subject to, the provisions of this Protective Order requiring that Discovery Materials designated as Confidential and/or containing Personal Identifiable Information be held in confidence;

Case 1:16-cv-00680-CKK   Document 57   Filed 04/18/18   Page 61 of 84
Case 1:15-cv-03315-RDB   Document 183   Filed 02/27/17   Page 8 of 22
Case 1:15-cv-03315-RDB   Document 182-1   Filed 02/24/17   Page 8 of 22

(c)     Experts (as defined in this Protective Order) of a Party to whom disclosure is reasonably necessary for the conduct of this Action and who have executed an "Acknowledgment and Agreement to Be Bound" (Addendum A);

(d)     The Court and its personnel and the jury, if any, at trial;

(e)     Court reporters and their staff, professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for the conduct of this Action and who have executed an "Acknowledgment and Agreement to Be Bound" (Addendum A);

(f)     During their depositions (and in later reviewing their transcripts), witnesses in the Action to whom disclosure is reasonably necessary and who have executed an "Acknowledgment and Agreement to Be Bound" (Addendum A), unless otherwise agreed by the Designating Party or ordered by the Court;

(g)     The author or recipient of a Document containing the information or a custodian or other person who otherwise possessed or knew the information; and

(h)     Mediators or other Alternative Dispute Resolution neutrals (including their employees, agents, and contractors), to whom disclosure is reasonably necessary for resolving this Action and who have executed an "Agreement to Be Bound by Protective Order" (Addendum A);

(i)     Government law enforcement agencies; and,

(j)     As authorized under the Privacy Act of 1974, 5 U.S.C. § 552a, the Freedom of Information Act, 5 U.S.C. § 552, and the regulations under 29 C.F.R. Part 70, and 29 U.S.C. § 1134(a).

Case 1:16-cv-00680-CKK   Document 57   Filed 04/18/18   Page 62 of 84
Case 1:15-cv-03315-RDB   Document 183   Filed 02/27/17   Page 9 of 22
Case 1:15-cv-03315-RDB   Document 182-1   Filed 02/24/17   Page 9 of 22

9.     Except as provided under Paragraph 13 as it relates to the Department of Labor's handling of requests under the Freedom of Information Act, prior to disclosing or displaying Confidential Information or Personal Identifiable Information to any person that is authorized to receive Confidential Information pursuant to this Protective Order, counsel must:

(a)     Inform the person of the confidential nature of the information or documents;

(b)     Inform the person that this Court has enjoined the use of the information or documents by him or her for any purpose other than the litigation of the Action and has enjoined the disclosure of that information or documents to any other person; and

(c)     If otherwise required by this Protective Order, obtain an executed an "Acknowledgment and Agreement to Be Bound" (Addendum A) from that person.

10.     For purposes of Paragraph 8, and subject to the requirements of Paragraph 6, it is understood by the Parties that any Documents that become part of an official judicial proceeding or that are filed with the Court may become public records unless sealed by the Court upon motion and in accordance with applicable law.  This Protective Order does not provide for the automatic permanent sealing of such Documents.

11.     Except as provided under Paragraph 13 as it relates to the Department of Labor's handling of requests under the Freedom of Information Act, if a Receiving Party is served with a subpoena, or other discovery request, or an order issued in other litigation that would compel disclosure of any material or document designated in this action as Confidential Information or Discovery Materials containing Personally Identifiable Information, the Receiving Party must so notify the Designating Party (or the Producing Party of Personally Identifiable Information), in writing, immediately and in no event more than the shorter of fifteen (15) days after receiving

Case 1:16-cv-00680-CKK    Document 57    Filed 04/18/18    Page 63 of 84
Case 1:15-cv-03315-RDB    Document 183    Filed 02/27/17    Page 10 of 22
Case 1:15-cv-03315-RDB    Document 182-1    Filed 02/24/17    Page 10 of 22

the subpoena, or other discovery request, or order or five (5) court days before production is due pursuant to the subpoena or order. Such notification must include a copy of the subpoena, other discovery request, or court order. The Receiving Party also must immediately inform in writing the person or entity who caused the subpoena, other discovery request, or order to issue in the other litigation that some or all of the material covered by the subpoena, other discovery request, or order is the subject of this Protective Order. In addition, the Receiving Party must deliver a copy of this Protective Order promptly to the person or entity in the other action that caused the subpoena or other discovery request or order to issue. The purpose of imposing these duties is to alert the interested persons to the existence of this Protective Order and to afford the Designating Party (or the Producing Party of Personally Identifiable Information) in this case an opportunity to attempt to protect its Confidential Information in the court from which the subpoena, other discovery request, or order issued. The Designating Party (or the Producing Party of Personally Identifiable Information) bears the burden and the expense of seeking protection in that court of its Confidential Information or unredacted Personally Identifiable Information, and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court. The obligations set forth in this paragraph remain in effect while the Party or non-Party has in its possession, custody or control Confidential Information (or Discovery Materials containing unredacted Personally Identifiable Information) by the other Party or non-Party to this case.

    12.    Notwithstanding any other provision of this Protective Order, nothing in this Protective Order shall impose any restriction on the use or disclosure by a defendant Party or its agent of a defendant Party's own Documents or information, or of publicly available Documents or information, or of Documents or information lawfully available to that defendant Party, or of

Case 1:16-cv-00680-CKK Document 57 Filed 04/18/18 Page 64 of 84
Case 1:15-cv-03315-RDB Document 183 Filed 02/27/17 Page 11 of 22
Case 1:15-cv-03315-RDB Document 182-1 Filed 02/24/17 Page 11 of 22

Documents or information that lawfully came into the possession of the defendant Party

independent of any disclosure of Discovery Material in this Action. Discovery Materials

produced or received by Plaintiff in this Action shall be processed in accordance with the terms

of this Protective Order in this Action regardless of whether they are also in Plaintiff's

possession as a result of its administrative investigation of any of the defendants to this Action.

To the extent that such Documents or information were previously obtained by Plaintiff

separately from this Action and are requested outside of this Action, the extent to which, and

terms under which, they can be disclosed shall be governed by the Privacy Act of 1974, 5 U.S.C.

§ 552a, the Freedom of Information Act, 5 U.S.C. § 552, including the regulations under 29

C.F.R. Part 70, and 29 U.S.C. § 1134(a). If a Party publicly disseminates its own Confidential

Information outside of the confines of this Protective Order, such information shall no longer be

deemed Confidential pursuant to this Protective Order. However, confidential use of a Party's

own (or lawfully possessed) Confidential Information and Personal Identifiable Information in

its business, consistent with standard business practices and applicable law (such as for the

purpose of administering claims), shall not be deemed a public disclosure. If a dispute arises as

to disclosure limitations for any specific Confidential Information, the burden shall be on the

Party claiming a right to use or disclose such Confidential Information that it was lawfully

obtained through the above means or sources.

13.    At the conclusion of litigation of the Action through entry of a final judgment no

longer subject to further appeal, upon written request of the Disclosing Party or, if different, the

Designating Party, the Confidential Information, Personal Identifiable Information, and any

copies of such Documents or information shall be promptly (and in no event later than sixty (60)

days after receipt of the written request) returned to the Disclosing Party or certified as

Case 1:16-cv-00680-CKK   Document 57   Filed 04/18/18   Page 65 of 84
Case 1:15-cv-03315-RDB   Document 183   Filed 02/27/17   Page 12 of 22
Case 1:15-cv-03315-RDB   Document 182-1   Filed 02/24/17   Page 12 of 22

destroyed, unless such information is in the possession of the Department of Labor in which case such information shall be retained and disposed of according to the Federal Records Disposal Act, 44 U.S.C. Chapter 33. In addition, Confidential Information and Personal Identifiable Information retained by the Department of Labor will be handled in accordance with the Privacy Act, 5 U.S.C. § 552a, the Freedom of Information Act, 5 U.S.C. § 552, and the regulations under 29 C.F.R. Part 70. Notwithstanding this provision, counsel for the Receiving Parties who are (or previously were) defendants in the Action may retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Confidential Information. Any such archival copies that contain or constitute Confidential Information remain subject to this Order.

14.     The Clerk of the Court may return to counsel for the Parties, or destroy, any sealed material at the end of the Action, including any appeals.

15.     The foregoing is entirely without prejudice to the right of any Party to apply to the Court for any further Protective Order relating to Confidential Information; or to object to the production of documents or information; or to apply to the Court for an order compelling production of documents or information; or for modification of this Protective Order.

16.     Inadvertent production of Confidential Information without the proper designation will not be deemed a waiver of confidentiality, provided that the Designating Party notifies in writing the Parties to whom disclosure or production was made that such disclosure or production was inadvertent. Upon notification, the Receiving Party shall treat the material as confidential pursuant to the terms of this Protective Order.

Case 1:16-cv-00680-CKK   Document 57   Filed 04/18/18   Page 66 of 84
Case 1:15-cv-03315-RDB   Document 183   Filed 02/27/17   Page 13 of 22
Case 1:15-cv-03315-RDB   Document 182-1   Filed 02/24/17   Page 13 of 22

17.   Pursuant to Federal Rule of Evidence 502(d) and (e), the production of attorney-client or other privileged or work-product protected information or Documents, including but not limited to ESI, and whether inadvertent or otherwise, is not a waiver of the attorney-client or other privilege or work-product doctrine protection in this Action or in any other federal or state proceeding. This Protective Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d) and any other applicable rules of evidence and/or privileges. The Disclosing Party must notify in writing all Parties to whom the disclosure of privileged Documents or information or work product was made that such disclosure or production was inadvertent. Upon notification, all Receiving Parties must and will immediately return the inadvertently produced Documents, and all copies thereof, to the Disclosing Party and delete or destroy any copies.

18.   This Protective Order is applicable to non-Parties who have executed an "Acknowledgment and Agreement to Be Bound" (Addendum A) such that they may resort to the protections afforded in this Protective Order without the necessity of further motion practice. Non-Parties shall have sixty (60) days to designate Discovery Materials produced by someone else as CONFIDENTIAL so long as they execute and provide a copy of an "Acknowledgment and Agreement to Be Bound" (Addendum A) to all Receiving Parties within receipt of written notification of the disclosure. Nothing in this Protective Order grants to any person or entity greater or additional rights or obligations than those provided under the Freedom of Information Act or the Privacy Act.

19.   It is the intention of the Parties that the provisions of this Protective Order shall govern discovery, disclosures, and other pretrial and trial proceedings in the Action. The Parties are, however, entitled to seek modification of this Protective Order by application to the Court on

Case 1:16-cv-00680-CKK Document 57 Filed 04/18/18 Page 67 of 84
Case 1:15-cv-03315-RDB Document 183 Filed 02/27/17 Page 14 of 22
Case 1:15-cv-03315-RDB Document 182-1 Filed 02/24/17 Page 14 of 22

notice to all other Parties hereto for good cause. To the maximum extent possible, the Parties

agree to be bound by the terms of this Protective Order pending its entry by the Court, or

pending the entry of an alternative order thereto.

The Parties, through their counsel of record in the Action, have reviewed and agree to the

Protective Order set forth above, which they agree may be executed by their counsel of record in

the Action in counterparts, each of which shall be deemed an original, but all of which together

shall be deemed to be one and the same agreement which shall be binding.

DATED: February 20, 2017      SEDGWICK LLP

By: _____

Robert D. Eassa
Marc A. Koonin
Delia A. Isvoranu
Meredith R. Philipp

Attorneys for Defendants
FCE Benefit Administrators, Inc., Stephen Porter, and
Gary Beckman

DATED: February ____, 2017      MILLER & CHEVALIER CHARTERED

By: _____

Theresa S. Gee
Dawn E. Murphy-Johnson

Attorneys for Defendants
FCE Benefit Administrators, Inc., Stephen Porter, and
Gary Beckman

DATED: February ____, 2017      DAVID F. CRUTCHER

By: _____

David F. Crutcher

Attorneys for Defendants
FCE Benefit Administrators, Inc., Stephen Porter, and
Gary Beckman

84390513v1               14

Case 1:16-cv-00680-CKK    Document 57    Filed 04/18/18    Page 68 of 84
Case 1:15-cv-03315-RDB    Document 183    Filed 02/27/17    Page 15 of 22
Case 1:15-cv-03315-RDB    Document 182-1    Filed 02/24/17    Page 15 of 22

notice to all other Parties hereto for good cause. To the maximum extent possible, the Parties

agree to be bound by the terms of this Protective Order pending its entry by the Court, or

pending the entry of an alternative order thereto.

The Parties, through their counsel of record in the Action, have reviewed and agree to the

Protective Order set forth above, which they agree may be executed by their counsel of record in

the Action in counterparts, each of which shall be deemed an original, but all of which together

shall be deemed to be one and the same agreement which shall be binding.

DATED: February _____, 2017          SEDGWICK LLP

                                     By: _____
                                         Robert D. Eassa
                                         Marc A. Koonin
                                         Delia A. Isvoranu
                                         Meredith R. Philipp

                                         Attorneys for Defendants
                                         FCE Benefit Administrators, Inc., Stephen Porter, and
                                         Gary Beckman

DATED: February _____, 2017          MILLER & CHEVALIER CHARTERED

                                     By: _____
                                         Theresa S. Gee
                                         Dawn E. Murphy-Johnson

                                         Attorneys for Defendants
                                         FCE Benefit Administrators, Inc., Stephen Porter, and
                                         Gary Beckman

DATED: February _____, 2017          DAVID F. CRUTCHER

                                     By: _____
                                         David F. Crutcher

                                         Attorneys for Defendants
                                         FCE Benefit Administrators, Inc., Stephen Porter, and
                                         Gary Beckman

84390513v1                                          14

Case 1:16-cv-00680-CKK    Document 57    Filed 04/18/18    Page 69 of 84
Case 1:15-cv-03315-RDB    Document 183    Filed 02/27/17    Page 16 of 22
Case 1:15-cv-03315-RDB    Document 182-1    Filed 02/24/17    Page 16 of 22

notice to all other Parties hereto for good cause. To the maximum extent possible, the Parties

agree to be bound by the terms of this Protective Order pending its entry by the Court, or

pending the entry of an alternative order thereto.

The Parties, through their counsel of record in the Action, have reviewed and agree to the

Protective Order set forth above, which they agree may be executed by their counsel of record in

the Action in counterparts, each of which shall be deemed an original, but all of which together

shall be deemed to be one and the same agreement which shall be binding.

DATED: February _____, 2017            **SEDGWICK LLP**

By: _____
   Robert D. Eassa
   Marc A. Koonin
   Delia A. Isvoranu
   Meredith R. Philipp

   Attorneys for Defendants
   FCE Benefit Administrators, Inc., Stephen Porter, and
   Gary Beckman

DATED: February _____, 2017            **MILLER & CHEVALIER CHARTERED**

By: _____
   Theresa S. Gee
   Dawn E. Murphy-Johnson

   Attorneys for Defendants
   FCE Benefit Administrators, Inc., Stephen Porter, and
   Gary Beckman

DATED: February 21, 2017            **DAVID F. CRUTCHER**

By: _____
   David F. Crutcher

   Attorneys for Defendants
   FCE Benefit Administrators, Inc., Stephen Porter, and
   Gary Beckman

84390513v1            14

Case 1:16-cv-00680-CKK   Document 57   Filed 04/18/18   Page 70 of 84
Case 1:15-cv-03315-RDB   Document 183   Filed 02/27/17   Page 17 of 22
Case 1:15-cv-03315-RDB   Document 182-1   Filed 02/24/17   Page 17 of 22

DATED: February 21, 2017

OFFIT KURMAN

By: _____
Harold M. Walter
Howard K. Kurman
Angela D. Pallozzi

Attorneys for Defendants
Chimes District of Columbia, Inc., Chimes
International Limited, Martin Lampner, and
Albert Bussone

DATED: February 21, 2017

SMITH & DOWNEY, P.A.

By: _____
Henry Smith
Scott Moeves
Kerstin M. Miller

Attorneys for Defendants
Chimes District of Columbia, Inc., Chimes
International Limited, Martin Lampner, and
Albert Bussone

DATED: February 21, 2017

JACKSON LEWIS P.C.

By: _____
René E. Thorne
Brooks R. Amiot
William H. Payne, IV
Attorneys for Defendants
Benefits Consulting Group and Jeffrey Ramsey

DATED: February ____, 2017

JACKSON WALKER L.L.P.

By: _____
Marilyn M. Brown

Attorneys for Defendant
Marilyn Ward

Case 1:16-cv-00680-CKK    Document 57    Filed 04/18/18    Page 71 of 84
Case 1:15-cv-03315-RDB    Document 183    Filed 02/27/17    Page 18 of 22
Case 1:15-cv-03315-RDB    Document 182-1    Filed 02/24/17    Page 18 of 22

DATED: February 21, 2017

OFFIT KURMAN

By: _____

Harold M. Walter
Howard K. Kurman
Angela D. Pallozzi

Attorneys for Defendants
Chimes District of Columbia, Inc., Chimes
International Limited, Martin Lampner, and
Albert Bussone

DATED: February 21, 2017

SMITH & DOWNEY, P.A.

By: _____

Henry Smith
Scott Mooves
Kerstin M. Miller

Attorneys for Defendants
Chimes District of Columbia, Inc., Chimes
International Limited, Martin Lampner, and
Albert Bussone

DATED: February _____, 2017

JACKSON LEWIS P.C.

By: _____

René E. Thorne
Brooks R. Amiot
William H. Payne, IV
Attorneys for Defendants
Benefits Consulting Group and Jeffrey Ramsey

DATED: February 21, 2017

JACKSON WALKER L.L.P.

By: _____

Marilyn M. Brown

Attorneys for Defendant
Marilyn Ward

Case 1:16-cv-00680-CKK   Document 57   Filed 04/18/18   Page 72 of 84
Case 1:15-cv-03315-RDB   Document 183   Filed 02/27/17   Page 19 of 22
Case 1:15-cv-03315-RDB   Document 182-1   Filed 02/24/17   Page 19 of 22

DATED: February ____, 2017     STRANDBERG LAW OFFICE, P.C.

By: _____
    Rebecca Newman Strandberg

    Attorneys for Defendant
    Marilyn Ward

    UNITED STATES DEPARTMENT OF LABOR
DATED: February 21, 2017    OFFICE OF THE SOLICITOR

By: _____
    Geoffrey Forney
    Senior Trial Attorney

    Attorneys for Plaintiff
    Edward C. Hugler,
    Acting Secretary Of Labor

84390513v1               16

Case 1:16-cv-00680-CKK   Document 57   Filed 04/18/18   Page 73 of 84
Case 1:15-cv-03315-RDB   Document 183   Filed 02/27/17   Page 20 of 22
Case 1:15-cv-03315-RDB   Document 182-1   Filed 02/24/17   Page 20 of 22

DATED: February 22, 2017      STRANDBERG LAW OFFICE, P.C.

By: *Rebecca Strandberg* with permission
      Rebecca Newman Strandberg   by Marilyn Dixon

Attorneys for Defendant
Marilyn Ward

UNITED STATES DEPARTMENT OF LABOR
DATED: February _____, 2017     OFFICE OF THE SOLICITOR

By: _____

     Geoffrey Forney
     Senior Trial Attorney

     Attorneys for Plaintiff
     Edward C. Hugler,
     Acting Secretary Of Labor

84390513v1                         16

Case 1:16-cv-00680-CKK    Document 57    Filed 04/18/18    Page 74 of 84
Case 1:15-cv-03315-RDB    Document 183    Filed 02/27/17    Page 21 of 22
Case 1:15-cv-03315-RDB    Document 182-1    Filed 02/24/17    Page 21 of 22

IT IS SO ORDERED.

Entered this ___27___ day of February, 2017:

RICHARD D. BENNETT
United States District Judge

Case 1:16-cv-00680-CKK    Document 57    Filed 04/18/18    Page 75 of 84
Case 1:15-cv-03315-RDB    Document 183    Filed 02/27/17    Page 22 of 22
Case 1:15-cv-03315-RDB    Document 182-1    Filed 02/24/17    Page 22 of 22

## ADDENDUM A

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [print or type full name], of
_____ [print or type full address], declare
under penalty of perjury that I have read in its entirety and understand the Stipulated Protective
Order (the "Protective Order") that was issued by the United States District Court for the District
of Maryland Civil Case No. 1:15-3315-RDB, originally entitled *Perez v. Chimes District of
Columbia, Inc., et al.* (the "Action").

I agree to comply with and to be bound by all the terms of the Protective Order and I
understand and acknowledge that failure to so comply could expose me to sanctions and
punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner
any information or item that is subject to this Protective Order to any person or entity except in
strict compliance with the provisions of the Protective Order. However, I understand that the
Protective Order does not prevent me from making otherwise lawful disclosures to Government
law enforcement agencies consistent with any ethical duties I may have regarding confidential
client communications. Unless the Protective Order specifically provides otherwise, within 60
days of any request to do so, after receiving notice of the entry of orders, judgments or decrees
finally disposing of the Action, I will return the Confidential Information — including any
copies, notes, summaries, excerpts, and compilations made from it — or certify its destruction to
the counsel who provided me with the Confidential Information.

I further agree to submit to and consent to the jurisdiction of the United States District
Court for the District of Maryland for the purpose of enforcing the terms of the Protective Order,
even if such enforcement proceedings occur after termination of the Action. Furthermore, I
have provided accurate information below about my address and telephone number, as well as
any agent for service of process, if any.

I hereby appoint _____ [print or type full name] of
_____ [print or type full address and telephone
number] as my agent for service of process in connection with this Action or any proceedings
related to enforcement of this Protective Order.

I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct. Executed this _____ day of _____, _____ at
_____, _____.

_____
(Signature)

Printed name: _____

Address: _____    Telephone: _____

_____

Exhibit D

**Koonin, Marc A.**

| | |
|---|---|
| **From:** | Ted Scallet <ted@eascolaw.com> |
| **Sent:** | Monday, April 16, 2018 6:56 PM |
| **To:** | Koonin, Marc A. |
| **Cc:** | Susie Baron; Barnes III, Attison; Cohen, Madeline; Eassa, Robert D.; Schrier, Michael J; Zacharia, Heather J. |
| **Subject:** | Re: Abraha - Expert Report Issue |

I heard Mr. Raddock say report in his deposition, but if there are multiple reports, then the request is for the narrative portion of all reports.

I know that you have the Chimes procedure, but don't feel like you have to rush because of me. I would be fine with just bringing it up with the Judge at the conference next Friday.

On Apr 16, 2018, at 9:28 PM, Koonin, Marc A. <MAKoonin@duanemorris.com> wrote:

> Ted:
>
> Upon further review, it appears that the U.S. District Court for the District of Columbia may have jurisdiction over enforcement of the subpoena. Accordingly, given the Friday production date set in the subpoena, we intend to email the Court for guidance to preclude any argument that FCE's motion to quash is untimely. We will, of course, copy all other counsel on that communication.
>
> We have also notified the other counsel in the Chimes litigation of the proposed subpoena.
>
> Finally, we note that the subpoena is confusing in that it refers to "the report" – presumably a reference to Mr. Raddock's initial expert report in the Chimes litigation.
>
> Sincerely,
>
> Marc
>
> **Marc A. Koonin**
> Associate
>
> Duane Morris LLP
> Spear Tower
> One Market Plaza, Suite 2200
> San Francisco, CA 94105-1127
> P: +1 415 957 3085
> F: +1 415 354 3284
>
> MAKoonin@duanemorris.com
> www.duanemorris.com

**From:** Ted Scallet [mailto:ted@eascolaw.com]
**Sent:** Monday, April 16, 2018 1:56 PM
**To:** Koonin, Marc A. <MAKoonin@duanemorris.com>
**Cc:** Susie Baron <sbaron91@gmail.com>; Barnes III, Attison <ABarnes@wileyrein.com>; Cohen, Madeline <MCohen@wileyrein.com>; Eassa, Robert D. <RDEassa@duanemorris.com>; Schrier, Michael J <MJSchrier@duanemorris.com>; Zacharia, Heather J. <HJZacharia@duanemorris.com>
**Subject:** RE: Abraha - Expert Report Issue

I am sympathetic to your argument about the 2400 pages of exhibits. I will shortly be sending a subpoena to Mr. Clare at BDO USA for the narrative portion of the *Chimes* report. He can decide what he wants to do since you do not represent BDO.

**From:** Koonin, Marc A. <MAKoonin@duanemorris.com>
**Sent:** Monday, April 16, 2018 4:31 PM
**To:** Ted Scallet <ted@eascolaw.com>
**Cc:** Susie Baron <sbaron91@gmail.com>; Barnes III, Attison <ABarnes@wileyrein.com>; Cohen, Madeline <MCohen@wileyrein.com>; Eassa, Robert D. <RDEassa@duanemorris.com>; Schrier, Michael J <MJSchrier@duanemorris.com>; Zacharia, Heather J. <HJZacharia@duanemorris.com>
**Subject:** RE: Abraha - Expert Report Issue

Ted:

Thank you for your email. However, we completely disagree with your position and, frankly, perceive this request to be harassing.

First, the expert reports in the two cases involve different plans with different dynamics. The initial Chimes expert report also includes 37 exhibits (including an expert report by another party in that case) relating to that case consisting of over 2400 pages. Many of the documents used to prepare the initial Chimes report were designated as confidential under the relevant protective order and involve sensitive financial information completely unrelated to the Abraha case. Any potential relevance to the Abraha case is, at best tangential, but the disclosure of completely unrelated sensitive financial information would be extensive and unwarranted.

Second, it is premature and potentially inappropriate to ask this Court to schedule an advisory discovery hearing. To the best of our knowledge there is no outstanding subpoena for the expert report in Chimes, and discovery closes in four days, leaving insufficient time to set a reasonable response date for any subpoena which might be issued now. Moreover, while we agreed to accept the notice of deposition for Mr. Raddock, we have not agreed and are do not agree to accept any subpoenas issued by the U.S. District Court for the District of Columbia for the Chimes report and are not authorized to accept service of such a subpoena on behalf of BDO. Accordingly, any subpoena you may request to be issued will have to be served and enforced, if at all, in the district in which it is issued.

Third, even if it were appropriate to set a discovery hearing before the Court in this matter, we could not do so at this time. As you are no doubt aware, the Chimes protective order requires any party receiving a subpoena for Confidential Information to notify the other parties so that they can take steps to protect their interests. There are twelve separate parties in the Chimes litigation, including the Secretary, represented by government trial attorneys and six other law firms. Accordingly, we will be obligated to notify each of them should Plaintiffs issue a subpoena in this case. Additionally, BDO will also have an interest in responding.

In summary, at this time we do not intend to produce (and will object to any other party producing) any expert report in the Chimes litigation without a court order requiring such production. Should Plaintiffs nevertheless choose to issue a subpoena, we will notify all other potentially interested parties so that they can also protect their interests and will meet and confer with you as appropriate, including at the depositions scheduled later this week.

Sincerely,

Marc

**Marc A. Koonin**
Associate

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
**P:** +1 415 957 3085
**F:** +1 415 354 3284

MAKoonin@duanemorris.com
www.duanemorris.com

**From:** Ted Scallet [mailto:ted@easconlaw.com]
**Sent:** Monday, April 16, 2018 7:29 AM
**To:** Koonin, Marc A. <MAKoonin@duanemorris.com>
**Cc:** Susie Baron <sbaron91@gmail.com>; Barnes III, Attison <ABarnes@wileyrein.com>; Cohen,
Madeline <MCohen@wileyrein.com>; Eassa, Robert D. <RDEassa@duanemorris.com>; Schrier, Michael J
<MJSchrier@duanemorris.com>; Zacharia, Heather J. <HJZacharia@duanemorris.com>
**Subject:** RE: Abraha - Expert Report Issue

Marc – attorneys routinely ask for other expert reports since the expert's experience is always an
issue.  I note that Attison's subpoenas to all three of plaintiffs' experts asked for other expert
reports.  Nevertheless, I only seek reports when there is a reasonable possibility that they would involve
the expertise claimed in the report in my case, which is why I am not seeking any other expert reports
by any of the other experts in this case.  The *Chimes* report, however, is a different matter.  As Judge
Kollar-Kotelly has already held when she denied your motion to strike references to the *Chimes* case in
her opinion denying your motion to dismiss the complaint, it is "appropriate" to consider *Chimes* in this
case because it involves a common defendant and some common allegations.

This is not a close question.  The *Chimes* report is directly relevant to Mr. Raddock's knowledge of FCE's
operations and fees, which underlies all of his opinions in this case.  Your argument that *Chimes*
"involves a different sort of plan" is not a basis for withholding the report; on the contrary, Mr.
Raddock's judgment concerning which FCE client plans are "a different sort of plan" and which are
comparable to the Forge Plan is a critical assumption in the analysis in his report in this case comparing
the Forge Plan fees to the fees of the other FCE clients, and was a principal area of questions during Mr.
Raddock's deposition.

I will meet and confer with Bob concerning this issue when we are together this week, but your
invocation of the *Chimes* Confidentiality Order suggests that you are required to pursue another
procedure.  The Confidentiality Order in *Chimes* does not authorize you to withhold the Raddock report -
- it imposes the burden on you (or BDO) to seek protection in the court which issued the
subpoena.  Please let me know when you intend to file a motion with Judge Kollar-Kotelly so we can
respond and have the motion teed up for the Judge when we meet with her on April 27.

**From:** Koonin, Marc A. <MAKoonin@duanemorris.com>
**Sent:** Sunday, April 15, 2018 10:39 AM
**To:** Ted Scallet <ted@easconlaw.com>
**Cc:** Susie Baron <sbaron91@gmail.com>; Barnes III, Attison <ABarnes@wileyrein.com>; Cohen,
Madeline <MCohen@wileyrein.com>; Eassa, Robert D. <RDEassa@duanemorris.com>; Schrier, Michael J
<MJSchrier@duanemorris.com>; Zacharia, Heather J. <HJZacharia@duanemorris.com>
**Subject:** Re: Abraha - Expert Report Issue

Ted:

3

Thank you for your email. We can agree to everything except for your request for the Chimes report. It is both irrelevant to this litigation since it involves a different sort of plan and is also subject to a separate protective order in that litigation. Accordingly, we are not at liberty to release it.

Sincerely,

Marc

Marc A. Koonin
Associate

Duane Morris LLP
Spear Tower
One Market Place, Suite 2200
San Francisco, CA. 94105-1127
P. + 1 415 957 3085
F. + 1 415 354 3284

MAKoonin@duanemorris.com
www.duanemorris.com

On Apr 15, 2018, at 7:00 AM, Ted Scallet <ted@eascolaw.com> wrote:

Plaintiffs have no objection to Mr. Raddock correcting his report after April 20. We do not have or anticipate having any invoices from Mr. Fawbush or Mr. Cocks. We anticipate receiving another invoice from Mr. Northrop and will send it along whether received on or after April 20.

Please confirm that you will produce any invoices from BDO concerning the expert services provided by Mr. Raddock and Mr. Gibson regardless of whether they are received before or after April 20. Please also confirm that you will produce Mr. Raddock's expert report in *Chimes* without a subpoena and on or before April 20.

**From:** Koonin, Marc A. <MAKoonin@duanemorris.com>
**Sent:** Saturday, April 14, 2018 9:34 PM
**To:** Susie Baron <sbaron91@gmail.com>
**Cc:** Ted Scallet <ted@eascolaw.com>; Barnes III, Attison <ABarnes@wileyrein.com>; 'Cohen, Madeline' <MCohen@wileyrein.com>; Eassa, Robert D. <RDEassa@duanemorris.com>; Schrier, Michael J <MJSchrier@duanemorris.com>; Zacharia, Heather J. <HJZacharia@duanemorris.com>
**Subject:** FW: Abraha - Expert Report Issue

Susan:

We have not yet heard back from Ted on this, but he did previously inform us that he was planning on taking an extended vacation overseas during this time period so I don't know if he is monitoring his email or is only doing so intermittently. Can you please respond to my email below?

Thanks.

Sincerely,

Marc

P.S. – Ted, if you are monitoring your email and can respond, please do so.


**Marc A. Koonin**
Associate

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
**P:** +1 415 957 3085
**F:** +1 415 354 3284

MAKoonin@duanemorris.com
www.duanemorris.com

**From:** Koonin, Marc A.
**Sent:** Friday, April 13, 2018 12:16 PM
**To:** Ted Scallet <ted@eascolaw.com>
**Cc:** Susie Baron <sbaron91@gmail.com>; Barnes III, Attison <ABarnes@wileyrein.com>; Cohen,
Madeline <MCohen@wileyrein.com>; Schrier, Michael J <MJSchrier@duanemorris.com>; Eassa, Robert
D. <RDEassa@duanemorris.com>; Zacharia, Heather J. <HJZacharia@duanemorris.com>
**Subject:** Abraha - Expert Report Issue

Ted:

　　　　We wanted to follow up with you about a couple of expert issues.  First, I understand that you
confronted Aaron Raddock with some calculation errors during his deposition and that he represented
that he would correct the relevant portions of his report.  As you know, parties have a continuing
obligation to supplement reports even beyond the discovery cutoff date.  Because Mr. Raddock wants to
do what he represented he would do but has not yet had an opportunity to review his deposition
transcript, we anticipate that the supplemental report correcting the those errors may not be available
until after the April 20 discovery cutoff date.  Please let us know if Plaintiffs have any objections on that
basis.  Second, to the extent that Mr. Fawbush and/or Mr. Cocks have invoiced or been paid any fees
since Plaintiffs' last disclosure on that issue, please provide us with supplemental documents pursuant
to the agreement of the parties to do so without the need for a subpoena.

　　　　Sincerely,

　　　　Marc


**Marc A. Koonin**
Associate

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
**P:** +1 415 957 3085
**F:** +1 415 354 3284

MAKoonin@duanemorris.com
www.duanemorris.com


For more information about Duane Morris, please visit http://www.DuaneMorris.com


Confidentiality Notice: This electronic mail transmission is privileged and confidential and is intended only for the review of the party to whom
it is addressed. If you have received this transmission in error, please immediately return it to the sender. Unintended transmission shall not
constitute waiver of the attorney-client or any other privilege.

Exhibit E



Tel:  212-404-5579
Fax:  212-885-8116
jclare@bdo.com

100 Park Avenue
New York, NY 10017

James Clare
Assistant General Counsel

April 18, 2018

VIA Email: ted@eascolaw.com
Edward Scallet, Esq.
EascoLaw PLLC
2756 Stephenson Lane, NW
Washington, DC 20015

Re:    Non-Party Subpoena to BDO USA, LLP in *Abraha, et al. v. Colonial Parking, Inc., et al.*, CV 1:16:00680

Mr. Scallet,

I am writing in response to the second non-party subpoena ("Second Subpoena") sent to BDO USA, LLP ("BDO") on April 16, 2018 in connection with the above-referenced matter. In the interest of expediting a resolution of the parties' dispute before the Court, BDO has agreed to waive service requirements and accept service by email without waiving its objections to the Second Subpoena. BDO is herewith providing objections and responses to the Second Subpoena's request (the "Request") for the "narrative portion of the report" from *Hugler v. Chimes District of Columbia, Inc.*, Civ. No. RDB-15-3315.

Without waiving any objections to the Second Subpoena, BDO objects and responds to the Second Subpoena on the grounds, inter alia, that:

1.   BDO objects to the Second Subpoena in its entirety as it was not served sufficiently in advance of the return date of April 20, 2018 to allow non-party BDO a reasonable and adequate time to respond. Even if the Second Subpoena had been "served" when Plaintiff's counsel emailed it to BDO at 4:56pm EST on April 16, 2018, non-party BDO has obligations as an accounting firm in the middle of its busiest week of the year that make the 96 hour time-frame for a response imposed by the Second Subpoena patently unreasonable and improper under FRCP 45.

2.   BDO objects to the Second Subpoena because it is duplicative and/or cumulative in that the Request seeks the production of a report that is available from the parties or other sources. BDO, a non-party in the middle of its busiest time of year, should not be put to the time, burden or expense of responding to an unnecessary subpoena and producing the document when Plaintiff could readily obtain the requested report from other sources. Accordingly, the Second Subpoena is unduly burdensome and oppressive.

3.   BDO objects to the Second Subpoena as unduly burdensome and oppressive in that it calls for the production of a report from a wholly separate litigation without any regard for the potential relevance of the material or the burden that a response to a request for the report will impose on non-party BDO. Specifically, the Request seeks the production of the report from the *Chimes* litigation, regardless of its relevance to the dispute being litigated.

4.   BDO objects to the Request as unduly burdensome and oppressive because it is vague and ambiguous in that it seeks the "narrative portion of the report (not the exhibits)



Edward Scallet, Esq.
April 18, 2018

prepared by Aaron Raddock" in the *Chimes* litigation without specifying which one of Mr. Raddock's reports in the *Chimes* litigation it seeks.

5.  BDO objects to the Second Subpoena's Request because the reports from the *Chimes* litigation may be protected by the accountant-client privilege, attorney-client privilege, work product immunity or other privileges, laws, rules, regulations or doctrines which prohibit or limit discovery under federal or state law.  BDO was retained by counsel to FCE Benefit Administrators, Inc. to perform professional consulting services to assist counsel in rendering legal services in the *Chimes* litigation. BDO's work was performed at the exclusive direction of and in conjunction with legal counsel's services.  BDO's services may be covered by the attorney-client privilege and/or attorney work-product protection.  BDO cannot and will not waive such privileges or protections on its client's behalf.  As is normal and customary when conducting expert discovery, the Request should be made to FCE's counsel pursuant to the procedures set forth for obtaining expert discovery in this matter.  Accordingly, the Second Subpoena is an improper attempt to circumvent that discovery process.

6.  BDO objects to the Second Subpoena because it calls for information as to which BDO's clients, or any other person has a right to insist upon measures for the protection of confidential, personal, proprietary, or trade secret information, and seek documents or information protected by applicable privileges, immunities, and protections from discovery.  BDO may withhold or redact information for attorney-client privilege, accountant-client privilege or to protect non-relevant, sensitive business/trade secrets or the personal information of individuals.  Specifically, the report requested by the Second Subpoena is covered by the Stipulated Confidentiality Agreement and Protective Order in the *Chimes* litigation ("*Chimes* Protective Order"), so ordered February 27, 2017.  Counsel for FCE made Plaintiff's counsel aware of the *Chimes* Protective Order prior to Plaintiff's attempts to send BDO the Second Subpoena. Accordingly, the Second Subpoena is an improper attempt to bypass the protections the *Chimes* court imposed on the materials in that matter.  Further, the unreasonably short response time for the Second Subpoena does not permit the parties in the *Chimes* litigation to assert their rights under the *Chimes* Protective Order.

BDO reserves the right to supplement and/or modify its objections and response, and to respond, object or make a motion in response to the Subpoena.  BDO expects that counsel for the parties will resolve this matter without further involvement by BDO.

Thank you,

*James Clare*

James Clare

CC: Marc Koonin, Duane Morris LLP