UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Berthe Benyam Abraha, *et al.*, <br>     *Plaintiffs*, <br>   v. <br> Colonial Parking, Inc., *et al.*, <br>     *Defendants*. | Civil Action No. 16-680 (CKK) |

**MEMORANDUM OPINION**
(April 30, 2018)

Plaintiffs Berthe Benyam Abraha, Esayas Akalu, Samuel Habtewoled, and Gedlu Melke seek to certify a class in this action against Defendants Colonial Parking, Inc. ("Colonial") and FCE Benefit Administrators, Inc. ("FCE"). FCE agrees that a class should be certified, and Colonial effectively concedes as much. However, the briefing by each party is not a model of clarity. The Court requires further information if it is to properly assess whether class certification is warranted and to appropriately define the scope of that class.

Accordingly, upon consideration of the briefing,[1] the relevant legal authorities, and the record as a whole, the Court **DENIES WITHOUT PREJUDICE** Plaintiffs' [43] Motion for Class

---

[1] The Court's consideration has focused on the following documents, including their accompanying attachments:

- Pls.' Mot. for Class Certification, ECF No. 43 ("Pls.' Mot.");
- Decl. of Edward Scallet, ECF No. 44 ("Scallet Decl.");
- Pls.' Mem. in Supp. of Their Mot. for Class Certification, ECF No. 45 ("Pls.' Mem.");
- Def. FCE Benefit Administrators, Inc.'s Mem. of Law in Supp. of Its Partial Opp'n to Pls.' Mot. for Class Certification, ECF No. 47 ("FCE's Opp'n");
- Def. Colonial Parking Inc.'s Opp'n to Pls.' Mot. to Certify Class, ECF No. 48 ("Colonial's Opp'n"); and
- Pls.' Reply Mem. in Supp. of Their Mot. for Class Certification, ECF No. 52 ("Pls.' Reply").

1

Certification, and **DENIES** as MOOT FCE's Motion to Strike Evidence Submitted by Plaintiffs in Support of Plaintiffs' Motion for Class Certification ("Motion to Strike"), contained within FCE's [47-3] filing.

### A. Issues with the Parties' Briefing

Plaintiffs admit that their "Motion for Class Certification seeks a class definition different from the one that appears in their Complaint." Pls.' Mem. at 14. In their Complaint, Plaintiffs proposed that the class include "[a]ll persons who were employed by Colonial from 2010 through the present for whom Colonial or FEC [sic] maintained a DUB Account administered by FEC [sic]." Compl., ECF No. 1, ¶44. Now they seek to include "[a]ny person who was entitled to a benefit from the Forge Health and Welfare Plan at any time from January 1, 2002, through December 31, 2015." Pls.' Mem. at 14. Aside from the clearly expanded time period, it is not readily apparent to the Court whether and how the proposed definition is otherwise enlarged. Lingering questions include 1) how the Colonial employment benchmark in the original definition may differ from the benefit entitlement benchmark in the new definition, and 2) how keying the definition to maintenance of a DUB account compares with entitlement to a benefit under the Forge Health and Welfare Plan.

Plaintiffs argue that this expanded definition is warranted by their finding, during discovery, that Defendants engaged in "numerous acts of 'fraudulent concealment' and that many of them affected [National Institutes of Health ("NIH")] employees who received distributions prior to 2010." *Id.* In response to the statute of limitations arguments of Defendants, Plaintiffs

---

Among the attachments to FCE's Opposition is its Objections to and Motion to Strike Evidence Submitted by Plaintiffs in Support of Plaintiffs' Motion for Class Certification, ECF No. 47-3 ("FCE's Mot. to Strike").

2

maintain that the "last action," for purposes of 29 U.S.C. § 1113, occurred in December 2015; that recent Supreme Court precedent renders Defendants' defense off limits; and that Plaintiffs may avail themselves of the "fraud and concealment" exception to the statute of limitations.[2] *Id.* at 11-12. Plaintiffs do not whisper "fraud" anywhere in their Complaint, though their allegations as to excessive fees, among other things, could be construed that way. The Complaint also does not state when and how Plaintiffs, as opposed to their counsel, discovered the alleged fraud associated with any given allegation. For example, did Plaintiffs discover any of this alleged fraud during the time periods at issue, or, with respect to each fraud allegation, has counsel informed Plaintiffs of the alleged fraud based on counsel's review of records?

Plaintiffs also appear to expand the claims that they are asserting. "Since [the Court decided Defendants' motions to dismiss], Plaintiffs have taken seven depositions and reviewed more than 50,000 pages of documents, and they *are now seeking to recover losses pursuant to six discrete claims* under ERISA. Plaintiffs *recently set forth the basis for each of these claims* in a Second Supplemental Response to Defendant FCE's First Set of Interrogatories . . . ." *Id.* at 1 (emphasis added). The bulk of the parties' briefing is devoted to expounding, or defending against, factual development as to these claims or the class period that, as discussed above, allegedly took place during discovery preceding the respective briefs. That newly alleged information is not, of course, reflected in the operative [1] Complaint.[3]

---

[2] Plaintiffs observe that the statute of limitations issue may rule out some class members at the post-judgment stage of allocating the recovery. *See* Pls.' Reply at 3. But they argue that this should not limit their opportunity to pursue the claims as a class, for they seek relief for harms to the plan as a whole rather than relief for individual beneficiaries thereof. *See id.* at 1-3. The Court does not express a view as to these issues at this time.

[3] The Court need not decide FCE's Motion to Strike assertions in a declaration by Plaintiffs' counsel, *see* FCE's Opp'n at 10-12, as denial of Plaintiffs' Motion moots the issue.

Plaintiffs did not seek leave to amend at any point prior to the filing of their motion, despite the Court's express provision in the [21] Scheduling and Procedures Order for a time period within which Plaintiffs could have sought such leave. It is true that the amendment deadline of September 15, 2016, preceded most of the discovery in this action. *See* Scheduling and Procedures Order, ECF No. 21, at 5. But since then Plaintiffs have not sought any such amendment, for example by requesting a reopened window within which to amend, as part of the relevant meet-and-confer statement in which they could have done so. *See* Joint Report of All Parties Pursuant to FRCP 16 and LCvR 16.3, ECF No. 32, at 3 (recognizing simply that "[p]ursuant to the Court's Order of August 1, 2016, the deadline for amending the pleadings has passed"). Nor, during the more than five months of discovery that followed the filing of their Motion for Class Certification, did Plaintiffs indicate to the Court that they would amend if the Court would permit them to do so.

Ordinarily, the Court would not be concerned that a party did not exercise its right to seek leave to amend pleadings when it had the right, or petition the Court for a further such right after the lapse of that interval. In this case, however, the fact that Plaintiffs did not seek leave to amend has materially hampered the Court's ability to properly evaluate the parties' arguments regarding Plaintiffs' Motion for Class Certification.

The onus of clear briefing does not lie entirely with Plaintiffs. Defendants too could have better facilitated the Court's ability to evaluate their proposed class definitions. For its part, "FCE agrees with certifying a class in this matter," but "asks this Court to limit any class to former Colonial Parking, Inc. employees who worked on the National Institute of Health contract between October 1, 2006 and December 31, 2015, and who participated in the DUB Benefit program." FCE's Opp'n at 1-2. FCE's briefing does not specify, however, 1) why the limitation to former Colonial employees is more appropriate than a focus on participants in the Forge Health and

4

Welfare Plan; 2) how a definition keyed to the NIH contract would differ from one keyed to the Forge Health and Welfare Plan; or 3) how "participating in" the relevant program may differ, if at all, from being "entitled to a benefit from" that program.

Colonial's proposed class(es) remedy some of this ambiguity at the apparent expense of administrability. "Colonial understands that the Court may be inclined to certify a class in this matter," because "Plaintiffs purport to bring this action on behalf of the Forge Health and Welfare Plan." Colonial's Opp'n at 2. But proceeding claim-by-claim through the allegations in Plaintiffs' Motion for Class Certification, Colonial proposes class definitions of differing scope—as little as no class at all—based primarily on Colonial's statute of limitations arguments. *See id.* at 15-16. Should the Court be inclined to proceed with class certification without resolving such statute of limitations issues, as "Colonial appreciates that this Court has, at times," done with motions to certify, *id.* at 4 n.2 (citing *Kifafi v. Hilton Hotels Ret. Plan*, 189 F.R.D. 174 (D.D.C. 1999)),[4] then the Court would be left without a clear sense of the class definition that Colonial would urge vis-à-vis those of Plaintiffs and FCE.

For those claims as to which Colonial does supply a proposed definition, Colonial may be agreeing with Plaintiffs (but not FCE) when Colonial argues that the appropriate individuals be "Participants in the Forge Health and Welfare Plan." *See id.* at 14-16. But Colonial limits its proposal only to those who "were entitled to a DUB benefit distribution" and "who received" it within the proposed statute of limitations. *Id.* Colonial does not make clear, for example, 1) how a limitation to "Participants in the Forge Health and Welfare Plan" differs from that of former

---

[4] Colonial's other citation in the same footnote makes clear that it loosely refers to "this Court" as the U.S. District Court for the District of Columbia, rather than this specific Court hearing this case. Colonial supplies only the one reference, to *Kifafi*, as a case heard by this specific Court on the issue of statute of limitations issues at the class certification stage.

5

Colonial employees; or 2) why the Forge Health and Welfare Plan is the more appropriate benchmark than the NIH contract. Colonial does make some attempt to explain why the Court should adopt language of entitlement and receipt, rather than participation in, the relevant program, though even that explanation is rather thin. *See id.* at 14.

In addition, all parties have failed to specifically brief the Rule 23 standards with the adequacy necessary to facilitate the Court's decision. Plaintiffs are so summary in their treatment of some of the applicable standards that, for example, they attempt to prove that they adequately represent putative class members simply by stating that "Plaintiffs stepped forward to bring this lawsuit on behalf of their fellow employees [and] are very aware of the responsibilities that that entails," and making a few observations about their counsel's experience. Pls.' Mem. at 17. For their part, Defendants do not address each of the Rule 23 standards with specificity. Rather, FCE does so selectively, *see, e.g.*, FCE's Opp'n at 12-13 (challenging typicality and commonality), and Colonial scarcely does so at all, *see generally* Colonial's Opp'n at 8 n.4 (specifically applying Rule 23 to the facts of this case only in this footnote and only cursorily as to commonality).

Both Defendants comment in some fashion on the fact that Plaintiffs did not amend the Complaint to account for the admitted innovation in their Motion for Class Certification. *See* FCE's Opp'n at 10 ("Plaintiffs have not amended their Complaint to reflect their ever-changing contentions . . . ."); Colonial's Opp'n at 1-2 ("For the last 19 months, Colonial has defended this case with the understanding that the scope of the class, if certified, would not exceed the scope of the Complaint itself . . . ."). Colonial makes some suggestion of prejudice by Plaintiffs' de facto attempt to amend the Complaint with their Motion for Class Certification. *See* Colonial's Opp'n at 1-2 ("Now, without notice, after nearly two years and all but two of the depositions, Colonial learns upon reading Plaintiffs' Motion that Plaintiffs abruptly seek to *more than double the class*

6

*period from six years to fourteen years*."). But it is not clear whether the five-plus months of discovery following Plaintiffs' Motion for Class Certification obviated any prejudice that either Defendant would have suffered were Plaintiffs' broader proposed class to be certified without any further discovery. In any event, the Court shall provide Plaintiffs with an opportunity to amend, and Defendants with an opportunity to raise any prejudice that would result therefrom.

### B. Further Proceedings in This Case

While it is not the Court's standard practice to do so, the Court shall distill what it expects to see in any viable amended class action complaint filed in this case. An amended complaint should expressly identify each of Plaintiffs' allegations against Defendants in this action. Any allegation of fraudulent concealment sufficient to toll the statute of limitations must be pled with particularity under the Federal Rules and must comport with further standards in this Circuit. *See* Fed. R. Civ. P. 9(b); *Larson v. Northrop Corp.*, 21 F.3d 1164, 1172-74 (D.C. Cir. 1994). An amended complaint should sufficiently describe each named Plaintiff's employment dates and circumstances so as to make clear his connection, if any, to Defendants during each portion of the proposed class period. The amended complaint should set forth a class definition that will be consistent with any subsequently renewed motion for class certification.

In responding to a motion for leave to amend the Complaint, Defendants should raise any prejudice but should bear in mind the generous standard by which the Court must assess any proposed, pre-trial amendment under the Federal Rules. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). Accordingly, Defendants should not base any decision to oppose amendment on their statute of limitations defenses. There will be one or more subsequent opportunities to raise those defenses in briefing motions under different standards that would properly put the statute of limitations issue before this Court.

In likewise unusual fashion, the Court shall, albeit rather prematurely, describe the requisite content of the briefing of any renewed motion for class certification. Each party's briefing of the class certification motion should propose the same class definition. If that is not possible, then each party's briefing should describe in detail the differences between that party's proposed class definition and the definitions proposed by other parties to this action, including as to time period; employer, employment location, or plan pursuant to which a putative group of individuals would have some connection to the instant action; and whether an individual would fall within the class solely by maintenance of a DUB account on his or her behalf or instead by entitlement at some specific time to Forge Health and Welfare Benefits or DUB benefits.

***

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiffs' [43] Motion for Class Certification is **DENIED WITHOUT PREJUDICE**; and it is

**FURTHER ORDERED** that Defendant FCE Benefit Administrators, Inc.'s Motion to Strike Evidence Submitted by Plaintiffs in Support of Plaintiffs' Motion for Class Certification, contained within FCE's [47-3] filing, is **DENIED** as MOOT; and it is

**FURTHER ORDERED** that the parties shall file a Joint Status Report by **MAY 14, 2018**, indicating whether Plaintiffs shall take the opportunity to file a motion for leave to amend the Complaint, whether Defendants intend to oppose that motion, and what briefing timeline the parties would propose. The parties' Joint Status Report also shall make any alternative proposal to amending the Complaint that would more efficiently resolve this action.

An appropriate Order accompanies this Memorandum Opinion.

Date: April 30, 2018

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge