**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BERTHE BENYAM ABRAHA, *et al.*,<br>        Plaintiffs,<br>    v.<br>COLONIAL PARKING, INC., *et al.*,<br>        Defendants. | Civil Action No. 16-680 (CKK) |

**MEMORANDUM OPINION**
(July 31, 2020)

Pending before the Court is Plaintiffs' Unopposed Motion for Entry of an Order Preliminarily Approving a Settlement and Conditionally Certifying a Settlement Class  ("Pls.' Mot."), ECF No. 102.  Plaintiffs seek preliminary approval of their Class Action Settlement, conditional certification of the proposed Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(1), approval of the form and method of Class Notice, and a date and time for a hearing for consideration of final approval of the Class Action Settlement and related issues. Plaintiffs indicate that Defendants do not oppose their Motion, although they dispute certain representations in the Motion.  Pls.' Mem. in Supp. of Their Unopposed Mot. for Prelim. Approval of Class Action Settlement Agreement and for Conditional Certification of a Settlement Class ("Pls.' Mem."), ECF No. 102-1, at 1.

Upon consideration of the pleadings, relevant legal authorities, and the record as a whole, the Court **GRANTS** Plaintiffs' Motion.  For the reasons set forth below, the Court will conditionally certify the Plaintiff class for settlement purposes, appoint Plaintiffs' counsel as class counsel, preliminarily approve of the class settlement, approve of the agreed-upon notice to

1

potential class members of the proposed settlement, and set a final hearing on the fairness of the

settlement as outlined in the accompanying Order.

## I. BACKGROUND

### A. Factual and Procedural Background

The proposed class action against Defendants, Colonial Parking, Inc. ("Colonial") and FCE

Benefit Administrators, Inc. ("FCE"), arises under the Employment Retirement Income Security

Act of 1974 ("ERISA") in relation to two employee benefit plans.  Pls.' Mem. at 1; Am. Compl.,

ECF No. 80, at ¶¶ 37–174.  Plaintiff's Amended Complaint asserts five claims.  The principal

claim is that the fees paid to FCE from the Forge Company Health and Welfare Plan ("Forge Plan")

were  done  under  an  arrangement  that  is  prohibited  under  ERISA  sections  406(a)(1)(D)  and

406(b).[1]  Am. Compl. ¶¶ 37–105.  Plaintiffs further claim that the fiduciaries did not act solely

within the interests of the participants or prudently pursuant to ERISA section 404.[2]  *Id.*

Plaintiffs  also  assert  three  claims  relating  to  the  DUB  accounts  maintained  within  the

ACEC-MW Health and Welfare Plan ("ACEC Plan").  First is that Defendants violated ERISA

sections 404, 405,[3] and 406 with respect to the investment of the assets in the ACEC Plan that

---

[1] ERISA section 406(a) prohibits a fiduciary from engaging in a transaction "if he knows or should know  that  such  transaction  constitutes  a  direct  or  indirect  . . .  transfer  to,  or  use  by  or  for  the benefit of a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1)(D).  And ERISA section 406(b) prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account."  *Id.* § 1106(b).

[2] ERISA section 404 provides in part that a "fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."  29 U.S.C. § 1104.  Furthermore, this section contains a "prudent man standard of care," which requires the fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* § 1104(a)(1)(B).

[3] ERISA section 405, in part, provides for co-fiduciary duty liability on a fiduciary who knowingly participates  in  or  undertakes  to  conceal  the  breach  of  another  fiduciary,  has  enabled  another

allegedly generated earnings that were credited to the DUB benefit balances of Plaintiffs. *Id.* ¶¶ 106–42. Second, Plaintiffs claim that Defendants violated ERIA sections 404 and 405 by not allocating the ACEC Plan's surplus assets to the DUB accounts of Plaintiffs. *Id.* Third, Plaintiffs claim that Defendants violated ERISA sections 404, 405, and 406 in connection with deductions for a "Trust Tax" that were taken from distributions made to Plaintiffs from the ACEC Plan. *Id.*

Plaintiffs next allege that Defendants violated ERISA sections 404, 405, and 406 by reducing the DUB balances of eighteen participants who elected dependent health coverage from 2007 through 2009. *Id.* ¶¶ 143–65. Plaintiffs lastly assert that the surplus assets in the Forge Plan should be distributed to Plaintiffs. *Id.* ¶¶ 166–74.

On April 12, 2016, Plaintiffs filed their original Complaint against Defendants as a class action alleging breaches of fiduciary duty in direct violation of ERISA. Pls.' Mem. at 2; Compl., ECF No. 1. In November 2017, Plaintiffs filed their first Motion for Class Certification, which was opposed by both Defendants. Pls.' Mem. at 3; *see* Pls.' Mot. for Class Certification, ECF No. 43; Def. FCE Benefit Administrators, Inc.'s Mem. of Law in Supp. of Its Partial Opp'n to Pls.' Mot. for Class Certification, ECF No. 47; Def. Colonial Parking, Inc.'s Opp'n to Pls.' Mot to Certify Class, ECF No. 48. In April 2018, the Court denied the motion without prejudice and allowed Plaintiffs to amend the Complaint. Pls.' Mem. at 3; *see* Apr. 23, 2018 Order, ECF No. 59.

In August 2019, the parties informed the Court that Plaintiffs' renewed Motion for Class Certification would be unopposed, and on December 6, 2019, the Court was informed that the parties reached a settlement in principle. Pls. Mem. at 4; *see* Pls.' Am. Mot. for Class Certification,

---

fiduciary to commit a breach by failing to act prudently under ERISA section 404, *see supra* note 2, or has failed to take action to remedy a breach committed by another fiduciary of which the co-fiduciary has knowledge. *See* 29 U.S.C. § 1105(a).

ECF No. 95; Joint Mot. to Am. Scheduling Order, ECF No. 98; Dec. 13, 2019 Order, ECF No. 99.

On December 13, 2019, the Court denied the Unopposed Motion for Class Certification, again

without prejudice, and ordered that the parties seek class certification together with the proposed

settlement agreement.  Pls.' Mem. at 4; Dec. 13, 2019 Order, ECF No. 99.  On January 24, 2020,

Plaintiffs filed the pending motion, seeking an order from the Court to preliminarily approve the

proposed settlement and conditionally certify the class action as a settlement class.

**B. The Terms of the Settlement**

The parties have submitted their proposed settlement to the Court.  *See* Pls.' Mem. Ex. 1

(Class Action Settlement Agreement and Release, hereinafter "Settlement Agreement"), ECF No.

102-2.  The key terms of the parties' agreement are as follows.

The Settlement Agreement contemplates that a non-opt-out class will be certified pursuant

to Federal Rules of Civil Procedure 23(a), 23(b)(1), and 23(e). *Id.* Ex. 1 § 3.1.  The proposed class

(the "Settlement Class") is defined as:  "Individuals who participated in the Forge Company Health

and Welfare plan who also received a DUB Benefit distribution between October 1, 2006 and

December 31, 2015."  Pl.'s Mem. at 6; *id.* Ex. 1 § 1.45.  The parties have identified 119 persons

in the proposed class. *See id.* at 6 (citing Decl. of Edward Scallet ("Scallet Decl."), ECF No. 102-

6, ¶ 4).

As for monetary consideration, the Settlement Agreement provides for a Settlement Fund

with approximately $1.95 million.  This breaks down into three separate payments.  First,

Defendants will pay $1.65 million in cash.  Second, Trust Management Services ("TMS"), the

current trustee of the Forge Plan, will deposit the remaining surplus of the assets in the Forge Plan,

which totals approximately $90,000.  Lastly, TMS will also deposit the remaining surplus in the

ACEC Plan, which totals approximately $200,000.  Payment from Defendants would be sent

within ten business days after the entry of this Court's Order preliminarily approving the Settlement Agreement, while TMS would send its payments within ten business days after the Effective Date of Settlement. Pls.' Mem. at 5–6; *id.* Ex. 1 §§ 6.2, 6.6, 6.7.

Class Counsel are not seeking any attorney's fees and seek only reimbursement of out of pocket costs of approximately $70,000 as well as Incentive Awards to the four Named Plaintiffs of $15,000 each. *Id.* at 7. Defendants do not oppose expense reimbursements to Class Counsel as long as they do not exceed $70,000 and do not oppose Incentive Awards of up to $15,000 for each of the four Named Plaintiffs. *Id.* at 5; *id.* Ex. 1 §§ 7.1–7.11. Under the Settlement Agreement, after these administrative expenses are distributed, the remaining funds are distributed under the Plan of Allocation, which has two stages. *Id.* at 5; *id.* Ex. 1 §§ 7.1–7.11. The first would involve distribution of $99,116.69 to eighteen Settlement Class members whose DUB benefits were allegedly reduced because they elected health insurance coverage for their spouse or children between 2007 and 2009. *Id.* at 5; *id.* Ex. 1 §§ 7.1–7.11. The second stage is the distribution of the remaining funds, approximately $1,800,00, which will be distributed based on the total hours worked by each Settlement Class Member at the relevant facility. *Id.* at 5–6; *id.* Ex. 1 §§ 7.1–7.11.

The Settlement Agreement further provides for releases by, and among, Plaintiffs and Defendants. Pls.' Mem. at 6. Under the Settlement Agreement, Plaintiffs would release the "Released Parties" from the "Released Claims." *Id.*; *id.* Ex. 1 §§ 1.38, 1.39, 5.1 The Settlement Agreement defines "Released Parties" as principally

> the Defendants, the Plan's and the ACEC Plan's current and past trustees, all fiduciaries of the Plan, all fiduciaries of the ACEC Plan, any and all of their Affiliates, predecessors, successors and assigns, parent corporations, subsidiary corporations, and divisions, joint venturers, partners, and all of their past and present shareholders, members, owners, employees, officers and directors, insurers, representatives, attorneys, administrators, accountants, auditors, advisors, consultants, and agents, whether acting as agents or in their individual or corporate capacities.

*Id.* Ex. 1 § 1.39.  It defines "Released Claims" as

> any and all claims that have been or could be asserted by the Named Plaintiffs and
> the other Settlement Class Members, including but not limited to claims asserted
> by them to recover alleged losses to the Plan, of any nature whatsoever, (including,
> but not limited to, claims for any and all losses, damages, unjust enrichment,
> attorneys' fees, disgorgement of fees, litigation costs, injunction, declaration,
> contribution, indemnification, or any other type or nature of legal or equitable
> relief), whether accrued or not, whether already acquired, whether known or
> unknown, in law or equity arising out of any or all of the acts, omissions, facts,
> matters, transactions or occurrences that are, were or could have been alleged,
> asserted, or set forth in the Amended Complaint or the Action, or that are related in
> any way to any of the allegations or claims asserted in the Amended Complaint or
> the Action to the fullest extent permitted by law.

*Id.* Ex. 1 § 1.38; *see also id.* Ex. 1 § 1.38(a) (listing certain included claims).  Plaintiffs, the

Settlement Class, and Class Counsel will further be released from claims relating to the institution

and prosecution of the case.  *Id.* Ex. 1 § 5.3.

## II. DISCUSSION

The Court's Memorandum Opinion will proceed in three parts.  First, the Court will certify

the Plaintiff class for purposes of settlement and appoint class counsel.  Second, the Court will

preliminarily approve of the proposed class settlement as fair, adequate, reasonable, and not the

product of collusion.  Third, the Court will approve of the proposed notice to be sent to class

members and schedule a hearing on the fairness of the proposed settlement.

### A. Class Certification

The Court begins its analysis by addressing class certification.  *See Radosti v. Envision*

*EMI, LLC*, 717 F. Supp. 2d 37, 51 (D.D.C. 2010).  A class may be certified only if it meets all of

the prerequisites in Rule 23(a) and at least one requirement in Rule 23(b).  *Ross v. Lockheed Martin*

*Corp.*, 267 F. Supp. 3d 174, 190 (D.D.C. 2017).  The proposed class for settlement purposes in

this case consists of "[i]ndividuals who participated in the Forge Company Health and Welfare

plan who also received a DUB Benefit distribution between October 1, 2006 and December 31,

2015." Pls.' Mem. at 14; *Id.* Ex. 1 § 1.45.  This class satisfies the requirements of both Federal

Rules 23(a) and 23(b)(1) and will accordingly be conditionally certified for settlement purposes.

### 1. Rule 23(a) Requirements

Under Rule 23(a), a member of a class may sue on behalf a class if: "(1) the class is so

numerous that joinder of all members is impracticable; (2) there are questions of law or fact

common to the class; (3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class; and (4) the representative parties will fairly and adequately protect

the interests of the class." Fed. R. Civ. P. 23(a).  These prerequisites are referred to as numerosity,

commonality, typicality, and adequacy of representation, respectively.  *Radosti*, 717 F. Supp. 2d

at 50.  All of these requirements are met in this case.

#### a. Numerosity

Numerosity requires that the proposed class be "so numerous that joinder of all members

is impracticable." Fed. R. Civ. P. 23(a)(1).  "There is no specific threshold that must be surpassed

in order to satisfy the numerosity requirement," but "courts in this jurisdiction have observed that

a class of at least forty members is sufficiently large to meet this requirement." *Taylor v. D.C.

Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007).  The parties represent that the proposed

class in this case includes 119 employees based on records maintained by Defendants.  Pls.' Mem.

at 15; Scallet Decl. ¶ 4.  That number of employees makes joinder impracticable and satisfies the

numerosity requirement.

### b. Commonality

Next, the proposed class must have "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has stated that a "common" question is one that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "The touchstone of the commonality inquiry is 'the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Coleman ex rel. Bunn v. Dist. of Columbia*, 306 F.R.D. 68, 82 (D.D.C. 2015) (quoting *Wal-Mart Stores, Inc.*, 564 U.S. 338, 350 (2011)).

A classwide proceeding would generate such common answers here. In particular, Plaintiffs share a common challenge to Defendants' actions with respect to the two plans at issue (the Forge Plan and the ACEC Plan), and a classwide proceeding in this case would generate common answers regarding those questions. As Plaintiffs note, the allegations in Count Three involve only 18 of the 119 class members. Pls.' Mem. at 15 n.5. However, "factual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members." *Bynum v. Dist. of Columbia*, 214 F.R.D 27, 33 (D.D.C. 2001). That standard is certainly met here—the majority of the relevant allegations relating to Defendants' actions with respect to the Plans apply equally to all class members, including those 18 members. Moreover, all 18 members were affected in the same manner and they share the same relative claim as the rest of the class. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 26 (D.D.C. 2001) ("The commonality test is met where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." (internal quotation marks omitted)); *Pigford v. Glickman*, 182 F.R.D.

341, 349 (D.D.C. 1998) (finding that commonality was satisfied because "all members of the subclass share[d] a common issue in addition to those shared by all class members"). Commonality is therefore satisfied.

### c. Typicality

Next, the typicality requirement requires that the "claims or defenses of the representative parties are typical of the claims of defenses of the class." Fed. R. Civ. P. 23(a)(3).  Generally speaking, typicality is "satisfied when the plaintiff[s'] claims arise from the same course of conduct, series or events, or legal theories of other class members." *In re XM Satellite Radio Holdings Secs. Litig.*, 237 F.R.D. 13, 18 (D.D.C. 2006).  "The facts and claims of each class member do not have to be identical to support a finding of typicality; rather, typicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff." *Radosti*, 717 F. Supp. 2d at 52 (internal quotation marks omitted).  In the ERISA context, claims are typical when they challenge misconduct that affects not only Named Plaintiffs but the entire class.  *See Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 350 (N.D. Ill. 2007) (holding that plaintiffs' claims were typical of those of the class "principally because they [sought] relief on behalf of the Plan under section 502(a)(2) of ERISA for alleged fiduciary violations as to the Plan"); *Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 187 (W.D. Mo. 2009) ("[I]n ERISA claims where plaintiffs seek recovery for injuries to a plan rather than to themselves individually, class representatives' claims need not be identical to those of other individual class members."); *In re Syncor ERISA Litig.*, 227 F.R.D. 338, 344 (C.D. Cal. 2005) (finding that typicality was satisfied in an ERISA breach of fiduciary duty claim because "[e]ach of the plaintiffs was a Syncor employee and participated in the Plan during the class period" and thus "suffered injuries as an indirect result of the same breaches of fiduciary duty by the remaining defendants").

The Named Plaintiffs in this case are Benyam Abraha, Esayas Akalu, Samuel Habtewold, and Gedlu Melke. Pls.' Mem. Ex. 1 § 1.30.  Each Plaintiff was employed by Colonial at the relevant facility from 2001 through 2015. Pls.' Am. Compl. ¶¶ 2–3.  The main differences between various members of the class, including Named Plaintiffs, as far as the Court can determine, is that each class member may claim a varying amount of damages due to variations in the number of hours worked at the relevant facility.[4]  *See* Pls.' Mem. at 5–6; *id.* Ex. 1 §§ 7.1–7.11.  However, such factual differences do not destroy typicality, as "demonstrating typicality does not mean showing that there are no factual variations between the claims of the plaintiffs." *Bynum*, 214 F.R.D. at 35.  "Rather, if the named plaintiffs' claims are based on the same legal theory as the claims of the other class members, it will suffice to show that the named plaintiffs' injuries arise from the same course of conduct that gives rise to the other class members' claims." *Id.*  Here, because the Named Plaintiffs' claims are based on the same legal theories and arise from the same course of conduct giving rise to the other members' claims, the typicality requirement is satisfied.

### d. Adequacy and Appointment of Class Counsel

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  "'Two criteria for determining the adequacy of representation are generally recognized: 1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and 2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel.'" *Twelve John Does v. Dist. of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997) (quoting *Nat'l Ass'n of Reg'l Med. Programs, Inc. v. Mathews*, 551 F.2d 340, 345 (D.C. Cir. 1976)).

---

[4] In addition, there is the difference explored above in the commonality discussion with respect to the allegations in Count Three.  *See supra* Section II.A.1.b.

Both criteria appear to be satisfied on the record before the Court. First, there is no evidence of any antagonistic or conflicting interests between the representative parties and the class. The Named Plaintiffs generally share with the class the objective of receiving payment as redress for their ERISA claims, and under the settlement agreement all parties will receive payments according to the same distribution plan and formulas, except for a relatively small additional payment for Named Plaintiffs to compensate them for their time and effort in this litigation. *See Richardson v. L'Oreal USA, Inc.*, 951 F. Supp. 2d 104, 108 (D.D.C. 2013) ("The nominal incentive payments of up to $1000 for the lead plaintiffs appear reasonable."); *Radosti v. Envision EMI, LLC*, 760 F. Supp. 2d 73, 79 (D.D.C. 2011) ("Such incentive awards are not uncommon in common-fund-type class actions and are used to compensate plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.").

Second, counsel for the Named Plaintiffs, who are proposed class counsel, appear to be appropriately experienced and qualified attorneys in the ERISA litigation field. *See* Scallet Decl. ¶ 7 (explaining that counsel Edward Scallet is counsel of record in over fifty reported ERISA cases and that he has represented various parties "with respect to issues affecting welfare benefit plans under ERISA for almost forty years" while counsel Susan Baron has been involved with this case since its inception and has been instrumental in communicating with Named Plaintiffs). The Court accordingly finds that the adequacy requirement of Rule 23(a) is satisfied. For similar reasons, the Court will appoint Mr. Scallet and Ms. Baron class counsel at this time pursuant to Federal Rule of Civil Procedure 23(g).

### *2. Rule 23(b) Requirements*

In addition to satisfying Rule 23(a), the plaintiffs must show that the class is maintainable under Rule 23(b). *Radosti*, 717 F. Supp. 2d at 50. In the present case, Plaintiffs seek certification under Rule 23(b)(1). *See* Pls.' Mem. at 14, 16–17. Rule 23(b)(1) addresses cases in which separate actions by or against individual class members would risk establishing either "incompatible standards of conduct for the party opposing the class" or would "as a practical matter be dispositive of the interests" of the nonparty members or "substantially impair or impede their ability to protect their interests." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (internal quotation marks omitted). The proposed class satisfies Rule 23(b)(1)(A) here.

Rule 23(b)(1)(A) seeks to prevent prejudice to Defendants. *Harris v. Koenig*, 271 F.R.D. 383, 392 (D.D.C. 2010). Most courts that have considered whether certain ERISA "suits seeking primarily monetary relief are not appropriate for certification under Rule 23(b)(1)(A)" have found that they are appropriate. *See id.* at 393 (collecting cases); *see also Stanford v. Foamex L.P.*, 263 F.R.D. 156, 173 (E.D. Pa. 2009) ("The issue is not whether plaintiff seeks primarily monetary damages . . . [but] whether separate actions could lead to adjudications that establish 'incompatible standards of conduct for the party opposing the class.'" (quoting Fed. R. Civ. P. 23(b)(A))). As courts have noted, "breach of fiduciary duty claims under ERISA § 502(a)(2) 'are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class.'" *Hans v. Tharaldson*, No. CIV.3:05-CV-115, 2010 WL 1856267, at *9 (D.N.D. May 7, 2010) (quoting *In re Schering Plough ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009)), as amended, No. 3:05-CV-115, 2010 WL 4723008 (D.N.D. Aug. 27, 2010); *see also Jones*, 257 F.R.D. at 193 (explaining that "[s]everal courts have certified classes alleging breaches of ERISA fiduciary duties under Rule 23(b)(1)(B)" and listing cases certifying under both Rule 23(b)(1)(A) and 23(b)(1)(A)). In fact, the Advisory

12

Committee Notes to Rule 23 speak specifically of "an action which charges a breach of trust . . . by a[] . . . fiduciary similarly affecting the members of a large class of . . . beneficiaries," which further supports that certification under Rule 23(b)(1)(A) is appropriate here where Plaintiffs claim that fiduciary duties owed to all class members equally were breached.  Fed. R. Civ. P. 23 Advisory Committee Notes (1966 Amendment).

Here, the Court agrees that inconsistent orders with respect to the two Plans and the individual accounts at issue present the possibility of creating incompatible standards or orders if multiple suits by individual class members were brought.  *See Sanford*, 263 F.R.D. at 173.  For example, this Court could find a breach of Defendants' fiduciary duties where another court might not find one, although both claims would be premised upon the same essential facts—in other words, the same alleged duty and alleged breach.  "In that event, Defendants would be faced with incompatible standards of conduct with respect to their duties and obligations toward the Plan." *Harris*, 271 F.R.D. at 394.  Accordingly, conditional certification under Rule 23(b)(1)(A) is appropriate here.  *See Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111–12 (N.D. Cal. 2008) (certifying class in similar ERISA action under Rule 23(b)(1)); *In re Nortel Networks Corp. ERISA Litig.*, No. 3:03-MD-01537, 2009 WL 3294827, at *15 (M.D. Tenn. Sept. 2, 2009) (same).

*      *      *

Having determined that the requirements of both Rule 23(a) and Rule 23(b)(3) are satisfied, and with the consent of the parties, the Court will certify the Plaintiff class for settlement purposes.

**B. Preliminary Approval of Class Settlement**

The Court will now also grant preliminary approval of the proposed class settlement (the Settlement Agreement), pending notice to the class members and a final fairness assessment after a fairness hearing is held.  Rule 23(e) states that "[t]he claims, issues, or defenses of a certified

13

class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed.

R. Civ. P. 23(e). There is a "long-standing judicial attitude favoring class action settlements." *In*

*re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 103 (D.D.C. 2004). However, "[b]efore it can

approve a settlement a district court 'must find that the settlement is fair, adequate and reasonable

and is not the product of collusion between the parties.'" *Thomas v. Albright*, 139 F.3d 227, 231

(D.C. Cir. 1998) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). "[G]enerally,

in determining whether a settlement is fair, reasonable, and adequate, courts in this Circuit have

examined the following factors: (a) whether the settlement is the result of arms-length negotiations;

(b) the terms of the settlement in relation to the strength of the case; (c) the stage of the litigation

proceedings at the time of settlement; (d) the reaction of the class; and (e) the opinion of

experienced counsel." *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 194 (D.D.C. 2011), case

dismissed, No. 12-7001, 2012 WL 556319 (D.C. Cir. Feb. 13, 2012). "Approval of the proposed

class action settlement lies within the discretion of this Court." *In re Vitamins*, 305 F. Supp. 2d at

103.

### 1. Whether the Settlement is the Result of Arms-Length Negotiations

The proposed settlement here appears to be result of arms-length negotiation of a genuine

dispute. "A 'presumption of fairness, adequacy, and reasonableness may attach to a class

settlement reached in arm's length negotiations between experienced, capable counsel after

meaningful discovery.'" *Id.* at 104 (quoting Manual for Complex Litig. § 30.42). The parties

disagree with respect to Plaintiff's claims, and there is no reason for the Court to think that dispute

is not *bona fide*. *See, e.g.*, Pls.' Mem. at 1 ("Defendants dispute and disagree with many of the

averments stated in this Memorandum."). The history of this action further demonstrates the

genuineness of the dispute. To begin with, both Defendants earlier moved to dismiss the case and

14

the Court in fact dismissed (without prejudice) one of Plaintiff's claims against Defendant Colonial. *See* Mar. 20, 2017 Order, ECF No. 27. The parties have conducted extensive discovery, including the depositions of five expert witnesses and twelve fact witnesses. Pls.' Mem. at 3. Over 25,000 documents were produced by the parties and third parties. *Id.* Before reaching settlement, the parties participated in two prior mediations: one on October 18, 2016 and one on August 7, 2018. *Id.* at 4. All parties were represented by counsel and the parties represent that the proposed settlement was "the result of extensive arm's-length negotiations between the parties" and a process that "was thorough, adversarial, and professional." *Id.* Nothing in the record contradicts or calls into question these representations. The Court credits these undisputed representations at this time and finds them sufficient for the purposes of preliminary approval of the settlement.

### 2. The Terms of the Settlement in Relation to the Strength of the Case

Next, "[t]he Court must evaluate the relief provided in the proposed settlement against the relative strength of plaintiffs' case, including their ability to obtain recovery at trial." *Trombley*, 826 F. Supp. 2d at 195. In this circuit, this "may be the most important factor in evaluating a proposed class settlement." *Ceccone v. Equifax Info. Servs. LLC*, No. 13-CV-1314 KBJ, 2016 WL 5107202, at *9 (D.D.C. Aug. 9, 2016); *see also Thomas*, 139 F.3d at 231 ("The court's primary task [when considering a settlement under Rule 23(e)] is to evaluate the terms of the settlement in relation to the strength of the plaintiffs' case.").

Here, although Plaintiffs believe that their claims are "strong," they acknowledge that there are uncertainties about the amount of relief that they may obtain if the case were to proceed to trial. Pls.' Mem. at 9. Plaintiffs' "best case" for monetary claims would "require prevailing on aggressive theories of recovery under ERISA, and on Defendants' statute of limitations defenses." *Id.* The claims in this case raise issues that would require extensive expert testimony and

Defendants have indicated that they would challenge Plaintiffs' experts under *Daubert*. *Id.* at 10. Furthermore, "Defendants have stated that they would appeal any judgment in Plaintiffs' favor." *Id.*

The proposed settlement provides for a settlement fund of $1.95 million, which, as noted above, consists of three separate payments. First, Defendants will pay $1.65 million in cash. Second, Trust Management Services ("TMS"), the current trustee of the Forge Plan, will deposit the remaining surplus of the assets in the Forge Plan, which totals approximately $90,000. Lastly, TMS will also deposit the remaining surplus in the ACEC Plan, which totals approximately $200,000. Pls.' Mem. at 5. Ninety-two percent of the settlement amount will be distributed to the class members. *Id.* at 10. Plaintiffs indicate that the settlement amount is 195%, or almost twice, "the total amount of DUB benefits that the Settlement Class Members received before this litigation was brought." *Id.* It is also "250% of the total amount of fees paid to the FCE and the Plan's trustees." *Id.* It would recover all, or 100%, of the amount of the DUB benefits that Plaintiffs allege should have been paid and 80% of the lost earnings on those unpaid benefits. *See id.*; Scallet Decl. ¶ 6. The Court agrees that these amounts are significant in light of the uncertainties regarding Plaintiffs' prevailing on their claims as outlined above.

And importantly, as Plaintiffs explain, this case has been pending for four years at this point and class members are "minimum wage employees who live paycheck to paycheck." Pls.' Mem. at 10. Some have retired or will do so soon. *Id.* And, as noted above, Defendants would appeal any judgment in Plaintiffs' favor. *Id.* In other words, if the case were to go forward to trial, and even if there were a judgment in Plaintiffs' favor, it may take years for Plaintiffs to receive any benefits. The Court cannot discount the possibility of Plaintiffs' receiving more certain and timely distributions through the proposed settlement. *See Trombley*, 826 F. Supp. 2d at 195 ("As

16

an initial matter, if this case proceeded to litigation, the time until class members would obtain

relief for their damages and injuries would be substantially delayed."); *Luevano v. Campbell*,

93 F.R.D. 68, 89 (D.D.C. 1981) ("Even putting aside all consideration of the risks of litigation, the

delay in providing relief to the class if this case were to be litigated is a factor strongly supporting

the compromise reached by the parties.").

Based on the foregoing, the Court concludes that the settlement "falls within the range of

fair, adequate and reasonable settlements," *In re Vitamins*, 305 F. Supp. 2d at 105, for the purposes

of preliminary approval, but the Court "will continue to give close scrutiny to the proposed

settlement amount in the final fairness assessment," *Trombley v. Nat'l City Bank*, 759 F. Supp. 2d

20, 26 (D.D.C. 2011).

### *3. The Stage of the Litigation Proceedings at the Time of Settlement*

Next, the Court considers the stage of the litigation at the time of settlement.  Generally, a

settlement should not "'come too early to be suspicious nor too late to be a waste of resources'";

rather, it should be proposed "'at a desirable point in the litigation for the parties to reach an

agreement to resolve these issues without further delay, expense, and litigation.'"  *Cohen v.*

*Chilcott*, 522 F. Supp. 2d 105, 117 (D.D.C. 2007) (quoting *In re Vitamins*, 305 F. Supp. 2d at 105).

"Courts thus consider whether counsel had sufficient information, through adequate discovery, to

reasonably assess the risks of litigation vis-à-vis the probability of success and range of recovery."

*In re Lorazepam & Clorazepate Antitrust Litig.*, No. 99MS276(TFH), 2003 WL 22037741, at *4

(D.D.C. June 16, 2003).  Here, this case has been pending since April 12, 2016.  Pls.' Mem at 2;

Compl., ECF No. 1.  As explained above, the parties have conducted extensive discovery,

including the production of tens of thousands of documents and a total of seventeen depositions.

Pls.' Mem. at 3–4. Accordingly, at least for purposes of preliminary approval, the Court finds that settlement comes at the appropriate time in this action.

### 4. The Reaction of the Class

The Court cannot yet assess the reaction of the class to the proposed settlement because notice of the settlement has not yet been provided. As discussed further below, the Court will approve of the proposed form of notice and direct that it be provided to the class members in the manner suggested by the parties. The Court will then assess the reaction of the class prior to its final fairness assessment.

### 5. The Opinion of Experienced Counsel

Finally, the Court must consider the opinion of "experienced and informed counsel," which "should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *In re Lorazepam & Clorazepate Antitrust Litig.*, 2003 WL 22037741, at *6. Counsel for both parties in this matter represent that they believe the settlement to be fair, reasonable, and adequate, which further weighs in favor of granting preliminary approval. *See* Pls.' Mem. at 7–13 (opinion of Plaintiffs' counsel); Scallet Decl. ¶ 5 (same); Pls.' Mem. at 1 (indicating that counsel for Defendants consent to relief sought, which includes preliminary approval of proposed settlement).

\* \* \*

Having considered the above factors, the Court will grant preliminary approval of the proposed class settlement. The Court will determine whether to grant final approval of the settlement after considering any class member objections and holding a fairness hearing.

**C. Notice and Further Proceedings**

Before granting final approval of this class settlement, pursuant to Federal Rule of Civil Procedure 23(e)(1) "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The parties have provided the Court with a proposed form of notice. *See* Pls.' Mem. Ex. 1, ECF No. 102-2, at Ex. A (Notice of Proposed Class Action Settlement). The Court finds that the proposed notice is sufficient and will order that it be provided to all class members. The proposed notice explains the lawsuit, *id.* Ex. 1 at Ex. A at 1–2, 4–5; the impact of the proposed settlement on class members' legal rights, their inability to opt out, and how they may file an Objection, *id.* at 7–8; the terms of the settlement, *id.* Ex. 1 at Ex. A at 5–7; the amount of fees and costs to be paid to class counsel and the Incentive Rewards for the Named Plaintiffs, *id.* Ex. 1 at Ex. A at 6–7, 9–10; and the details of the fairness hearing including the class members' right to attend such hearing, *id.* Ex. 1 at Ex. A at 10–11. The parties have also proposed a manner for providing this notice:

> Class Counsel shall cause the Class Notice to be disseminated to the Settlement Class Members in the manner set forth in the Preliminary Approval Order. The Class Notice shall be mailed to members of the Settlement Class at the last known addresses. Defendants shall use good faith, reasonable efforts to provide such last known addresses, as well as social security numbers, to the Settlement Administrator but otherwise will bear no responsibility for the distribution of the Class Notice. Class Counsel also shall cause the Class Notice to be published on the website identified in the Class Notice.

*Id.* Ex. 1 § 3.2. The Court finds that this is a reasonable manner of providing notice.

Once an appropriate period of time has passed for class members to have received notice and filed any objections, the Court must hold a fairness hearing regarding the proposed settlement prior to providing final approval. *See* Fed. R. Civ. P. 23(e)(2) ("If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable,

and adequate."). After that hearing, the Court will make a final determination as to the fairness of the proposed settlement. This hearing will be held as outlined in the accompanying Order.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' Unopposed Motion for Entry of an Order Preliminarily Approving a Settlement and Conditionally Certifying a Settlement Class, ECF No. 102, is **GRANTED**. The Court conditionally certifies the Plaintiff class for settlement purposes, appoints Plaintiffs' counsel as class counsel, preliminarily approves of the class settlement, approves of the agreed-upon notice to potential class members of the proposed settlement, and sets a final approval hearing on the fairness of the settlement as outlined in the accompanying Order.

An appropriate Order accompanies this Memorandum Opinion.


Dated: July 31, 2020

                                    /s/
                                    COLLEEN KOLLAR-KOTELLY
                                    United States District Judge